No. 22-11036

_____

**In the**
**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**In the Matter of Highland Capital Management, L.P.,**

*Debtor.*

**The Charitable DAF Fund, L.P.; CLO Holdco, Limited; Mark Patrick; Sbaiti & Company, P.L.L.C.; Mazin A. Sbaiti; Jonathan Bridges,**

*Appellants,*

v.

**Highland Capital Management, L.P.,**

*Appellee.*

_____

**In the Matter of Highland Capital Management, L.P.,**

*Debtor.*

**James Dondero,**

*Appellant,*

v.

**Highland Capital Management, L.P.,**

*Appellee.*

_____

**Appeal from the United States District Court**
**for the Northern District of Texas, Dallas Division**
*Honorable Brantley Starr, United States District Judge*
No. 3:21-cv-01974-X

_____

**APPELLANT JAMES DONDERO's RECORD EXCERPTS**

_____

**Jeffrey S. Levinger**
jlevinger@levingerpc.com
**J. Carl Cecere (of counsel)**
ccecere@cecerepc.com
**Levinger PC**
1700 Pacific Ave., Suite 2390
Dallas, Texas 75201
Telephone:  214-855-6817
Facsimile:  214-817-4509

*Attorneys for Appellant*
*James Dondero*

## TABLE OF CONTENTS

| Tab | Mandatory Items | Citation |
|---|---|---|
| 1 | District Court Docket Sheet | ROA.1-14 |
| 2 | James Dondero's Notice of Appeal | ROA.12290-91 |
| 3 | District Court's Memorandum Opinion and Order | ROA.12255-86 |
| 4 | Bankruptcy Court's Order Holding Certain Parties and Their Attorneys in Civil Contempt of Court for Violation of Bankruptcy Court Orders | ROA.577-607 |

### Optional Items

| Tab | | Citation |
|---|---|---|
| 5 | Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not be Held in Civil Contempt for Violating Two Court Orders | ROA.1764-68 |
| 6 | Order Requiring the Violators to Show Cause Why They Should Not be Held in Civil Contempt For Violating Two Court Orders | ROA.2584-86 |

Respectfully submitted,

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**
**J. Carl Cecere (of counsel)**
**Levinger PC**
1700 Pacific Ave., Suite 2390
Dallas, Texas 75201
Telephone:  214-855-6817
Facsimile:  214-817-4509
jlevinger@levingerpc.com
ccecere@cecerepc.com

*Attorneys for Appellant*
*James Dondero*

### CERTIFICATE OF SERVICE

The undersigned certifies that on February 6, 2023, the foregoing Appellant James Dondero's Record Excerpts were electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the Appellate CM-ECF System.  Participants in this case who are registered CM-ECF users will be served electronically by the Appellate CM-ECF System.  Other participants will be served by e-mail.

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**

# Tab 1

**District Court Docket Sheet**
**(ROA.1-14)**

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:21-cv-01974-X

| | |
|---|---|
| The Charitable DAF Fund, L.P. et al v. Highland Capital Management LP | Date Filed: 08/23/2021 |
| Assigned to: Judge Brantley Starr | Date Terminated: 09/28/2022 |
| Case in other court:  BK Court, 19-34054-sgj11; Adversary Number | Jury Demand: None |
| | Nature of Suit: 422 Bankruptcy: Appeal 28 USC 158 |
| USCA5, 22-11036 | Jurisdiction: Federal Question |
| Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA | |

**Debtor**

**Highland Capital Management LP**

**Appellant**

**The Charitable DAF Fund LP**                    represented by    **Mazin A Sbaiti**
Sbaiti & Company PLLC
J.P. Morgan Chase Tower
2200 Ross Avenue
Suite 4900W
Dallas, TX 75201
214-432-2899
Fax: 214-853-4367
Email: MAS@SbaitiLaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian J Field**
Schaerr | Jaffe LLP
1717 K Street NW
Suite 900
Washington, DC 985577
202-787-1060
Fax: 202-776-0136
Email: bfield@schaerr-jaffe.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Erik S Jaffe**
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006
202-787-1060
Fax: 202-776-0136
Email: ejaffe@schaerr-jaffe.com

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jonathan Bridges**
Sbaiti & Company PLLC
2200 Ross Ave
Suite 4900W
Dallas, TX 75201
214-432-2899
Fax: 214/754-1933 FAX
Email: jeb@sbaitilaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Appellant**

**CLO Holdco Ltd**                        represented by    **Mazin A Sbaiti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian J Field**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Erik S Jaffe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jonathan Bridges**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Appellant**

**Mark Patrick**                        represented by    **Mazin A Sbaiti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian J Field**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Erik S Jaffe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jonathan Bridges**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Appellant**

Sbaiti & Company PLLC                    represented by    **Mazin A Sbaiti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian J Field**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Erik S Jaffe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jonathan Bridges**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Appellant**

Mazin A Sbaiti                           represented by    **Mazin A Sbaiti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian J Field**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Erik S Jaffe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

*Bar Status: Not Admitted*

**Jonathan Bridges**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Appellant**

Jonathan Bridges                 represented by   **Mazin A Sbaiti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian J Field**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Erik S Jaffe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jonathan Bridges**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Appellant**

James Dondero                 represented by   **David L Kane**
David Kane PC
5301 Village Creek Drive
Suite D
Plano, TX 75093
972/665-0055
Fax: 972/665-0100
Email: david@davidkanepc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Bryan Christopher Assink**
Bonds Ellis Eppich Schafer Jones LLP
420 Throckmorton St
Suite 1000
Fort Worth, TX 76102
817-405-6900
Fax: 817-405-6902
Email: bryan.assink@bondsellis.com

*TERMINATED: 08/17/2022*
*Bar Status: Admitted/In Good Standing*

**Clay M Taylor**
Bonds Ellis Eppich Schafer Jones LLP
420 Throckmorton Street, Suite 1000
Fort Worth, TX 76102
817-405-6900
Fax: 817-405-6902
Email: clay.taylor@bondsellis.com
*TERMINATED: 08/17/2022*
*Bar Status: Admitted/In Good Standing*

**Douglas Joseph Lipke**
Vedder Price Kaufman & Kammholz
222 North LaSalle St
Suite 2600
Chicago, IL 60601
312/609-7500
*Bar Status: Not Admitted*

**Michael Eidelman**
Law Office of Michael Eidelman
10 South Wacker Dr
Chicago, IL 60606
312/715-4000

**Thomas P Cimino , Jr**
Vedder Price PC
222 NOrth LaDalle Street, Suite 2600
Chicago, IL 60601
312-609-7500
*Bar Status: Not Admitted*

**William W Thorsness**
Vedder Price PC
222 North LaSalle Street, Suite 2600
Chicago, IL 60601
312-609-7500
*Bar Status: Not Admitted*

V.

**<u>Appellee</u>**

**Highland Capital Management LP**              represented by  **John A Morris**
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
Suite 34th Floor
New York, NY 10017
212-561-7760
Fax: 212-561-7777
Email: jmorris@pszjlaw.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Melissa S Hayward**
Hayward PLLC
10501 N Central Expressway, Suite 106
Dallas, TX 75231
972-755-7100
Fax: 972-755-7104
Email: mhayward@haywardfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gregory V Demo**
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY 10017
212-561-7700
Fax: 212-561-7777
Email: gdemo@pszjlaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Hayley R Winograd**
Pachulski Stand Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY 10017
212-561-7700
Fax: 212-561-7777
*Bar Status: Not Admitted*

**Ira D Kharasch**
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
310-277-6910
*Bar Status: Not Admitted*

**Jeffrey N Pomerantz**
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd
13th Floor
Los Angeles, CA 90067
310-227-6910
Fax: 310-201-0760
Email: jpomerantz@pszjlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**John B Goerlich**

Kramer Levin Robbins Russell
2000 K Street NW
4th Floor
Washington, DC 20006
202-775-4500
Fax: 202-775-4510
Email: jgoerlich@kramerlevin.com
*TERMINATED: 05/31/2022*
*Bar Status: Not Admitted*

**Matthew M Madden**
Kramer Levin Robbins Russell
2000 K Street NW
4th Floor
Washington, DC 20006
202-775-4500
Fax: 202-775-4510
Email: mmadden@kramerlevin.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Roy T Englert , Jr**
Kramer Levin Robbins Russell
2000 K Street NW
4th Floor
Washington, DC 20006
202-775-4500
Fax: 202-775-4510
Email: renglert@kramerlevin.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Shikha Garg**
Kramer Levin Robbins Russell
2000 K Street NW
4th Floor
Washington, DC 20006
202-775-4500
Fax: 202-775-4510
Email: sgarg@kramerlevin.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Zachery Z Annable**
Hayward PLLC
10501 N Central Expressway, Suite 106
Dallas, TX 75231
972-755-7108
Fax: 972-755-7110
Email: zannable@haywardfirm.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Bankruptcy Judge**

| | | |
|---|---|---|
| **Stacey G Jernigan** | represented by | **Stacey G Jernigan**<br>US Bankruptcy Court<br>Chambers of Judge Stacey G C Jernigan<br>1100 Commerce St<br>Room 1254<br>Dallas, TX 75242-1496<br>214-753-2040<br>Email: sgj_settings@txnb.uscourts.gov<br>PRO SE |

V.

**Notice Only**

| | | |
|---|---|---|
| **Case Admin Sup** | represented by | **Case Admin Sup**<br>Email: txnb_appeals@txnb.uscourts.gov<br>PRO SE |

| Date Filed | # | Docket Text |
|---|---|---|
| 08/23/2021 | 1 (p.15) | Pursuant to Fed. R. Bankr. P. 8003(d), the bankruptcy clerk has transmitted the notice of appeal filed in bankruptcy case number 19-34054 and the notice of appeal has now been docketed in the district court in case 3:21-cv-1974. (The filing fee has been paid in the Bankruptcy Court.) Pursuant to Fed. R. Bankr. P. 8009, before the record on appeal can be assembled and filed in the district court, designations of items to be included in the record on appeal and statements of issues must be filed in the bankruptcy case. If a sealed document is designated, the designating party must file a motion in the district court case for the document to be accepted under seal. See also District Court Local Bankruptcy Rule 8012.1. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.15) Notice of appeal and supporting documents) (Whitaker - TXNB, Sheniqua) (Entered: 08/23/2021) |
| 08/23/2021 | | New Case Notes: A filing fee has been paid. (ygl) (Entered: 08/24/2021) |
| 08/30/2021 | 2 (p.528) | ***PLEASE DISREGARD/DOCUMENT TO BE REFILED***CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Jonathan Bridges, CLO Holdco Ltd, Mark Patrick, Sbaiti & Company PLLC, The Charitable DAF Fund LP, Mazin A. sbaiti. (Sbaiti, Mazin) Modified on 8/30/2021 (ykp). (Entered: 08/30/2021) |
| 08/30/2021 | 3 (p.530) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Jonathan Bridges, CLO Holdco Ltd, Mark Patrick, Sbaiti & Company PLLC, The Charitable DAF Fund LP, Mazin A. sbaiti. (Sbaiti, Mazin) (Entered: 08/30/2021) |
| 09/24/2021 | 4 (p.532) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-12250384) filed by Highland Capital Management LP (Attachments: # 1 (p.15) Certificate of Good Standing)Attorney Jeffrey N Pomerantz added to party Highland Capital Management LP(pty:dbpos) |

| | | (Pomerantz, Jeffrey) (Entered: 09/24/2021) |
|---|---|---|
| 09/24/2021 | 5 (p.538) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-12250397) filed by Highland Capital Management LP (Attachments: # 1 (p.15) Certificate of Good Standing)Attorney Gregory V Demo added to party Highland Capital Management LP(pty:dbpos) (Demo, Gregory) (Entered: 09/24/2021) |
| 09/27/2021 | 6 | ELECTRONIC ORDER granting 4 (p.532) Application for Admission Pro Hac Vice of Jeffrey N. Pomerantz. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Brantley Starr on 9/27/2021) (chmb) (Entered: 09/27/2021) |
| 09/27/2021 | 7 | ELECTRONIC ORDER granting 5 (p.538) Application for Admission Pro Hac Vice of Gregory V. Demo. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Brantley Starr on 9/27/2021) (chmb) (Entered: 09/27/2021) |
| 09/27/2021 | 8 (p.544) | Notice Transmitting COMPLETE BK Record on Appeal re 1 (p.15) Notice Transmitting BK Appeal or Withdrawal of Reference (Attachments: # 1 (p.15) Mini Record Vol. 1, # 2 (p.528) Appellant Record Vol. 2, # 3 (p.530) Appellant Record Vol. 3, # 4 (p.532) Appellant Record Vol. 4, # 5 (p.538) Appellant Record Vol. 5, # 6 Appellant Record Vol. 6, # 7 Appellant Record Vol. 7, # 8 (p.544) Appellant Record Vol. 8, # 9 (p.11540) Appellant Record Vol. 9, # 10 (p.11546) Appellant Record Vol. 10, # 11 Appellant Record Vol. 11, # 12 (p.11555) Appellant Record Vol. 12, # 13 (p.11556) Appellant Record Vol. 13, # 14 (p.11561) Appellant Record Vol. 14, # 15 Appellant Record Vol. 15, # 16 Appellant Record Vol. 16, # 17 (p.11566) Appellant Record Vol. 17, # 18 (p.11622) Appellant Record Vol. 18, # 19 (p.11960) Appellant Record Vol. 19, # 20 (p.12027) Appellant Record Vol. 20, # 21 Appellant Record Vol. 21, # 22 (p.12035) Appellant Record Vol. 22, # 23 (p.12040) Appellant Record Vol. 23, # 24 (p.12046) Appellant Record Vol. 24, # 25 (p.12052) Appellant Record Vol. 25, # 26 (p.12058) Appellant Record Vol. 26, # 27 Appellant Record Vol. 27, # 28 Appellant Record Vol. 28, # 29 Appellant Record Vol. 29, # 30 Appellant Record Vol. 30, # 31 (p.12064) Appellant Record Vol. 31, # 32 (p.12067) Appellant Record Vol. 32, # 33 (p.12072) Appellant Record Vol. 33, # 34 (p.12125) Appellant Record Vol. 34, # 35 (p.12131) Appellant Record Vol. 35, # 36 Appellant Record Vol. 36, # 37 (p.12136) Appellant Record Vol. 37, # 38 (p.12159) Appellant Record Vol. 38, # 39 (p.12192) Appellant Record Vol. 39, # 40 Appellant Record Vol. 40, # 41 (p.12195) Appellant Record Vol. 41, # 42 Appellant Record Vol. 42, # 43 (p.12202) Appellant Record Vol. 43, # 44 (p.12227) Appellant Record Vol. 44, # 45 Appellee Record Vol. 45, # 46 (p.12241) Appellee Record Vol. 46) (Blanco - TXNB, Juan) (Entered: 09/27/2021) |
| 10/14/2021 | 9 (p.11540) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-12301473) filed by Highland Capital Management LP (Attachments: # 1 (p.15) Certificate of Good Standing)Attorney John A Morris added to party Highland Capital Management LP(pty:dbpos) (Morris, John) (Entered: 10/14/2021) |
| 10/18/2021 | 10 (p.11546) | Joint MOTION to Consolidate Cases *Appellants' Unopposed Joint Motion to (I) Consolidate Bankruptcy Appeals; (II) Conform Briefing Schedules; and (III) Extend Time for Applicants to File Their Opening Briefs* filed by Jonathan Bridges, |

| | | |
|---|---|---|
| | | CLO Holdco Ltd, Mark Patrick, Sbaiti & Company PLLC, The Charitable DAF Fund LP, Mazin A. sbaiti (Sbaiti, Mazin) (Entered: 10/18/2021) |
| 10/22/2021 | 11 | ELECTRONIC ORDER granting 9 (p.11540) Application for Admission Pro Hac Vice of John A. Morris. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Brantley Starr on 10/22/2021) (chmb) (Entered: 10/22/2021) |
| 10/25/2021 | 12 (p.11555) | ORDER CONSOLIDATING CASES: Member case(s) 3:21-CV-01979-S consolidated with lead case 3:21-CV-01974-X. James Dondero added to case pursuant to consolidation. Attorney Clay M Taylor, Bryan Christopher Assink, David L Kane, Douglas Joseph Lipke, Michael Eidelman, Thomas P Cimino, Jr, William W Thorsness for James Dondero added to case pursuant to consolidation. Appellants opening briefs are due no later than 12/13/2021. (Ordered by Judge Brantley Starr on 10/25/2021) (ygl) (Entered: 10/25/2021) |
| 12/06/2021 | 13 (p.11556) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-12431875) filed by Jonathan Bridges, CLO Holdco Ltd, Mark Patrick, Mazin A Sbaiti, Sbaiti & Company PLLC, The Charitable DAF Fund LP (Attachments: # 1 (p.15) Proposed Order)Attorney Erik S Jaffe added to party Jonathan Bridges(pty:a), Attorney Erik S Jaffe added to party CLO Holdco Ltd(pty:a), Attorney Erik S Jaffe added to party Mark Patrick(pty:a), Attorney Erik S Jaffe added to party Mazin A Sbaiti(pty:a), Attorney Erik S Jaffe added to party Sbaiti & Company PLLC(pty:a), Attorney Erik S Jaffe added to party The Charitable DAF Fund LP(pty:a) (Jaffe, Erik) (Entered: 12/06/2021) |
| 12/06/2021 | 14 (p.11561) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-12431970) filed by Jonathan Bridges, CLO Holdco Ltd, Mark Patrick, Mazin A Sbaiti, Sbaiti & Company PLLC, The Charitable DAF Fund LP (Attachments: # 1 (p.15) Proposed Order)Attorney Brian J Field added to party Jonathan Bridges(pty:a), Attorney Brian J Field added to party CLO Holdco Ltd(pty:a), Attorney Brian J Field added to party Mark Patrick(pty:a), Attorney Brian J Field added to party Mazin A Sbaiti(pty:a), Attorney Brian J Field added to party Sbaiti & Company PLLC(pty:a), Attorney Brian J Field added to party The Charitable DAF Fund LP(pty:a) (Field, Brian) (Entered: 12/06/2021) |
| 12/07/2021 | 15 | ELECTRONIC ORDER granting 13 (p.11556) Application for Admission Pro Hac Vice of Erik S. Jaffe. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Brantley Starr on 12/7/2021) (chmb) (Entered: 12/07/2021) |
| 12/07/2021 | 16 | ELECTRONIC ORDER granting 14 (p.11561) Application for Admission Pro Hac Vice of Brian J. Field. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Brantley Starr on 12/7/2021) (chmb) (Entered: 12/07/2021) |
| 12/13/2021 | 17 (p.11566) | Appellant's BRIEF by James Dondero. (Assink, Bryan) (Entered: 12/13/2021) |
| 12/13/2021 | 18 (p.11622) | Appendix in Support filed by James Dondero re 17 (p.11566) Appellant's Brief (Assink, Bryan) (Entered: 12/13/2021) |
| 12/13/2021 | | |

| | 19 (p.11960) | Appellant's BRIEF by Jonathan Bridges, CLO Holdco Ltd, Mark Patrick, Mazin A Sbaiti, Sbaiti & Company PLLC, The Charitable DAF Fund LP. (Jaffe, Erik) (Entered: 12/13/2021) |
|---|---|---|
| 12/17/2021 | 20 (p.12027) | MOTION for Extension of Time to File Response/Reply to 17 (p.11566) Appellant's Brief filed by Highland Capital Management LP (Attachments: # 1 (p.15) Proposed Order) (Annable, Zachery) (Entered: 12/17/2021) |
| 12/20/2021 | 21 | ELECTRONIC ORDER granting 20 (p.12027) Motion to Extend Time to File Response. Highland Capital Management, L.P.'s response is due February 14, 2022. (Ordered by Judge Brantley Starr on 12/20/2021) (chmb) (Entered: 12/20/2021) |
| 12/23/2021 | 22 (p.12035) | CERTIFICATE OF SERVICE by Highland Capital Management LP re 20 (p.12027) MOTION for Extension of Time to File Response/Reply to 17 (p.11566) Appellant's Brief (Annable, Zachery) (Entered: 12/23/2021) |
| 12/24/2021 | 23 (p.12040) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney John B. Goerlich (Filing fee $100; Receipt number 0539-12480158) filed by Highland Capital Management LP (Attachments: # 1 (p.15) Certificate of Good Standing, # 2 (p.528) Proposed Order) (Hayward, Melissa) (Main Document 23 replaced/flattened PDF on 12/27/2021) (ygl). (Entered: 12/24/2021) |
| 12/24/2021 | 24 (p.12046) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Matthew M. Madden (Filing fee $100; Receipt number 0539-12480159) filed by Highland Capital Management LP (Attachments: # 1 (p.15) Certificate of Good Standing, # 2 (p.528) Proposed Order) (Hayward, Melissa) (Entered: 12/24/2021) |
| 12/24/2021 | 25 (p.12052) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Roy T. Englert, Jr. (Filing fee $100; Receipt number 0539-12480160) filed by Highland Capital Management LP (Attachments: # 1 (p.15) Certificate of Good Standing, # 2 (p.528) Proposed Order) (Hayward, Melissa) (Entered: 12/24/2021) |
| 12/24/2021 | 26 (p.12058) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Shikha Garg (Filing fee $100; Receipt number 0539-12480161) filed by Highland Capital Management LP (Attachments: # 1 (p.15) Certificate of Good Standing, # 2 (p.528) Proposed Order) (Hayward, Melissa) (Entered: 12/24/2021) |
| 12/28/2021 | 27 | ELECTRONIC ORDER granting 23 (p.12040) Application for Admission Pro Hac Vice of John B. Goerlich. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Brantley Starr on 12/28/2021) (chmb) (Entered: 12/28/2021) |
| 12/28/2021 | 28 | ELECTRONIC ORDER granting 24 (p.12046) Application for Admission Pro Hac Vice of Matthew M. Madden. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Brantley Starr on 12/28/2021) (chmb) (Entered: 12/28/2021) |
| 12/28/2021 | 29 | ELECTRONIC ORDER granting 25 (p.12052) Application for Admission Pro Hac Vice of Roy T. Englert, Jr.. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by |

| | | |
|---|---|---|
| | | Judge Brantley Starr on 12/28/2021) (chmb) (Entered: 12/28/2021) |
| 12/28/2021 | 30 | ELECTRONIC ORDER granting 26 (p.12058) Application for Admission Pro Hac Vice of Shikha Grag. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Brantley Starr on 12/28/2021) (chmb) (Entered: 12/28/2021) |
| 01/13/2022 | 31 (p.12064) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Highland Capital Management LP. (Annable, Zachery) (Entered: 01/13/2022) |
| 01/19/2022 | 32 (p.12067) | CERTIFICATE OF SERVICE by Highland Capital Management LP re 31 (p.12064) Cert. Of Interested Persons/Disclosure Statement (Annable, Zachery) (Entered: 01/19/2022) |
| 02/14/2022 | 33 (p.12072) | Appellee's BRIEF by Highland Capital Management LP. (Annable, Zachery) (Entered: 02/14/2022) |
| 02/17/2022 | 34 (p.12125) | CERTIFICATE OF SERVICE by Highland Capital Management LP re 33 (p.12072) Appellee's Brief (Annable, Zachery) (Entered: 02/17/2022) |
| 02/22/2022 | 35 (p.12131) | MOTION for Extension of Time to File Response/Reply to 19 (p.11960) Appellant's Brief, 33 (p.12072) Appellee's Brief filed by Jonathan Bridges, CLO Holdco Ltd, Mark Patrick, Mazin A Sbaiti, Sbaiti & Company PLLC, The Charitable DAF Fund LP with Brief/Memorandum in Support. (Attachments: # 1 (p.15) Proposed Order) (Jaffe, Erik) (Entered: 02/22/2022) |
| 02/23/2022 | 36 | ELECTRONIC ORDER granting 35 (p.12131) Motion to Extend Time to File Response/Reply. Appellants shall file their reply briefs by March 21, 2022. (Ordered by Judge Brantley Starr on 2/23/2022) (chmb) (Entered: 02/23/2022) |
| 03/21/2022 | 37 (p.12136) | Appellant's REPLY BRIEF by James Dondero. (Assink, Bryan) (Entered: 03/21/2022) |
| 03/21/2022 | 38 (p.12159) | Appellant's REPLY BRIEF by Jonathan Bridges, CLO Holdco Ltd, Mark Patrick, Mazin A Sbaiti, Sbaiti & Company PLLC, The Charitable DAF Fund LP. (Jaffe, Erik) (Entered: 03/21/2022) |
| 05/26/2022 | 39 (p.12192) | MOTION to Withdraw as Attorney filed by Highland Capital Management LP (Attachments: # 1 (p.15) Proposed Order) (Goerlich, John) (Entered: 05/26/2022) |
| 05/31/2022 | 40 | ELECTRONIC ORDER granting 39 (p.12192) Motion to Withdraw as Attorney. Attorney John B Goerlich terminated. (Ordered by Judge Brantley Starr on 5/31/2022) (chmb) (Entered: 05/31/2022) |
| 08/16/2022 | 41 (p.12195) | Unopposed MOTION to Withdraw as Attorney filed by James Dondero with Brief/Memorandum in Support. (Attachments: # 1 (p.15) Proposed Order) (Taylor, Clay) (Entered: 08/16/2022) |
| 08/17/2022 | 42 | ELECTRONIC ORDER granting 41 (p.12195) Motion to Withdraw as Attorney. Attorneys Bryan Christopher Assink and Clay M Taylor are withdrawn as counsel for James Dondero. (Ordered by Judge Brantley Starr on 8/17/2022) (chmb) (Entered: 08/17/2022) |
| 08/23/2022 | 43 (p.12202) | NOTICE of Supplemental Authority filed by Jonathan Bridges, CLO Holdco Ltd, Mark Patrick, Mazin A Sbaiti, Sbaiti & Company PLLC, The Charitable DAF Fund LP (Attachments: # 1 (p.15) Exhibit(s) A: CA5-Nexpoint Advisors v. Highland |

| | | |
|---|---|---|
| | | Cap Mgmt) (Jaffe, Erik) (Entered: 08/23/2022) |
| 08/26/2022 | 44 (p.12227) | MOTION to Strike 43 (p.12202) Notice (Other), (), MOTION for Leave to File Response to Appellants' Notice of Supplemental Authority*(Motion to Strike DAF Appellants' Notice of Supplemental Authority or, in the Alternative, for Leave to Respond)* filed by Highland Capital Management LP (Attachments: # 1 (p.15) Exhibit(s) A) (Annable, Zachery) (Entered: 08/26/2022) |
| 08/29/2022 | 45 | ELECTRONIC ORDER denying 44 (p.12227) Motion to Strike ; granting 44 (p.12227) Motion for Leave to File. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) The Court DENIES the motion to strike the notice of supplemental authority filed by the DAF Appellants. The Court GRANTS the motion for leave to file a response. (Ordered by Judge Brantley Starr on 8/29/2022) (chmb) (Entered: 08/29/2022) |
| 08/29/2022 | 46 (p.12241) | RESPONSE filed by Highland Capital Management LP re: 43 (p.12202) Notice (Other). (mla) (Entered: 08/30/2022) |
| 08/30/2022 | 47 (p.12249) | CERTIFICATE OF SERVICE by Highland Capital Management LP re 44 (p.12227) MOTION to Strike 43 (p.12202) Notice (Other), (), MOTION for Leave to File Response to Appellants' Notice of Supplemental Authority*(Motion to Strike DAF Appellants' Notice of Supplemental Authority or, in the Alternative, for Leave to Respond)* (Annable, Zachery) (Entered: 08/30/2022) |
| 09/07/2022 | 48 (p.12252) | CERTIFICATE OF SERVICE by Highland Capital Management LP re 46 (p.12241) Response/Objection (Annable, Zachery) (Entered: 09/07/2022) |
| 09/28/2022 | 49 (p.12255) | Memorandum Opinion and Order: For the foregoing reasons, the order of the bankruptcy court is AFFIRMED in part and VACATED in part. (Ordered by Judge Brantley Starr on 9/28/2022) (chmb) (Entered: 09/28/2022) |
| 09/28/2022 | | Civil Case Terminated per 49 (p.12255) Memorandum Opinion and Order. (axm) (Entered: 09/28/2022) |
| 10/20/2022 | 50 (p.12287) | NOTICE OF APPEAL as to 49 (p.12255) Memorandum Opinion and Order to the Fifth Circuit by Jonathan Bridges, CLO Holdco Ltd, Mark Patrick, Mazin A Sbaiti, Sbaiti & Company PLLC, The Charitable DAF Fund LP. Filing fee $505, receipt number ATXNDC-13241029. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Field, Brian) (Entered: 10/20/2022) |
| 10/27/2022 | | USCA Case Number 22-11036 in USCA5 for 50 (p.12287) Notice of Appeal filed by Mark Patrick, The Charitable DAF Fund LP, CLO Holdco Ltd, Jonathan Bridges, Mazin A Sbaiti, Sbaiti & Company PLLC. (svc) (Entered: 10/27/2022) |
| 10/27/2022 | 51 (p.12290) | NOTICE OF APPEAL as to 49 (p.12255) Memorandum Opinion and Order to the Fifth Circuit by James Dondero. Filing fee $505, receipt number ATXNDC-13260117. T.O. form to appellant electronically at Transcript Order |

<table>
<tr><td></td><td></td><td>Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Levinger, Jeffrey) (Entered: 10/27/2022)</td></tr>
</table>

# Tab 2

**James Dondero's Notice of Appeal
(ROA.12290-91)**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CHARITABLE DAF FUND LP, CLO HOLDCO LTD; MARK PATRICK; SBAITI & COMPANY PLLC; MAZIN A. SBAITI; JONATHAN BRIDGES; and JAMES DONDERO, | § § § § § § § | |
| *Appellants*, | § § | Civil Action No. 3:21-01974-X |
| v. | § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § § | |
| *Appellee*. | | |

## **NOTICE OF APPEAL**

James Dondero hereby appeals to the United States Court of Appeals for the Fifth Circuit from this Court's Memorandum Opinion and Order entered on September 28, 2022 [Dkt. # 49] affirming in part the bankruptcy court's contempt order issued on August 4, 2021.  The parties to this appeal are James Dondero (who is represented by the undersigned counsel) and Highland Capital Management, L.P. (which is represented by the law firms of Pachulski Stang Ziehl & Jones LLP; Kromer Levin; and Hayward PLLC).

Respectfully submitted,

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**
State Bar No. 12258300
jlevinger@levingerpc.com
**J. Carl Cecere (of counsel)**
State Bar No. 24050397
ccecere@cecerepc.com
**Levinger PC**
1700 Pacific Ave.
Suite 2390
Dallas, Texas 75201
Telephone: 214-855-6817
Facsimile: 214-817-4509

*Attorneys for James Dondero*

## CERTIFICATE OF SERVICE

I hereby certify that this Notice of Appeal was served via the Court's CM/ECF System on counsel for Appellee on this 27th day of October, 2022.

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**

22-11036.12291

# Tab 3

**District Court's Memorandum
Opinion and Order
(ROA.12255–86)**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CHARITABLE DAF FUND LP; CLO HOLDCO LTD; MARK PATRICK; SBAITI & COMPANY PLLC; MAZIN A. SBAITI; JONATHAN BRIDGES; and JAMES DONDERO, | § § § § § § § § | |
| *Appellants*, | § § | Civil Action No. 3:21-cv-01974-X |
| v. | § § § | |
| HIGHLAND CAPITAL MANAGEMENT LP, | § § § § | |
| *Appellee*. | § | |

## MEMORANDUM OPINION AND ORDER

The Charitable DAF Fund LP, CLO Holdco LTD, Sbaiti & Company PLLC, Mazin Sbaiti, Jonathan Bridges, Mark Patrick, and James Dondero (collectively "Contemnors") appeal the bankruptcy court's *Order Holding Certain Parties and Their Attorneys in Civil Contempt of Court for Violation of Bankruptcy Court Orders*.[1] For the reasons explained below, the Court **AFFIRMS** in part and **VACATES** in part the bankruptcy court's order.

### I. Factual Background

Highland Capital Management, LP ("Highland")—previously headed by James Dondero—filed for Chapter 11 bankruptcy in October 2019. "[A] nasty breakup between Highland Capital and . . . James Dondero" ensued, and "[Dondero] and other

---

[1] *See* Doc. No. 8-1 at 33.

22-11036.12255

creditors began to frustrate the [bankruptcy] proceedings by objecting to settlements, appealing orders, seeking writs of mandamus, interfering with Highland Capital's management, threatening employees, and canceling trades between Highland Capital and its clients."[2]

Ultimately, Dondero agreed to relinquish some of his positions, and three individuals—John Dubel, Russell Nelms, and James P. Seery, Jr.—became independent directors of Highland.[3] The bankruptcy court approved that settlement in January 2020 (the "Governance Order").[4] Later, one of those directors, Seery, became Highland's CEO, and the bankruptcy court approved that appointment in July 2020 (the "Seery Order").[5] Given "Dondero's continued litigiousness,"[6] both orders (collectively the "gatekeeping orders") provided that "[n]o entity may commence or pursue a claim . . . against Mr. Seery relating in any way to his role as the chief executive officer . . . of the Debtor without the Bankruptcy Court . . . specifically authorizing such entity to bring such claim."[7] Those orders were not appealed.[8]

But those gatekeeping orders failed to deter: Less than a year later, two entities attempted to sue Seery. Their claims centered on a settlement between

---

[2] *In re Highland Capital Mgmt., L.P.*, No. 21-10449, 2022 WL 4093167, at *2–3 (5th Cir. Sept. 7, 2022).

[3] *See* Doc. No. 8-2 at 127, 39; Doc. No. 8-4 at 33.

[4] Doc. No. 8-4 at 33.

[5] Doc. No. 8-2 at 164–65.

[6] *Highland Capital*, 2022 WL 4093167, at *3.

[7] Doc. No. 8-2 at 165, 127–28.

[8] *Highland Capital*, 2022 WL 4093167, at *2.

2

Highland and one of its creditors, HarbourVest.   When Seery requested the bankruptcy court's approval of that settlement, Dondero, two trusts of which he is a beneficiary, and CLO Holdco, Ltd. ("CLO Holdco") objected—but to no avail.   The bankruptcy court approved the settlement.   Believing that "filing [a] motion with the bankruptcy court would have been . . . futile," Dondero took a different tack.[9]

Dondero had founded the Charitable DAF Fund LP ("DAF") and historically acted as its informal investment advisor.   Mark Patrick had become DAF's managing member on March 24, 2021.   Although Patrick initially had "no reason to believe that Mr. Seery had done anything wrong with respect to the HarbourVest transaction," Dondero quickly "told [him] that an investment opportunity was essentially usurped."[10]   Patrick thus "engaged [Sbaiti & Company PLLC] to launch an investigation" and asked "Dondero to work with the Sbaiti firm with respect to their investigation of the underlying facts."[11]

Following that investigation, DAF and CLO Holdco—which DAF owns and controls—sued Highland in this Court, alleging that Highland fraudulently withheld information when it settled with HarbourVest.   That lawsuit centered on "Mr. Seery's allegedly deceitful conduct" and "mention[ed] Mr. Seery 50 times."[12]   The complaint named Seery as a "[p]otential party," and it provided his citizenship and domicile.[13]

---

[9] Doc. No. 38 at 13.

[10] Doc. No. 8-45 at 179.

[11] *Id.* at 178.

[12] Doc. No. 8-1 at 58–59.   DAF and CLO Holdco agree that "the action [was] based on Seery's misrepresentations, omissions, and other breaches of duty committed in his role as HCM's CEO."   Doc. No. 8-7 at 117.

[13] Doc. No. 8-7 at 48.

22-11036.12257

Unsurprisingly, then, DAF and CLO Holdco quickly moved for leave to amend their complaint to add Seery as a defendant (the "Seery Motion").[14]   The movants highlighted the bankruptcy court's gatekeeping orders but requested leave to add Seery as a defendant anyhow.  This Court denied that motion the following day on the ground that the defendants had not yet been served.

Back in the bankruptcy court, Highland moved for an order requiring DAF, CLO Holdco, and those that authorized the Seery Motion to show cause why they should not be held in contempt for violating the gatekeeping orders.  The bankruptcy court granted that motion, adding Dondero to the list of individuals and entities that had to show cause.  After holding a hearing on Highland's motion, the bankruptcy court found Contemnors in contempt for violating its gatekeeping orders.  The court imposed $239,655 in sanctions to compensate Highland for its attorneys' fees and $100,000 in sanctions for each unsuccessful appeal of its contempt order.

Contemnors now appeal.

## II. Legal Standards

District courts have jurisdiction to hear appeals from final judgments of bankruptcy courts.[15]  This Court reviews a bankruptcy court's sanctions for abuse of discretion, reviewing the court's findings of fact for clear error and its conclusions of

---

[14] Doc. No. 8-7 at 115.

[15] 28 U.S.C. § 158(a)(1).

4

law *de novo*.[16]  A finding of fact is clearly erroneous when "the reviewing court is left with the definite and firm conviction that a mistake has been committed."[17]

### III. Analysis

Contemnors assert that the bankruptcy court (A) erroneously found them in contempt, (B) unlawfully issued the gatekeeping orders, (C) punitively sanctioned them, (D) erroneously sanctioned Dondero, and (E) violated the Constitution in myriad ways.  Each argument is meritless.

### A. Contempt Finding

Contemnors claim that the bankruptcy court erred in finding them in contempt for violating its gatekeeping orders.  "[T]he movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order."[18]

The bankruptcy court found each element by clear and convincing evidence.  In particular, the bankruptcy court had previously ordered that "[n]o entity may commence or pursue a claim . . . against Mr. Seery."[19]  Contemnors failed to comply with this order and "pursu[ed] litigation" against Seery because they filed a motion

---

[16] *In re Pratt*, <u>524 F.3d 580, 584</u> (5th Cir. 2008) (cleaned up).

[17] *In re Am. Dev. Intern. Corp.*, <u>188 B.R. 925, 933</u> (N.D. Tex. 1995) (cleaned up).

[18] *Tex. v. Dep't of Labor*, <u>929 F.3d 205, 213</u> n.11 (5th Cir. 2019) (cleaned up).

[19] <u>Doc. No. 8-2 at 165</u>.

22-11036.12259

requesting leave to add Seery as a defendant to a lawsuit that already centered on "Mr. Seery's allegedly deceitful conduct."[20]  Contemnors raise five objections.

First, they contend that the term *pursue* in the gatekeeping orders refers only to legal activities that occur *after* a claim has already been filed.  They cite dictionaries defining *pursue* as to "prosecute or sue" or to "carry it out or follow it."[21] But Contemnors' definitions appear absent in most dictionaries.[22]  Instead, most dictionaries define *pursue* as "seeking"[23] or "trying"[24] to obtain a desired end.

Contemnors counter that expanding *pursue* beyond "prosecute" begets a slippery slope such that even "legal research . . . [or] conferring with a client" could count.[25]  Not so.  To pursue a claim, a party must "try" or "seek" to bring that claim. Requesting leave to amend differs from legal research or client communications

---

[20] <u>Doc. No. 8-1 at 58</u>–59.

[21] <u>Doc. No. 19 at 28</u> (cleaned up).  Contemnors also cite the Court's distinction in *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 408 (1821), between *commence* and *prosecute*: "[T]o commence a suit, is to demand something by the institution of process in a Court of justice, and to prosecute the suit, is, according to the common acceptation of language, to continue that demand."

[22] *See Hepp v. Facebook*, <u>14 F.4th 204, 212</u> (3d Cir. 2021) (recognizing that "[a] comparative weighing of dictionaries is often necessary," by which a court checks multiple dictionaries (quoting Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 417 (2012))).

[23] *Pursue*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[T]o ***seek***." (emphasis added)); *Pursue*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/pursue (last visited Sept. 26, 2022) ("[T]o find or employ measures to obtain or accomplish : ***seek***." (emphasis added)).

[24] *Pursue*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To ***try*** persistently to gain or attain . . . ." (emphasis added)); *Pursue*, MACMILLAN DICTIONARY, https://www.macmillandictionary.com/us/dictionary/american/pursue (last visited Sept. 26, 2022) ("[T]o ***try*** to achieve something." (emphasis added)); *Pursue*, OXFORD LEARNER'S DICTIONARY, https://www.oxfordlearnersdictionaries.com/us/definition/english/pursue?q=pursue (last visited Sept. 26, 2022)  ("[T]o do something or ***try*** to achieve something . . . ." (emphasis added)); *Pursue*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/pursue (last visited Sept. 26, 2022) ("***[T]ry*** to do." (emphasis added)).

[25] <u>Doc. No. 19 at 29</u>.

22-11036.12260

because "a party who moves to amend usually does intend to amend."[26]  In fact, in this Court, Contemnors would have had no choice:  They attached the proposed amended complaint, and, as the local rules make clear, "[i]f leave [to amend] is granted . . . the clerk will file a copy of the amended pleading."[27]  In short, by requesting leave to amend, Contemnors tried to—and, in fact, took every action necessary on their part to—bring a claim against Seery.

Contemnors next aver that the gatekeeping orders' requirement that litigants seek the bankruptcy court's authorization to bring claims "confirms that a motion for leave to amend cannot itself be deemed to 'commence or pursue a claim.'"[28]  But Contemnors shoot themselves in the foot: "The expression of one thing implies the exclusion of others," so the gatekeeping orders' reference to an allowed method of pursuing a claim implies that other methods—like petitioning a district court—are prohibited.[29]

Second, Contemnors contend that they, in fact, complied with the gatekeeping orders by asking this Court for authorization because bankruptcy courts "constitute a unit of the district court."[30]  But the Fifth Circuit has already "reject[ed] the . . .

---

[26] *Blanks v. Lockheed Martin Corp.*, No. 4:05CV137LN, 2006 WL 1139941, at *2 (S.D. Miss. Apr. 25, 2006).

[27] N.D. TEX. CIV. R. 15.1(b); *see, e.g.*, Electronic Order Granting Motion for Leave to File, *Christman v. Walmart Inc*, No. 3:21-cv-03055-X (N.D. Tex. Sept. 20, 2022), ECF No. 20 (Starr, J.) ("Unless the [Amended Complaint] has already been filed, clerk to enter the document as of the date of this order.").

[28] Doc. No. 19 at 30.

[29] *In re Benjamin*, 932 F.3d 293, 298 (5th Cir. 2019) (quoting Scalia & Garner, *supra* note 22, at 107).

[30] Doc. No. 19 at 31 (quoting 28 U.S.C. § 151).

argument" that a party may bypass bankruptcy gatekeeping orders "by filing suit in the district court with supervisory authority over the bankruptcy court."[31]

Third, Contemnors claim they lacked "clear notice" that their request to the district court violated the gatekeeping orders because that is not a "plain or exclusive reading of those orders."[32]  It's true that only a "definite and specific order" that proscribes the performance of "a particular act" can form the foundation of a contempt finding.[33]  But the underlying order need not "anticipate every action to be taken in response to it[],"[34] because bankruptcy courts are "entitled to a degree of flexibility in vindicating [their] authority against actions that . . . violate the reasonably understood terms of the order."[35]

The gatekeeping orders were definite and specific: They proscribed the pursuit of claims against Seery sans bankruptcy-court approval.  Accordingly, the bankruptcy court did not need to delineate every activity that could constitute pursuit of a claim against Seery.  And it certainly did not need to explain that filing a proposed complaint—which this Court could automatically docket—constituted pursuit of a claim.  Although Contemnors cite cases where the sanctioned conduct was unrelated

---

[31] *Villegas v. Schmidt*, 788 F.3d 156, 159 (5th Cir. 2015).  Although Contemnors claim that *Villegas* "was careful to limit its holding," they only cite limiting language from a section that did not deal with the argument that bankruptcy courts are merely units of the district court.  Doc. No. 19 at 31 n.5.  When it actually addressed Contemnors' argument, the Fifth Circuit was clear that it "maintained the distinction between the bankruptcy court and the district court."  *Villegas*, 788 F.3d at 159.

[32] Doc. No. 19 at 32.

[33] *In re Skyport Glob. Commc'ns, Inc.*, 661 F. App'x 835, 840 (5th Cir. 2016) (cleaned up).

[34] *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000).

[35] *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013).

22-11036.12262

to the underlying order, they fail to find any precedent where an underlying order was fatally indefinite merely on account of a contemnor's definitional quibble.[36]

Fourth, Contemnors Sbaiti and Bridges assert deficient notice because they "entered the case after" the gatekeeping orders were already in existence.[37] But the record belies Contemnors' cry of ignorance. Acknowledging that Contemnors Sbaiti and Bridges were "new to the case," Highland's counsel—prior to the Seery Motion—made them "aware of the . . . Bankruptcy Court orders that prohibit Mr. Seery . . . from being sued without first obtaining authority from the Bankruptcy Court."[38] Lest doubt remain, Highland's counsel clarified that Contemnors would "violate such Orders by filing [their] motion in the District Court."[39] Sbaiti and Bridges had notice.

Fifth, Contemnors contend that their "good faith" and "forthright[ness]" counsel against a contempt finding.[40] And Contemnors Sbaiti and Bridges claim they lacked notice that the Seery Order would prohibit the conduct of those "who acted with complete candor towards this Court."[41] But candor is inapposite. The

---

[36] *See In re Baum*, <u>606 F.2d 592, 593</u> (5th Cir. 1979) (reversing sanctions for attorney's taking deposition, when the bankruptcy court previously ordered that the deposition notice was vacated but "did not explicitly direct that the deposition not take place"); *In re Gravel*, <u>6 F.4th 503, 513</u> (2d Cir. 2021) (concluding that a bankruptcy court's order did not provide notice where it prohibited challenges to a debtor's status "in any other proceeding," and the sanctioned conduct occurred outside of court), *cert. denied sub nom. Sensenich v. PHH Mortgage Corp.*, <u>142 S. Ct. 2829</u> (2022).

[37] <u>Doc. No. 19 at 34</u>.

[38] <u>Doc. No. 8-7 at 93</u>.

[39] *Id.* at 92.

[40] <u>Doc. No. 19 at 35</u>.

[41] *Id.* at 34.

gatekeeping orders didn't proscribe deceitful conduct—they prohibited pursuit of claims against Seery.  Forthright disregard of a court order is no defense.[42]

Similarly, Contemners assert that the Seery Motion was "harmless[]" because this Court denied it "before Highland expended any time responding."[43]  But the time entries of Highland's counsel tell another story.  Highland spent thousands of dollars preparing to fight the Seery Motion before this Court denied it.[44]  With no indication Contemnors would abandon their ambitions to sue Seery, Highland did not need to wait to suffer more harm.

The bankruptcy court did not err in finding Contemnors in contempt for violating its gatekeeping orders.

## B. Gatekeeping Orders

Contemnors challenge the gatekeeping orders themselves, claiming that bankruptcy courts may not shield the actions of a company's CEO.  They also assert

---

[42] *Cf. Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) ("[A] party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable.").

[43] Doc. No. 19 at 35.

[44] Doc. No. 8-45 at 21–23 (recognizing that Highland's lawyers billed myriad hours discussing "DAF lawyers['] correspondence to add CEO to DAF lawsuit, and how to respond," reviewing "e-mails . . . re[garding] DAF intention to name Seery as a defendant," "telephone conferenc[ing] . . . re: DAF intention to name Seery as a defendant," "[r]eview[ing] . . . DAF motion for leave to amend and add CEO," reviewing "correspondence with Board" regarding the motion, and "conferenc[ing] . . . regarding DAF motion to amend and response," to name a few).

22-11036.12264

that gatekeeping orders cannot shield "debtors in possession . . . with respect to any of their acts or transactions in carrying on business connected with such property."[45]

Highland asserts that this Court cannot consider Contemnors' collateral challenge of the gatekeeping orders. A "collateral attack on an [order] during contempt proceedings is prohibited if earlier review of the [order] was available."[46] In fact, when asked to review the Governance and Seery Orders, the Fifth Circuit recently concluded that it lacked "jurisdiction to consider collateral attacks on final bankruptcy orders."[47] This Court agrees that it lacks jurisdiction to consider Contemnors' collateral attack. Like the Fifth Circuit, this Court declines to "roll back the protections" of the gatekeeping orders.[48] Contemnors provide three responses.

First, Contemnors claim that the bar against collateral attacks applies only when the contemnor "previous[ly]" challenged the order and then, during contempt proceedings, asked the court to "reopen" the issue.[49] That's wrong. Both the Fifth

---

[45] Doc. No. 19 at 40 (quoting 28 U.S.C. § 959(a)).

[46] *W. Water Mgmt., Inc. v. Brown*, 40 F.3d 105, 108 (5th Cir. 1994); *accord Reich v. Crockett*, No. 95-50159, 1995 WL 581875, at *2 (5th Cir. 1995) (per curiam) ("The collateral attack of an injunction in a contempt proceeding is prohibited where the injunction was subject to earlier review."); *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d 29, 34 (1st Cir. 1980) ("Ordinarily the validity and terms of an injunction are not reviewable in contempt proceedings."); *cf. Maggio v. Zeitz*, 333 U.S. 56, 68 (1948) ("[T]he turnover proceeding is a separate one and, when completed and terminated in a final order, it becomes res judicata and not subject to collateral attack in the contempt proceedings.").

[47] *Highland Capital*, 2022 WL 4093167, at *12 n.15.

[48] *Id.*

[49] Doc. No. 38 at 11 (cleaned up); *see also Brown*, 40 F.3d at 108 (declining to allow litigants to "reopen consideration of [an] issue" after their "previous attack" on an injunction).

11

Circuit[50] and other courts[51] have declined to hear collateral challenges to orders even when the litigants had not previously challenged those orders.  And, in considering the gatekeeping orders, the Fifth Circuit did not require a previous challenge to solidify "the orders' ongoing *res judicata* effects and our lack of jurisdiction to review those orders."[52]

Second, Contemnors assert that "the Seery Order was not even a 'final' appealable order because the bankruptcy court retained jurisdiction."[53]  The Fifth Circuit disagreed, describing the gatekeeping orders as "final."[54]

Third, Contemnors aver that they lacked "notice of the Seery Order when it was issued" and thus could not "have filed a timely appeal even if they wanted to."[55]  It's true that collateral attacks are barred only where the party—or "those in privity with them"—had "a fair chance to challenge" the orders.[56]  But that doesn't help Contemnors.  Dondero affirmatively agreed to the Governance Order,[57] and both Dondero and CLO Holdco were served with the Seery Order.[58]  Further, DAF is in

---

[50] *Crockett*, <u>1995 WL 581875</u>, at *1–2 (declining to allow a collateral attack when a party previously "consent[ed]" to an injunction, but it was "subject to direct review by this court").

[51] *John Zink Co. v. Zink*, <u>241 F.3d 1256, 1260</u> (10th Cir. 2001) ("This issue ***should have been raised*** in an appeal from the 1987 proceeding and defendants are barred from raising the issue now." (emphasis added)); *G. & C. Merriam*, <u>639 F.2d at 34</u> (finding that an injunction was "not reviewable in contempt proceedings" even when the contemnor "failed effectively to exercise its right of appeal").

[52] *Highland Capital*, <u>2022 WL 4093167</u>, at *12 n.15.

[53] <u>Doc. No. 38 at 15</u> (cleaned up).

[54] *Highland Capital*, <u>2022 WL 4093167</u>, at *12 n.15.

[55] <u>Doc. No. 38 at 15</u>.

[56] *In re Linn Energy, L.L.C.*, <u>927 F.3d 862, 867</u> (5th Cir. 2019) (cleaned up).

[57] <u>Doc. No. 8-4 at 32</u>.

[58] <u>Doc. No. 8-28 at 88</u>.

privity with CLO Holdco because it controls and owns 100% of CLO Holdco.[59]  Patrick is in privity with DAF and CLO Holdco because he is DAF's managing member, and his predecessor was "the only human being authorized to act on behalf of CLO Holdco and [] DAF."[60]  Likewise, the Sbaiti firm and its lawyers are in privity with DAF because they represent DAF.  Thus, Contemnors had a fair chance to challenge the gatekeeping orders or are in privity with an entity that did.[61]

### C. Punitive Sanctions

Contemnors first assert that the bankruptcy court's $100,000-per-appeal sanction was excessive and punitive.[62]  Highland agrees that this Court should vacate that award.  Because the parties are in accord, the Court vacates the bankruptcy court's $100,000-per-appeal sanction without prejudice.[63]

Contemnors also assert that the bankruptcy court's $239,655 sanction was "criminal, rather than civil."[64]  "[B]ankruptcy courts do not have inherent *criminal* contempt powers"—they can only issue civil contempt sanctions.[65]

---

[59] Doc. No. 8-41 at 84–85.

[60] Doc. No. 8-41 at 84–85; *see also* Doc. No. 19 at 34–35.

[61] Contemnors also analogize to as-applied challenges, claiming that parties may "challenge regulations as applied to them, despite the limitations period for facial challenges having expired." Doc. No. 19 at 33.  Whatever the merits of that analogy, it does not allow this Court to ignore Fifth Circuit precedent barring collateral attacks during contempt proceedings.

[62] Doc. No. 8-1 at 41 ("[T]he court will add on a sanction of $100,000 for each level of rehearing, appeal, or petition for [*certiorari*] that the Alleged Contemnors may choose to take with regard to this Order, to the extent any such motions for rehearing, appeals, or petitions for certiorari are not successful.").

[63] Because the Court vacates that award based on the parties' agreement, it need not reach Contemnors' arguments that that award is punitive, unconstitutional, or outside the bankruptcy court's authority.

[64] Doc. No. 19 at 44.

[65] *In re Hipp, Inc.*, 895 F.2d 1503, 1511 (5th Cir. 1990).

13

To determine whether a sanction is criminal or civil, courts examine the "primary purpose" of the sanction.[66]  If the primary purpose is "to punish the contemnor and vindicate the authority of the court," then the sanction is criminal; but if the primary purpose is "to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation," then the order is civil.[67]

The bankruptcy court recognized that it could only order sanctions necessary to "coerce obedience" or "compensate the Debtor," deciding that "compensatory damages are more appropriate."[68]  Thus, the court reviewed "invoices of the fees incurred by [Highland's] counsel relating to this matter," finding that fees totaling $187,795 were "reasonable and necessary fees incurred in having to respond . . . to the contemptuous conduct."[69]  In addition, the court recognized that three attorneys participated in the contempt hearing, multiplied their hourly rates times the length of the hearing, and thus imposed $11,860 in additional costs.  After that, the court made some assumptions.  For instance, the court recognized an additional $22,271.14 that Highland's counsel "incurred during this time period" and reduced that number to $10,000, "assum[ing]" that that lower amount related to the contempt hearing.[70]  The court also "assume[d] the [Unsecured Creditors Committee] incurred $20,000 in fees monitoring this matter," evidenced by the fact that the Committee's lawyer

---

[66] *Lamar Fin. Corp. v. Adams*, <u>918 F.2d 564, 566</u> (5th Cir. 1990).

[67] *Id.*

[68] <u>Doc. No. 8-1 at 60</u>.

[69] *Id.*

[70] *Id.* at 61.

22-11036.12268

attended the contempt hearing.[71]  Lastly, the court assumed that Highland's local counsel "incurred $10,000 in fees."[72]  Contemnors lodge five objections to that award.

First, Contemnors aver that the bankruptcy court "repeatedly emphasized" that it imposed sanctions to punish Contemnors—not to compensate Highland.[73] Oddly enough—considering the alleged "repeated emphasis"—Contemnors can't come up with a solitary quote supporting that assertion.  That's because the bankruptcy court expressly designed its award to "compensate the Debtor"[74]—not to mete out punishment—and based its sanctions entirely on its calculation of Highland's attorneys' fees.[75]

Second, Contemnors contend that the sanction is excessive and that the bankruptcy court "largely pulled numbers out of thin air" in making assumptions about which fees might relate to the contempt motion.[76]  But "[t]he essential goal in shifting fees . . . is to do rough justice."[77]  This Court need not demand "auditing perfection" of the bankruptcy court, and it must give "substantial deference" to the "court's overall sense of a suit."[78]  Although the bankruptcy court did make multiple

---

[71] *Id.*

[72] *Id.*

[73] Doc. No. 19 at 45.

[74] Doc. No. 8-1 at 60.

[75] *See Ravago Americas L.L.C. v. Vinmar Int'l Ltd.*, 832 F. App'x 249, 255 (5th Cir. 2020) (per curiam) ("[F]or a sanction to be compensatory, it must be measured in some degree by the pecuniary injury caused by the act of disobedience." (cleaned up)).

[76] Doc. No. 19 at 49.

[77] *Roussell v. Brinker Intern., Inc.*, 441 F. App'x 222, 233 (5th Cir. 2011) (per curiam) (cleaned up).

[78] *Id.* (cleaned up).

22-11036.12269

assumptions, Contemnors do not quibble with any particular assumption. Absent any argument that the bankruptcy court botched a particular calculation, this Court cannot conclude that the bankruptcy court erred.[79]

Third, Contemnors assert that the bankruptcy court erred in awarding Highland fees associated with the contempt motion because "litigants are expected to pay the fees for the litigation tactics they employ."[80] Not so. The Fifth Circuit has affirmed sanctions that "reimburse [the opposing litigant] for its reasonable attorney fees related to the hearing on the motion for contempt."[81] In awarding compensatory civil sanctions, bankruptcy courts do not err in awarding a sanction that "restores the

---

[79] *See Skyport Glob.*, <u>661 F. App'x at 841</u>–42 (finding no error where "the bankruptcy court carefully calculated the fees and awarded far less than was requested").

[80] <u>Doc. No. 19 at 47</u>.

[81] *Ravago*, <u>832 F. App'x at 253</u>, <u>261</u>; *accord Skyport Glob.*, <u>661 F. App'x at 841</u> ("Almost without exception it is within the discretion of the trial court to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys' fees incurred in the investigation and prosecution of the contempt proceedings." (cleaned up)). Although Contemnors make an argument "borrowing . . . from tort law," they fail to explain how this Court could abandon binding Fifth Circuit authority in favor of a tort-law theory. <u>Doc. No. 19 at 48</u>.

16

. . . parties to where they were before they incurred attorneys' fees in an attempt to ensure compliance with the injunction."[82]

Fourth, Contemnors aver that civil sanctions must be "conditional" in that they "may be lifted if the contemnor changes course."[83]  And they cite the Supreme Court's statement that "a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to . . . avoid the fine through compliance."[84]   Because the $239,655 sanction was not conditional, they contend it constituted a criminal sanction.

But Contemnors strip the Supreme Court's statement from its salient context. The Supreme Court really said that civil sanctions can either (1) "coerce[] the defendant into compliance" or (2) "compensate[] the complainant."[85]  "Where a fine is ***not compensatory***, it is civil only if the contemnor is afforded an opportunity to purge" and "avoid the fine through compliance."[86]   In other words, the conditional nature of a sanction matters only if the sanction is meant to "***coerce***[] the defendant

---

[82] *Skyport Glob.*, 661 F. App'x at 841.  Contemnors also assert that Highland might have paid more attorneys' fees if Contemnors had properly requested the bankruptcy court's permission to sue Seery, and they cite *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017) (cleaned up), for the proposition that a "complainant in a contempt action may recover only the portion of his fees that he would not have paid but for the misconduct." Doc. No. 19 at 47 (cleaned up).  But Contemnors misconstrue *Goodyear*.  In reality, *Goodyear* made clear that courts must "determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct." *Goodyear*, 137 S. Ct. at 1187.  The bankruptcy court properly constrained its compensatory award to fees incurred during the contempt hearing, which would not have occurred in the absence of the sanctioned conduct.

[83] Doc. No. 19 at 45.

[84] Doc. No. 38 at 18 (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994)).

[85] *Bagwell*, 512 U.S. at 829 (cleaned up).

[86] *Id.* (emphasis added).

17

into compliance"—not where it ***compensates*** the injured party.[87]   Thus, when the bankruptcy court expressly designed its award to "compensate the Debtor," it did not need to craft a conditional sanction.[88]

The bankruptcy court did not err in imposing the $239,655 sanction.

### D. Dondero

Arguing separately, Dondero asserts that the bankruptcy court erred in holding him in contempt.  At the outset, the parties dispute the appropriate standard of review.[89]  This Court reviews the bankruptcy court's sanction of Dondero for abuse of discretion.[90]  Thus, to the extent Dondero challenges the bankruptcy court's factual findings about him, this Court reviews those findings for clear error.[91]   To the extent he challenges the court's legal conclusions concerning the scope of its gatekeeping orders, this Court reviews that issue *de novo*.[92]

The bankruptcy court made three factual findings concerning Dondero.  It concluded that "Dondero sparked this fire," meaning that he had "the idea of bringing the District Court Action to essentially re-visit the HarbourVest Settlement and to find a way to challenge Mr. Seery's and the Debtor's conduct."[93]   Next, the court

---

[87] *Bagwell*, 512 U.S. at 829 (emphasis added).

[88] Doc. No. 8-1 at 60.

[89] *Compare* Doc. No. 33 at 40 (arguing that this issue involves "factual matter" that this Court reviews for "clear error"), *with* Doc. No. 37 at 6 n.2 (arguing that this issue involves a "question of law that is reviewed *de novo*").

[90] *Pratt*, 524 F.3d at 584 (cleaned up).

[91] *Id.*

[92] *Id.*

[93] Doc. No. 8-1 at 53.

22-11036.12272

concluded that "Dondero encouraged Mr. Patrick to do something wrong."[94]  Finally, it concluded that Patrick "basically abdicated responsibility to Mr. Dondero with regard to dealing with Sbaiti and executing the litigation strategy."[95]  Dondero lodges four objections.

First, Dondero asserts that "[t]hese findings are not supported by the record"[96] and that he "had no involvement with the Seery Motion."[97]  Instead, he claims that he provided the Sbaiti Firm and Patrick *factual information only.*[98]  This Court reviews the bankruptcy court's factual conclusions for clear error, which occurs only if, "on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed."[99]

Ample evidence supports the bankruptcy court's factual findings.  Dondero has had a significant role in DAF for over a decade.  DAF's assets come in part from Dondero and his "family trusts."[100]  Dondero "was DAF's managing member until 2012," and he remains "DAF's informal investment advisor."[101]  After Dondero stepped down as managing member, that role went to Grant Scott, "Dondero's long-

---

[94] *Id.*

[95] *Id.*

[96] Doc. No. 17 at 37.

[97] *Id.* at 29.

[98] Doc. No. 37 at 12.

[99] *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (cleaned up).

[100] Doc. No. 8-1 at 34.

[101] *Id.*

19

time friend, college housemate, and best man at his wedding."[102]  Scott ultimately resigned due to "disagreements with . . . Dondero."[103]

Patrick replaced Scott as "DAF's general manager on March 24, 2021"—19 days before the Seery Motion.[104]  Patrick initially had "no reason to believe that Mr. Seery had done anything wrong with respect to the HarbourVest transaction."[105] Only once "Dondero told [him] that an investment opportunity was essentially usurped"[106] did Patrick "engage[] the Sbaiti firm to launch an investigation" and ask "Mr. Dondero to work with the Sbaiti firm with respect to their investigation of the underlying facts."[107]  After that, Dondero "communicated directly with the Sbaiti firm"—Patrick did not.[108]  Dondero "saw versions of the complaint before it was filed" and had "conversations with attorneys" about the complaint pre-filing.[109]  That complaint focused on "Seery's allegedly deceitful conduct" and "mention[ed] Mr. Seery 50 times."[110]  Further, when listing the parties, the complaint listed each party named

---

[102] *Id.* at 34–35.

[103] *Id.*

[104] *Id.* at 35.

[105] Doc. No. 8-45 at 179.

[106] *Id.*

[107] *Id.* at 178.

[108] *Id.* at 180.

[109] Doc. No. 8-30 at 145–46.

[110] Doc. No. 8-1 at 58–59.

22-11036.12274

in the caption along with "[p]otential party James P. Seery, Jr.," providing his citizenship and domicile.[111]

Further, although Dondero averred that he did not direct the Sbaiti firm to add Seery to the complaint, Dondero also contradicted himself, first claiming that he did not know that "the Sbaiti firm intended to file a motion for leave to amend their complaint to add Mr. Seery,"[112] but then agreeing during the hearing that he "[p]robably" was "aware that that motion was going to be filed prior to the time that it actually was filed."[113]  He also testified to conversations about the Seery Motion, noting that it involved a "very complicated legal preservation" issue.[114]

Based on all that evidence, the Court is not left with a definite and firm conviction that the bankruptcy court erred.  After being stymied in the bankruptcy court, Dondero manufactured the exigency for the lawsuit that challenged Seery's conduct.  Dondero's claim that he "did not suggest that Mr. Seery should be added as a defendant"[115] is not credible.  Dondero gave Patrick the idea of challenging Seery's conduct, and he worked with the Sbaiti firm to bring that idea to fruition in the complaint—a complaint that clearly contemplated adding Seery to the lawsuit. Likewise, his plea that he "had no involvement with the Seery Motion"[116] is not

---

[111] Doc. No. 8-7 at 48.

[112] Doc. No. 8-30 at 153.

[113] Doc. No. 8-46 at 83.  Although Dondero asserts that "no evidence demonstrates that he knew about . . . the . . . Seery Motion before it was filed," his testimony that he "probably" knew about the Seery Motion provides at least some evidence of his knowledge.  Doc. No. 37 at 14.

[114] Doc. No. 8-46 at 83.

[115] Doc. No. 17 at 38.

[116] *Id.* at 22.

22-11036.12275

credible.   Dondero himself testified to the contents of attorney communications concerning the Seery Motion, eventually admitting that he "probably" had knowledge of the Motion before it was filed.   In short, the bankruptcy court did not err, after considering the "totality of the evidence," in finding that Dondero had "the idea of" suing to "challenge Mr. Seery's . . . conduct," that he "encouraged Mr. Patrick to do something wrong," and that Patrick "abdicated responsibility to Mr. Dondero with regard to . . . executing the litigation strategy."[117]

Second, Dondero repeatedly asserts that the "only way" the bankruptcy court could have found him in contempt is if the court found him to be "an 'authorizing person' for [] DAF or CLO Holdco."[118]   Because Patrick was DAF's managing member, Dondero asserts that only Patrick could have been an "authorizing person" who could be held in contempt.   Tellingly, Dondero provides no citation for his claim that only "authorizing persons" can be liable for contempt.   Although he cites a Texas Supreme Court case holding that corporate agents are "not necessarily" liable for a corporation's contemptuous conduct, that case held that an agent could be liable if there was "evidence in the record that the corporate agent . . . was somehow *personally* connected with defying the authority of the court."[119]   And here, evidence

---

[117] Doc. No. 8-1 at 53.

[118] Doc. No. 17 at 29; *see also id.* at 37 (arguing "that was the **only way** Mr. Dondero could have been held in contempt" (emphasis added)).

[119] *Ex parte Chambers*, 898 S.W.2d 257, 261 (Tex. 1995).

22-11036.12276

abounds that Dondero was personally connected with violating the gatekeeping orders.[120]

Third, Dondero asserts that the bankruptcy court erred in holding him in contempt "sua sponte."[121] Highland's initial contempt motion did not name Dondero, and Dondero contends that "a civil contempt sanction may [not] be imposed without a request of a party."[122] That's wrong. "[B]ankruptcy courts may *sua sponte*, take any action necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process," including issuing "civil contempt orders."[123] For instance, courts may "*sua sponte* order[]" individuals to "show cause why they should not . . . be sanctioned and held in contempt."[124]

Fourth, Dondero complains that he did not have "prior notice" that he could be held in contempt because the bankruptcy court's show cause order did "*not* include[]

---

[120] Contemnors also cite agency law and argue that the bankruptcy court found that Dondero was not an agent of DAF or CLO Holdco for purposes of attorney-client privilege. But that misses the point. As Highland rightly argues, "[i]t does not matter whether Dondero was acting as an agent of DAF or CLO Holdco; what matters is whether he acted to violate two Bankruptcy Court Orders *that explicitly restrained his own personal conduct*." Doc. No. 33 at 42.

[121] Doc. No. 17 at 42.

[122] *Id.* at 43 (quoting *United States v. Russotti*, 746 F.2d 945, 949 (2d Cir. 1984)). At the outset, Dondero's cases are inapposite. One of his cases questioned a court's civil-contempt authority to issue a sanction when the purportedly aggrieved party declined to "submit[] any papers in this Court" opposing the contemnors actions. *Russotti*, 746 F.2d at 949. Another case determined which *parties* may institute civil contempt proceedings. *MacNeil v. United States*, 236 F.2d 149, 153 (1st Cir. 1956) ("[C]ivil contempt proceedings may be instituted only by the parties primarily in interest."). Neither of those issues is relevant here because Highland, the proper party, requested sanctions.

[123] *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th 285, 294 & n.14 (5th Cir. 2022) (cleaned up); *see also Lamar*, 918 F.2d at 566 ("Acting *sua sponte* . . . the district court ordered the Adamses to appear before it . . . and to show cause why they should not be held in contempt.").

[124] *Hill v. Hunt*, No. 3:07-CV-2020-O, 2010 WL 11537888, at *1 (N.D. Tex. Feb. 6, 2010) (Solis, J.); *see also Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F, 2011 WL 13130079, at *3 (N.D. Tex. Dec. 13, 2011) (Furgeson, J.) ("If ICANN fails to comply with the Court's orders, then the Court will proceed *sua sponte* to hold a hearing to determine if ICANN is in contempt and should be subjected to fines and sanctions.").

[him] in the definition of Violators."[125]  Although the show cause order didn't define "violators," it required DAF, CLO Holdco, and "Dondero [to] appear in-person before this Court and show cause why an order should not be granted . . . finding and holding each of the Violators in contempt of court."[126]  The only reasonable interpretation is that "violators" denoted the aforementioned individuals and entities summoned to court to defend their conduct.

Dondero disagrees, averring there is nothing "in the record suggesting that the Order should be read" to include him as a violator.[127]  *Au contraire*.  Dondero himself admitted to the bankruptcy court his understanding that he had been "named by the Court as an alleged or implied violator."[128]  Thus, as Highland rightly argues, "Dondero's feigned surprise . . . is an unpersuasive attempt to rewrite history."[129]

The Court cannot find that the bankruptcy court erred in sanctioning Dondero.

---

[125] Doc. No. 17 at 46–47.  He also claims that this dearth of notice constituted a due process violation.  *Id.* at 49.  This Court rejects that argument because Dondero did have notice and an opportunity to be heard.

[126] Doc. No. 8-8 at 138 (emphasis omitted).

[127] Doc. No. 37 at 17.

[128] Doc. No. 8-8 at 171.  To borrow Contemnors' turn of phrase, Dondero's counsel "repeatedly emphasized" that the court had named Dondero as a violator.  *See* Doc. No. 8-45 at 159–60 (acknowledging that Dondero was "an alleged violator"); Doc. No. 8-46 at 150 (acknowledging that Dondero and his counsel appeared because Dondero "was named . . . within the order as an alleged violator").  Dondero contends that he didn't acknowledge that he was named as a violator because he was only making the argument that he was not "a control or authorizing person."  Doc. No. 8-8 at 171; *see also* Doc. No. 37 at 19.  But his argument that he was not *properly* before the court does not undermine his acknowledgment that he had been *named* by the court as a violator.

[129] Doc. No. 33 at 44.  Dondero's citation to *Skinner v. White*, 505 F.2d 685, 690 (5th Cir. 1974), hurts his case.  The court there recognized that an order "to show cause . . . called upon [the named person] to answer simply for the act and conduct specified."  *Id.* at 690–91 (cleaned up).  Thus, *Skinner* suggests that an order to show cause provides the named individual notice that it could be held in contempt for the specified conduct.

### E. Constitutional Objections

Contemnors lodge a bevy of constitutional objections, which this Court reviews *de novo*.[130]  They ask the Court to recognize these "troubling constitutional issues," practice constitutional avoidance, and bypass these "constitutionally turbulent waters."[131]  Finding no constitutional turbulence, this Court declines.

### a. Due Process

Contemnors raise five due process issues.

First, Contemnors contend that the bankruptcy court violated due process by failing to provide notice of "the scope of potential sanctions for . . . a minor supposed infraction."[132]  Sanction decisions "must comport with due process."[133]  "[D]ue process demands . . . that the sanctioned party be afforded notice . . . ."[134]  The bankruptcy court's show cause order provided each of the named parties notice of their alleged violations and notice that the court might impose an award equal to Highland's "actual expenses incurred in bringing this Motion."[135]  Contemnors cite no authority

---

[130] *Jarkesy v. SEC*, <u>34 F.4th 446, 451</u> (5th Cir. 2022).

[131] <u>Doc. No. 19 at 64</u>–65.

[132] *Id.* at 53.

[133] *Spiller v. Ella Smithers Geriatric Ctr.*, <u>919 F.2d 339, 346</u> (5th Cir. 1990) (cleaned up).

[134] *Meyers v. Textron Fin. Corp.*, <u>609 F. App'x 775, 778</u> (5th Cir. 2015) (cleaned up).

[135] <u>Doc. No. 8-8 at 138</u>–39.

22-11036.12279

holding that notice must include a dollar range of any possible sanctions. Their notice argument is meritless.[136]

Second, Contemnors ask this Court to apply the rule of lenity. The rule of lenity "says that . . . *criminal* statutes will be construed favorably to *criminal* defendants."[137] As this Court has already found, the bankruptcy court did not impose criminal sanctions. The rule of lenity is inapplicable.

Third, Contemnors claim that the bankruptcy court prejudged their case when it referred to Contemnors as "violators" in its show cause order. It's true that "a fair tribunal is a basic requirement of due process."[138] But Contemnors fail to show that the court prejudged the case. The show cause order adopted the term "violators" from Highland's contempt motion.[139] In total, the order referred to Contemnors as "violators" three times. Contemnors cite no precedent where any similar isolated references deprived a contemnor of due process. Absent such an argument, this Court cannot conclude that the bankruptcy court's isolated use of "violators" deprived Contemnors of due process.

Fourth, Contemnors claim the bankruptcy court prejudged the case by "shift[ing] the burden" to Contemnors to show cause why they should not be held in

---

[136] Contemnors contend that the presence of "notice and due process *during the contempt proceedings* . . . . does not cure the bankruptcy court's failure to provide clear notice before the motion for leave was filed regarding the breadth of the Seery Order." Doc. No. 38 at 28. This Court already concluded Contemnors had notice of the scope of the Seery Order. *See* Part III.A. To the extent they regurgitate that argument as a due-process argument, it is likewise meritless.

[137] Cass R. Sunstein, *Nondelegation Canons*, 67 U. Chi. L. Rev. 315, 332 (2000) (emphases added).

[138] *In re Murchison*, 349 U.S. 133, 136 (1955).

[139] Doc. No. 8-4 at 183.

22-11036.12280

contempt.[140]  But show cause orders do not improperly shift the burden to the alleged contemnor.[141]  This Court rejected a similar argument where the bankruptcy court made clear that it was applying a "clear and convincing evidence" burden of proof.[142]  Because the bankruptcy court made clear that it was applying a "clear and convincing evidence" burden of proof, this Court cannot conclude that the bankruptcy court improperly shifted the burden to Contemnors.[143]

Fifth, Contemnors assert that the bankruptcy court prejudged the case by allowing evidence of Dondero's actions, even though he was not a litigant in the HarbourVest suit.  But one of the primary purposes of the gatekeeping orders was to shield Seery from "Dondero's continued litigiousness."[144]  Further, Contemnors filed the Seery Motion shortly after Dondero and CLO Holdco objected concerning the same transaction in the bankruptcy court.  The court did not need to ignore the context of this litigation, and it was entitled to question whether Dondero might be

---

[140] Doc. No. 19 at 54.

[141] *Am. Airlines*, 228 F.3d at 581–84 (recognizing "the district court's Show Cause Order" and still recognizing that the "movant in a civil contempt proceeding bears the burden" (cleaned up)).

[142] *In re LATCL&F, Inc.*, No. 398-35100-HCA, 2001 WL 984912, at *3 (N.D. Tex. Aug. 14, 2001) (Buchmeyer, C.J.).

[143] Doc. No. 8-1 at 58.

[144] *Highland Capital*, 2022 WL 4093167, at *3.

22-11036.12281

involved with the Seery Motion.  The bankruptcy court did not prejudge the suit by allowing evidence concerning Dondero.

The Court cannot conclude that the bankruptcy court violated due process.

### b. Appointments Clause

Contemnors next argue that "construing Judge Jernigan's authority as expansive and subject to deference runs headlong into caselaw concerning the Appointments Clause."[145]  Specifically, Contemnors apply four factors enumerated in *Morrison v. Olson*, 487 U.S. 654 (1988), contending that bankruptcy judges are principal offers.

The Appointments Clause says that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States"—known as principal officers.[146]  The so-called Excepting Clause says that "Congress may by Law vest the Appointment of [] inferior Officers . . . in the Courts of Law."[147]  Bankruptcy judges are "appointed by the court of appeals of the United States."[148]  Consequently, if bankruptcy judges are principal officers, then an Appointments Clause issue arises, given the dearth of presidential appointment or

---

[145] Doc. No. 19 at 59.

[146] U.S. Const. art. II, § 2, cl. 2.

[147] *Id.*

[148] 28 U.S.C. § 152(a)(1).

22-11036.12282

senatorial advice and consent.  Thus, this issue hinges on whether bankruptcy judges are principal or inferior officers.

*Edmond v. United States*, <u>520 U.S. 651, 658</u>–66 (1997)—a case conspicuously absent from Contemnors' copious briefing—considered whether judges of the Coast Guard Court of Criminal Appeals were principal or inferior officers.  *Edmond* held that "'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."[149]  The Coast Guard judges qualified as inferior because both the Judge Advocate General and the Court of Appeals for the Armed Forces (the "CAAF") had power to review their judgments.[150]  Even though the CAAF's review was limited to determining whether there was "some competent evidence in the record to establish each element," the Court concluded that this "limitation upon review does not . . . render the [Coast Guard] judges . . . principal officers" because they could only render a final decision if "permitted to do so by other Executive officers."[151]

*Edmond*'s reasoning suggests that bankruptcy judges are inferior officers.  For instance, bankruptcy judges' work is "subject to appellate review, first by the district courts and then by the courts of appeals."[152]  Although Contemnors are correct that this Court, on certain issues, provides deference to the bankruptcy court, that

---

[149] *Edmond*, <u>520 U.S. at 663</u>.

[150] *Id.* at 664.

[151] *Id.* at 664–65.

[152] Tuan Samahon, *Are Bankruptcy Judges Unconstitutional? An Appointments Clause Challenge*, 60 Hastings L.J. 233, 288 (2008).

22-11036.12283

deference in no way rivals the CAAF's deference approved in *Edmond*. As Contemnors' leading source on the issue candidly concedes, "bankruptcy judges ultimately 'have no power to render a final decision . . . unless permitted to do so' by superior judicial officers."[153] Thus, it's not shocking that the only courts to consider the issue have rejected similar Appointments Clause challenges.[154]

Contemnors' contrary argument rests entirely on *Morrison v. Olson*. But "*Edmond* . . . essentially displaced the faulty Appointments Clause analysis of *Morrison*."[155] And *Edmond* itself acknowledged that the Coast Guard judges would have satisfied multiple *Morrison* factors—yet it failed to follow those factors.[156] Further, the Fifth Circuit cites *Edmond* as the defining test for Appointments Clause issues—not *Morrison*.[157]

Contemnors provide no justification for their reliance on *Morrison* over *Edmond*. Absent such an argument, this Court cannot conclude that bankruptcy judges are unconstitutionally appointed.

---

[153] *Id.* (quoting *Edmond*, 520 U.S. at 665).

[154] *In re Khan*, No. 10-46901-ESS, 2014 WL 10474969, at *54 (E.D.N.Y. Dec. 24, 2014) ("Defendant has not shown that Article II and the Appointments Clause prevent this Court from hearing and determining this adversary proceeding."); *see also In re Khan*, 706 F. App'x 22, 22–23 (2d Cir. 2017) (rejecting the argument that "bankruptcy judges are not appointed in accordance with the Appointments Clause of the United States Constitution"). Contemnors assert that "much water has passed under the Appointments Clause bridge since" those cases. Doc. No. 38 at 30. But they fail to identify said "water."

[155] Steven G. Calabresi, *The Structural Constitution and the Countermajoritarian Difficulty*, 22 Harv. J.L. & Pub. Pol'y 3, 5 (1998) (emphases added).

[156] *Edmond*, 520 U.S. at 661 (concluding that the Coast Guard judges are "not 'limited in tenure,' as that phrase was used in *Morrison* . . . . Nor are military judges 'limited in jurisdiction'").

[157] *See Burgess v. FDIC*, 871 F.3d 297, 303 (5th Cir. 2017) ("As the Supreme Court stated in *Edmond*, inferior Officers' work is often directed and supervised . . . by a superior." (cleaned up)).

### c.  Other Constitutional Issues

Contemnors claim that the sanctions violate the Eighth Amendment's prohibition on excessive fines.  But "a fine assessed for civil contempt does not implicate the Excessive Fines Clause."[158]  And this Court has already determined that the bankruptcy court's sanctions were civil—not criminal.

Next, Contemnors assert that the gatekeeping orders constitute a judicial taking.  Their paltry argument on this point spans three sentences, culminating in their admission that their on-point case held that "Takings Clause claims for compensation are unavailable against a bankruptcy judge."[159]  Without more, Contemnors have failed to make out a judicial-takings argument.

Lastly, Contemnors assert that "the power exercised by bankruptcy courts . . . raise[s] serious separation of powers concerns" because "the gatekeeping orders purport to oust the authority of this Court to hear cases between private parties in the first instance, imposing an initial non-judicial bite at the apple."[160]  Once again,

---

[158] *In re Grand Jury Proc.*, 280 F.3d 1103, 1110 (7th Cir. 2002); *accord United States v. City of Yonkers*, 856 F.2d 444, 459 (2d Cir. 1988) ("Even if the Excessive Fines Clause should be determined to apply to punitive damages, it does not apply to civil contempt sanctions imposed to obtain compliance with court orders."), *rev'd sub nom. on other grounds Spallone v. United States*, 493 U.S. 265 (1990); *Spallone v. United States*, 487 U.S. 1251, 1257 (1988) (Marshall, J., concurring in the denial of stay) ("[T]he Cruel and Unusual Punishments Clause does not apply to civil contempt sanctions. This is not surprising since the Cruel and Unusual Punishments Clause, like the Excessive Fines Clause, applies to punishments for past conduct, while civil contempt sanctions are designed to secure future compliance with judicial decrees." (cleaned up)).

[159] Doc. No. 19 at 64 (cleaned up).

[160] Doc. No. 19 at 58.

22-11036.12285

this Court "lack[s] jurisdiction to consider [Contemnors'] collateral attacks" on the gatekeeping orders.[161]

## IV. Conclusion

For the foregoing reasons, the judgment of the bankruptcy court is **AFFIRMED** in part and **VACATED** in part. The Court **AFFIRMS** the bankruptcy court's judgment as to the $239,655 sanction and **VACATES** the judgment as to the $100,000-per-appeal sanction without prejudice.

**IT IS SO ORDERED** this 28th day of September, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[161] *Highland Capital*, 2022 WL 4093167, at *12 n.15.

22-11036.12286

# Tab 4

**Bankruptcy Court's Order Holding Certain
Parties and Their Attorneys in Civil Contempt of
Court for Violation of Bankruptcy Court Orders
(ROA.577-607)**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 3, 2021**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | |
| | § | Case No. 19-34054-sgj11 |
| Debtor. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER HOLDING CERTAIN PARTIES AND THEIR ATTORNEYS IN CIVIL CONTEMPT OF COURT FOR VIOLATION OF BANKRUPTCY COURT ORDERS[2]

### I.   Introduction.

This Memorandum Opinion and Order addresses the ***second*** civil contempt matter that this

bankruptcy court has been asked to address since confirmation of a Chapter 11 plan for Highland

Capital Management, L.P. (the "Debtor" or "Highland") on February 22, 2021.  In this instance,

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] This ruling constitutes the court's findings of fact and conclusions of law, pursuant to Fed. R. Bankr. Pro. 7052, in connection with the Motion, Memorandum of Law, Declaration, and Show Cause Order found at DE ## 2235, 2236, 2237, 2247, and 2255 in the above-referenced Bankruptcy Case.



Highland seeks to have at least two entities held in civil contempt of two bankruptcy court orders and imposed with sanctions: Charitable DAF Fund, L.P. ("DAF") and CLO Holdco, Ltd. ("CLO Holdco") (collectively, the "Alleged Contemnors").  Highland also seeks to have a law firm that has recently begun representing the Alleged Contemnors (Sbaiti & Company PLLC) held in civil contempt of the bankruptcy court, as well as any control-persons who authorized the Alleged Contemnors ("Authorizing Persons") to take the allegedly contemptuous actions.

First, who are these Alleged Contemnors?  DAF[3] is alleged to be a charitable fund and a limited company that was formed in the Cayman Islands.  DAF is the 100% owner of CLO Holdco, which is also a Cayman Islands entity.  Thus, DAF controls CLO Holdco.[4] DAF was founded by Highland's former Chief Executive Officer ("CEO") and indirect beneficial equity owner—Mr. James Dondero ("Mr. Dondero").  DAF controls $200 million of assets, which asset base was derived from Highland, Mr. Dondero, Mr. Dondero's family trusts, or other donor trusts.[5] Mr. Dondero has historically been DAF's informal investment advisor (without an agreement), and he was DAF's managing member until 2012.[6]  In 2012, an individual named Grant Scott (a patent lawyer with no experience in finance or running charitable organizations, who was Mr. Dondero's long-time friend, college housemate, and best man at his wedding) became DAF's managing member.[7] Then, Grant Scott resigned from that role, on or around January 31, 2021, after apparent

---

[3] The acronym "DAF" stands for donor advised fund.

[4] Debtor's Exh. 25 [DE # 2410]. CLO Holdco has sometimes been referred to as the "investment arm" of the DAF organizational structure.  Transcript of 6/8/21 Hearing at 122:17-20.

[5] Transcript 6/8/21 Hearing at 98:3-99:15 (testimony that the donors "gave up complete dominion and control over the respective assets and at that time claimed a federal income tax donation for that").

[6] Id. at 149:16-150:2.

[7] Id. at 150:3-5; 154:11-24; 156:7-10. See also Debtor's Exh. 23 (Grant Scott Deposition 1/21/21) at 24-25; 28:21 ("I think he is my closest friend") [DE # 2410].

2

disagreements with Mr. Dondero. After having no manager for a couple of months, an individual named Mark Patrick ("Mr. Patrick") became DAF's general manager on March 24, 2021 (just 19 days before the events occurred that are the subject of this contempt matter). It appears that Mr. Scott assigned his interests that undergirded his managing member role to Mr. Patrick at Mr. Patrick's direction.[8] Mr. Patrick was an employee of Highland (having had some sort of a "tax counsel" role—but not in Highland's legal department) from 2008 until early 2021, and he now is an employee of Highgate Consultants, d/b/a Skyview Group, which is an entity recently created by certain former Highland employees.[9] Mr. Patrick had no prior experience running a charitable organization prior to becoming DAF's manager on March 24, 2021 (just like Grant Scott).[10] He testified that he "hold[s] [him]self out as a tax professional versant on setting up offshore master fund structures."[11]

What were the allegedly contemptuous actions? DAF and CLO Holdco filed: (a) on April 12, 2021, a Complaint[12] ("Complaint") in the United States District Court for the Northern District of Texas (the "District Court Action"), against the Debtor and two Debtor-controlled entities (*i.e.,* Highland HCF Advisor, Ltd. ("Highland HCFA") and Highland CLO Funding, Ltd. (""HCLOF"));[13] and then (b) one week later, on April 19, 2021, filed a motion for leave to amend

---

[8] Debtor's Exh. 24 at 90-93 [DE # 2410].

[9] Transcript from 6/8/21 Hearing, at 95:18-97:2 [DE # 2440].

[10] *Id.* at 100:2-103:9. For further clarity, above the Cayman Islands structure for DAF and CLO Holdco, there are various foundations that hold "participation shares." *Id.* Mr. Dondero is president and director of those foundations. Debtor's Exh. 23 at 57.

[11] *Id.* at 144:7-8.

[12] Debtor's Exh. 12 [DE # 2410].

[13] Highland HCFA is a Cayman Islands limited company 100% owned by the Debtor. HCLOF is a limited company incorporated under the laws of Guernsey. It is 49.02% owned by CLO Holdco and the remaining 50%+ is owned by the Debtor or Debtor's designee, as a result of the HarbourVest Settlement, as further explained herein.

000011
APP 000046.379

the Complaint to add the Debtor's current CEO, James P. Seery, Jr. ("Mr. Seery") as a defendant in the action (the "Seery Motion").[14] ***It is the Seery Motion that is primarily in controversy here***. Note that in the original Complaint, Mr. Seery is named as a "potential party"[15] and, while not nominally a party, he was mentioned approximately 50 times, by this court's count.  Mr. Seery's conduct is plastered throughout the Complaint, accusing him of deceitful, improper conduct. ***The original Complaint does not mention that Highland is still in bankruptcy, nor that the claims asserted in the Complaint are related to a bankruptcy case pursuant to 28 U.S.C. § 1334, but, rather, asserts that federal subject matter jurisdiction exists in the District Court pursuant to 28 U.S.C. §§ 1331 & 1367***.

As will be explained further below, the District Court Action—which in some ways reads like a minority shareholder suit[16]—is all about the alleged impropriety of a settlement (*i.e.,* the "HarbourVest Settlement") that was proposed by the Debtor to the bankruptcy court in December 2020[17] and approved by the bankruptcy court (with notice to all creditors and after an evidentiary hearing) on January 14, 2021.[18]  "HarbourVest" was a collective of investors that had invested approximately $80 million in the year 2017 into the defendant-entity herein known as HCLOF (acquiring a 49.98% interest in it), and filed six proofs of claim against the Debtor in the bankruptcy case, totaling $300 million, alleging that the Debtor had committed fraud back in 2017, in

---

[14] Debtor's Exh. 19 [DE # 2410].

[15] Debtor's Exh. 12 [DE # 2410], ¶ 6.

[16] Indeed, as alluded to in footnote 13 above, CLO Holdco is a minority shareholder (49.02%) of one of the Defendants, HCLOF, and HCLOF is now more than 50% owned by the Debtor or its designee as a result of the HarbourVest Settlement—a fact that CLO Holdco and DAF apparently do not like.

[17] Declaration of John Morris (Exhs. 1 & 2 attached thereto) [DE # 2237].

[18] " HarbourVest" refers to the collective of HarbourVest Dover Street IX Investment, L.P., HarbourVest 2017 Global AIF, L.P., HarbourVest 2017 Global Fund, L.P., HV International VIII Secondary, L.P., and HarbourVest Skew Base AIF, L.P.

000012
APP 0046 280

connection with its encouraging HarbourVest to invest in and acquire the 49.98% interest in HCLOF. The Debtor and HarbourVest eventually negotiated a settlement of HarbourVest's proofs of claim which, in pertinent part, allowed HarbourVest a $45 million general unsecured claim in the bankruptcy case and involved HarbourVest transferring its 49.98% interest in defendant HCLOF to the Debtor or Debtor's designee.[19] The bankruptcy court approved this settlement as fair and equitable and in the best interests of the bankruptcy estate.[20]

Despite the full vetting in the bankruptcy court of the HarbourVest Settlement and an order approving the HarbourVest Settlement, which was not appealed by DAF or CLO Holdco,[21] various torts and other causes of action are now being alleged by DAF and CLO Holdco against the Debtor *relating entirely to the HarbourVest Settlement*, including: breach of fiduciary duties owed to DAF and CLO Holdco; breach of the HCLOF membership agreement, and an alleged right of first refusal provision therein; negligence; violations of RICO;[22] and tortious interference. In a nutshell, the gravamen of DAF's and CLO Holdco's Complaint is that the economics of the HarbourVest Settlement resulted in the Debtor obtaining HarbourVest's 49.98% in HCLOF for a value of $22.5 million, and DAF and CLO Holdco believe that the 49.98% interest was worth far more than this. DAF and CLO Holdco assert that they and HarbourVest were deceived. Somewhat shockingly to

---

[19] Declaration of John Morris (Exhs. 1 & 2 attached thereto) [DE # 2237]. HarbourVest basically wanted to rescind its earlier acquisition of the 49.98% to extract itself from Highland.

[20] Declaration of John Morris (Exh. 11 attached thereto) [DE # 2237].

[21] *Id.* The court notes that certain family trusts of Mr. Dondero (known as the Dugaboy and Get Good Trusts) did appeal the bankruptcy court order approving the HarbourVest Settlement. However, there was no stay pending appeal and the settlement was implemented.

[22] Shockingly, DAF and CLO Holdco state that Highland's "actions (performed through Seery and others) constitute violations of the federal wire fraud, mail fraud, fraud in connection with a case under Title 11, and/or securities fraud laws, pursuant to 18 U.S.C. § 1961(1)(B) and (D)." Debtor's Exh. 12, [DE # 2410], at ¶ 117.

000013
APP 000381

this court, the Complaint implies that information was withheld from DAF and CLO Holdco.[23] DAF and CLO Holdco further argue that they should have been given the opportunity to purchase HarbourVest's 49.98% interest in HCLOF. Mr. Seery is alleged to be the chief perpetrator of wrongdoing. Subsequently, in the Seery Motion, in which DAF and CLO Holdco seek leave to amend the Complaint to add Mr. Seery to the District Court Action, DAF and CLO Holdco were clear for the first time that there is a "pending Chapter 11 proceeding" and disclosed to the District Court that they did not name Mr. Seery in the Complaint since the bankruptcy court "issued an order prohibiting the filing of any causes of action against Seery in any way related to his role at [Highland], subject to certain prerequisites. In that order, the bankruptcy court also asserted 'sole jurisdiction' over all such causes of action."[24] DAF and CLO Holdco went on to state that the bankruptcy court's order "exceeds the bankruptcy court's powers and is unenforceable," but even if enforceable, in an abundance of caution, DAF and CLO Holdco are satisfying the bankruptcy court's mandates by asking the ***District Court*** for leave to sue Mr. Seery, since the bankruptcy court's powers are derivative from the District Court.[25]

Disturbingly, one of the Alleged Contemnors (CLO Holdco) objected to the HarbourVest Settlement during the bankruptcy case[26] and later withdrew its objection during the bankruptcy

---

[23] Mr. Dondero and CLO Holdco appeared at and examined the HarbourVest witness, Michael Pugatch, at a deposition before the hearing on the HarbourVest Settlement. Declaration of John Morris, Exhs. 7 & 8 thereto [DE # 2237]. Moreover, it is rather astounding to this court for anyone to suggest that any human being (Mr. Seery or anyone else) knew more, or withheld, any information that wasn't ***well known*** to Mr. Dondero and all principals/agents of DAF and CLO Holdco. Mr. Dondero and any personnel associated with DAF and CLO Holdco were as (or more) familiar with HCLOF's assets and their potential value than any human beings on the planet—having managed these assets for years. As one example, it has been represented to the court that HCLOF owns shares in MGM Holdings, Inc. ("MGM"). It is undisputed that Mr. Dondero sits on the MGM Board of Directors. *See* DE # 2236, n.14.

[24] Debtor's Exh. 17 [DE # 2410] at paragraph 2, p. 1.

[25] *Id.* at paragraph 3, pp. 1-2; & pp.5-8.

[26] Declaration of John Morris (Exh. 6 attached thereto) [DE # 2237].

000014

court hearing regarding the settlement,[27] and did not appeal the order approving the HarbourVest Settlement. CLO Holdco, in its later-withdrawn objection, made the very same argument that it now makes in Count 2 of the Complaint (in its breach of HCLOF membership agreement claim)—*i.e.,* that the Debtor committed a breach of a "right of first refusal" in the HCLOF membership agreement (in fact, this was the sole argument CLO Holdco made in its objection).[28] The Debtor and CLO Holdco submitted briefing on the alleged "right of first refusal" prior to the hearing on the HarbourVest Settlement, and the bankruptcy court spent a fair amount of time reviewing the briefing—only to learn on the morning of the hearing that CLO Holdco was withdrawing its objection.

In any event, the Debtor now alleges that the District Court Action is not only an improper collateral attack on the bankruptcy court's order approving the HarbourVest Settlement, but—more germane to this civil contempt matter—the motion to amend the District Court Action to add Mr. Seery is a violation of *two* earlier bankruptcy court orders[29] that contained "*gatekeeper provisions*"—*i.e.,* specific provisions *requiring parties to seek bankruptcy court approval before filing lawsuits against the persons controlling the Debtor*. These gatekeeper provisions—which the bankruptcy court considered to be both (a) a way to maintain control of potentially vexatious, distracting litigation (which might interfere with the reorganization effort), and (b) consistent with the United States Supreme Court case of *Barton v. Barbour*,[30] and some of its progeny (as well as

---

[27] Declaration of John Morris (Exh. 10 attached thereto), Transcript of 1/14/21 Hearing, at 7:20-8:6 [DE # 2237]. Note that two family trusts of Mr. Dondero had objected to the HarbourVest Settlement (in addition to Mr. Dondero personally), but they made clear at the January 14, 2021 Hearing on the HarbourVest Settlement that they were not asserting that the HCLOF membership agreement (or an alleged right of first refusal therein) was being violated by the HarbourVest Settlement. *Id.* at 22:5-20.

[28] Declaration of John Morris (Exh. 6 attached thereto) [DE # 2237].

[29] Debtor's Exh. 15 & 16 [DE # 2410].

[30] 104 U.S. 126 (1881).

000015

the second sentence of <u>28 U.S.C. § 959(a))</u>—were heavily negotiated in the case and significant, since they were put in place against a backdrop of contentious litigation. ***No one appealed the two bankruptcy court orders with the gatekeeper provisions***. There were still more gatekeeping provisions in the Debtor's Chapter 11 plan that the bankruptcy court confirmed on February 22, 2021 (that plan is on appeal at the Fifth Circuit, although the Fifth Circuit has denied a stay pending appeal; at the time of the hearing on this civil contempt matter, the plan had not yet gone effective).

Objections to the Debtor's request to have the Alleged Contemnors, the Alleged Contemnors' lawyers, and Authorizing Persons held in civil contempt of court were filed by DAF, CLO Holdco, Sbaiti & Company, PLLC,[31] by Mr. Patrick,[32] and by Mr. Dondero.[33] They argue that the Alleged Contemnors have not violated the bankruptcy court's prior orders containing gatekeeper provisions because the Alleged Contemnors have ***not actually sued*** Mr. Seery but, rather, have sought permission from the District Court to sue him. They argue that, even though the January 2020 Corporate Governance Order and July 2020 Seery CEO Order required parties to seek bankruptcy court permission to sue Mr. Seery, that seeking ***District Court*** permission is appropriate, since district courts actually have bankruptcy subject matter jurisdiction and bankruptcy courts are mere units of the district courts. Moreover, the Alleged Contemnors suggest that the bankruptcy court's gatekeeper provisions in the two orders ***exceeded the reach of its powers***, and, again, their Seery Motion was simply about asking the court with original bankruptcy subject matter jurisdiction (*i.e.,* the District Court) for authority to sue Mr. Seery.

---

[31] DE # 2313.

[32] DE # 2309.

[33] DE # 2312.

000016

The bankruptcy court held an evidentiary hearing on the civil contempt matter on June 8, 2021. For the reasons set forth below, the court finds and concludes that DAF, CLO Holdco, Sbaiti & Company, PLLC (and its lawyers Jonathan Bridges and Mazin Sbaiti), Mr. Patrick, and Mr. Dondero are all in civil contempt of at least two bankruptcy court orders of which they had knowledge and were well aware. They shall each be jointly and severally liable for the sum of **$239,655** as a compensatory sanction for their civil contempt, and they will be purged from their contempt if they pay this amount within 15 days of entry of this Order. Moreover, the court will add on a sanction of **$100,000** for each level of rehearing, appeal, or petition for *certiorari* that the Alleged Contemnors may choose to take with regard to this Order, to the extent any such motions for rehearing, appeals, or petitions for *certiorari* are not successful.

## II.      Background.

A brief summary of the above-referenced bankruptcy case can be found in this court's Memorandum and Opinion issued June 7, 2021, regarding an earlier contempt motion that involved Mr. Dondero and different allegedly contemptuous actions.[34] This court will not repeat that summary herein but will hit some of the most pertinent highlights.

Bankruptcy Filing. On October 16, 2019 (the "Petition Date"), Highland filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Highland is a registered investment advisor that manages billions of dollars of assets. Highland's assets are spread out in numerous, separate fund vehicles. While the Debtor has continued to operate and manage its business as a debtor-in-possession, the role of Mr. Dondero *vis-à-vis* the Debtor was significantly limited early in the bankruptcy case and ultimately terminated. The Debtor's current CEO, Mr. Seery, was selected by the creditors and approved by the bankruptcy court during the Chapter 11 case.

---

[34] Adversary Proceeding No. 20-03190, [DE # 190].

000017

Corporate Governance Shake-Up. Specifically, early in the case, the Official Unsecured Creditors Committee (the "UCC")—whose members asserted well over $1 billion worth of claims and whose members had been in litigation with Highland for many years in many courts—and the U.S. Trustee ("UST") both desired to have a Chapter 11 Trustee appointed in Highland's bankruptcy case—absent some major change in corporate governance—due to conflicts of interest and the alleged self-serving, improper acts of Mr. Dondero and possibly other former officers. Under this pressure, the Debtor negotiated a term sheet and settlement with the UCC, which was executed by Mr. Dondero and approved by a bankruptcy court order on January 9, 2020 (the "January 2020 Corporate Governance Order").[35] The settlement and term sheet contemplated a **complete overhaul of the corporate governance structure of the Debtor**. Mr. Dondero resigned from his role as an officer and director of the Debtor and of the Debtor's general partner. Three new independent directors (the "Independent Board") were appointed to govern the Debtor's general partner—Strand Advisors, Inc. ("Strand")—which, in turn, manages the Debtor. All of the new Independent Board members were selected by the UCC and are very experienced within either the industry in which the Debtor operates, restructuring, or both. The three Independent Board members are: Retired Bankruptcy Judge Russell Nelms; John Dubel; and Mr. Seery. As noted above, one of the Independent Board members, Mr. Seery, was ultimately appointed as the Debtor's new CEO and CRO on July 16, 2020 (the "July 2020 Seery CEO Order").[36] To be clear, Highland—during the bankruptcy case and still now—is governed by these wholly new,

---

[35] *See* Debtor's Exh. 15 [DE # 2410]. The exact title and location on the Bankruptcy Docket for this Order is: Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course [DE # 339].

[36] *See* Debtor's Exh. 16 [DE # 2410]. The exact title and location on the Bankruptcy Docket for this Order is: Order Approving Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Retention of James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative Nunc Pro Tunc to March 15, 2020 [DE # 854].

000018

Independent Board members who had no prior connection to Highland. They were brought in to build trust with creditors and to hopefully put an end to a litigation culture that permeated Highland.

As for Mr. Dondero, while not originally contemplated as part of the January 2020 Corporate Governance Settlement, the Debtor proposed at the hearing on the January 2020 Corporate Governance Settlement that Mr. Dondero remain on as an unpaid employee of the Debtor and also continue to serve as a portfolio manager for certain separate ***non-Debtor*** investment vehicles/entities whose funds are managed by the Debtor. The court approved this arrangement when the UCC ultimately did not oppose it.  Mr. Dondero's authority with the Debtor was subject to oversight by the Independent Board,[37] and Mr. Seery was given authority to oversee the day-to-day management of the Debtor, including the purchase and sale of assets held by the Debtor and its subsidiaries, as well as the purchase and sale of assets that the Debtor manages for various separate non-Debtor investment vehicles/entities.

Eventually, the Debtor's new Independent Board concluded that it was untenable for Mr. Dondero to continue to be employed by the Debtor in any capacity because of conflicts and friction on many issues. Mr. Dondero's employment arrangement with the Debtor ceased in October 2020, but the termination of his employment was not the end of the friction between the Debtor and Mr. Dondero.  In fact, a week after his termination, litigation posturing and disputes began erupting between Mr. Dondero and certain of his related entities, on the one hand, and the Debtor on the other.

---

[37] "Mr. Dondero's responsibilities in such capacities shall in all cases be as determined by the Independent Directors . . . [and] will be subject at all times to the supervision, direction and authority of the Independent Directors.  In the event the Independent Directors determine for any reason that the Debtor shall no longer retain Mr. Dondero as an employee, Mr. Dondero agrees to resign immediately upon such determination." *See* Debtor's Exh. 15 (paragraph 8 therein). [DE # 2410].

000019
000163587

Plan Confirmation.  The bankruptcy court confirmed a Chapter 11 plan on February 22, 2021.  The plan was supported by the UCC and an overwhelming dollar amount of creditors.  Mr. Dondero and certain entities related to him objected to the plan and have appealed the Confirmation Order. Mr. Seery remains as the executive of the Debtor, and will continue to serve in that role, under a specific structure established in the plan and accompanying documents (with oversight by the court and creditor representatives).

III. **The Impetus for this Second Civil Contempt Matter.**

A. The Orders.

The subject of this second civil contempt matter is, primarily, two orders *that were never appealed*: (a) the January 2020 Corporate Governance Order; and (b) the July 2020 Seery CEO Order—both referenced above. [38]

B. The Gatekeeper Provisions in the Two Orders.

As mentioned above, these orders contained certain provisions that are sometimes referred to as "gatekeeper" provisions.  These "gatekeeper" protections require litigants to obtain the bankruptcy court's approval before suing certain protected parties in control of the Debtor for actions arising in the course of their duties, including Mr. Seery.

Paragraph 10 of the January 2020 Corporate Governance Order provided:

> No entity may commence or pursue a claim or cause of action of any kind against any Independent Director, any Independent Director's agents, or any Independent Director's advisors relating in any way to the Independent Director's role as an independent director of Strand without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Independent Director, any Independent Director's agents, or any Independent Director's advisors and (ii) specifically authorizing such entity to bring such claim. The Court will have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

---

[38] Debtor's Exhs. 15 & 16. The HarbourVest Settlement Order described above is likewise significant to this analysis (also not appealed by the Alleged Contemnors).

000020

Similarly, paragraph 5 of the July 2020 Seery CEO Order provided:

> No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

Despite these gatekeeper provisions, on April 12, 2021, the Alleged Contemnors, through new counsel (*i.e.,* different from the lawyers who represented them during the Bankruptcy Case previously) filed the District Court Action and promptly thereafter filed the Seery Motion asking the District Court for permission to add him as a defendant.

C.  A Few Words About Gatekeeper Provisions.

Gatekeeper provisions are not uncommon in the world of bankruptcy. There are multiple decisions from the Northern District of Texas[39] (as well as other districts)[40] approving gatekeeper

---

[39] *See, e.g., In re Pilgrim's Pride Corp.,* 2010 Bankr. LEXIS 72 (Bankr. N.D. Tex. Jan. 14, 2010) (bankruptcy court channeled to itself exclusive jurisdiction to hear claims against debtors' management (including their boards of directors and chief restructuring officer) and the professionals based upon their conduct in pursuit of their responsibilities during the chapter 11 cases.); *see also In re CHC Group, Ltd.* (Case No. 16-31854, Bankr. N.D. Tex.) Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization [DE # 1671-1, attached to Findings of Fact and Conclusions of Law, and Order Confirming the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization], Section 10.8(b) at 57 (court retained *exclusive* jurisdiction to hear claims against any "Protected Party," including any claims "in connection with or arising out of . . . the administration of this Plan or the property to be distributed under this Plan, . . . or the transactions in furtherance of the foregoing, . . . .") (emphasis added); *see also Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233 (5th Cir. 1988) (bankruptcy court must determine that claim is colorable before authorizing a committee to sue in the stead of the debtor).

[40] *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 546 B.R. 284 (Bankr. S.D.N.Y. 2016) (bankruptcy court acts as gatekeeper to determine whether claims of certain creditors against certain Madoff feeder funds are direct claims (claims which may be brought by the creditor) or derivative claims (claims which either can only be brought by the Madoff post-confirmation liquidating trust or have already been settled by the trust)); *In re Motors Liquidation Co.,* 541 B.R. 104 (Bankr. S.D.N.Y. 2015) (discussing bankruptcy court's gatekeeper function over GM ignition switch cases); *In re Motors Liquidation Co.,* 568 B.R. 217 (Bankr. S.D.N.Y. 2017) (same). The use of the gatekeeper structure in the General Motors cases is particularly noteworthy. The causes of action arising from defective ignition switches are based on state tort law – both product liability and personal injury – and are causes of action unquestionably outside the jurisdiction of a bankruptcy court to hear on the merits. Nevertheless, the General Motors bankruptcy court acted as the gatekeeper post-confirmation to determine whether such litigation should proceed against the estate of the old debtor or the asset purchaser under the confirmed plan.


000021

provisions that either: (a) granted exclusive jurisdiction in the bankruptcy court to hear matters challenging the actions of debtors' officers and directors arising from their conduct in the bankruptcy cases; or (b) at least granted power to a bankruptcy court to determine whether such matters could go forward.[41]

Bankruptcy courts frequently determine that the "Barton Doctrine" supports gatekeeper provisions and may, by analogy, sometimes be applied to executives and independent directors of debtors in possession. The "Barton Doctrine" originated from an old Supreme Court case[42] dealing with receivers. The "Barton Doctrine" was eventually expanded in bankruptcy jurisprudence to apply to bankruptcy trustees. As this court once noted regarding the "Barton Doctrine":

> [It] provides that, as a general rule, before a suit may be brought against a trustee, leave of the appointing court (*i.e.*, the bankruptcy court) must be obtained. The Barton doctrine is not an immunity doctrine but—strange as this may sound— has been held to be a jurisdictional provision (in other words, a court will not have subject matter jurisdiction to adjudicate a suit against a trustee unless and until the bankruptcy court has granted leave for the lawsuit to be filed).[43]

Courts have articulated numerous rationales for having this jurisdictional gatekeeping doctrine. One is that, because a "trustee in bankruptcy is an officer of the court that appoints him,"[44] the appointing court "has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties."[45] Another rationale is that the leave requirement

---

[41] *See Villegas v. Schmidt*, 788 F.3d 156, 158-59 (5th Cir. 2015) (under "Barton Doctrine," litigant must still seek authority from the bankruptcy court that appointed the trustee before filing litigation even if the bankruptcy court may not have jurisdiction to adjudicate the underlying claim).

[42] *Barton v. Barbour*, 104 U.S. 126 (1881).

[43] *Baron v. Sherman (In re Ondova Ltd. Co.)*, 2017 Bankr. LEXIS 325, *29 (Bankr. N.D. Tex. February 1, 2017); report and recommendation adopted, *Baron v. Sherman (In re Ondova Co.)*, 2018 U.S. Dist. LEXIS 13439 (N.D. Tex. Jan. 26, 2018), *aff'd, In re Ondova Ltd.*, 2019 U.S. App. LEXIS 3493 (5th Cir. 2019).

[44] *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996).

[45] *Id.*

000022

"enables the bankruptcy court to maintain control over the estate and furthers the goal of centralizing all creditors' claims so they can be efficiently administered."[46]  Yet other courts have expressed an underlying reason for the doctrine is to maintain a panel of competent and qualified trustees and to ensure efficient administration of bankruptcy estates:   Without the leave requirement, "trusteeship w[ould] become a more irksome duty" and it would become "harder for courts to find competent people to appoint as trustees.   Trustees w[ould] have to pay higher malpractice premiums" and "this w[ould] make the administration of bankruptcy estates more expensive."[47] Finally, another policy concern underlying the doctrine is a concern for the overall integrity of the bankruptcy process and the threat of trustees being distracted from or intimidated from doing their jobs.  For example, losers in the bankruptcy process might turn to other courts to try to become winners there—by alleging the trustee did a negligent job.[48]  The Fifth Circuit has recently recognized the continuing vitality of the "Barton Doctrine"—even after *Stern v. Marshall*[49] (that is, even in a scenario in which the appointing bankruptcy court might not itself have Constitutional authority to **adjudicate** the claims asserted against the trustee pursuant to the *Stern* decision).[50]

 To be clear, the "Barton Doctrine" originated as a protection for federal receivers, but courts expanded the concept to bankruptcy trustees, and eventually it has been applied to various court-appointed and court-approved fiduciaries and their agents in bankruptcy cases, including debtors in

---

[46] *In re Ridley Owens, Inc.*, 391 B.R. 867, 871 (Bankr. N.D. Fla. 2008).

[47] *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) (citing *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998)). *See also generally* 1 COLLIER ON BANKRUPTCY 10-4 & 10-5 (Alan R. Resnick and Henry J. Sommer, eds., 16th Ed. 2016).

[48] *Linton*, 136 F.3d at 545-546.

[49] *Stern v. Marshall*, 564 U.S. 462 (2011).

[50] *See Villegas v. Schmidt*, 788 F.3d 156, 58-59 (5th Cir. 2015).

000023

possession,[51] officers and directors of a debtor,[52] and the general partner of a debtor.[53] In the Highland case, since Mr. Seery and the Independent Directors were proposed by the UCC to avoid the appointment of a trustee, it seemed rather obvious to the bankruptcy court that they should have similar protections from suit—particularly against the backdrop of a litigation culture at Highland that had theretofore existed.

DAF and CLO Holdco argue that the gatekeeper provisions that are involved here run afoul of 28 USC § 959(a) and are an inappropriate extension of the "Barton Doctrine" and, more generally, they argue that the January 2020 Corporate Governance Order and July 2020 Seery CEO Order simply went too far by precluding claims being asserted against Mr. Seery that are lesser than gross negligence and willful misconduct—suggesting that precluding claims lesser than gross negligence and willful misconduct (such as a mere negligence claim) would violate federal law (the Investment Advisors Act) because Mr. Seery cannot contract away his fiduciary duties in this regard.

Putting aside for the moment the fact that the January 202 Corporate Governance Order and the July 2020 Seery CEO Order are final and nonappealable orders that have *res judicata* effect, DAF and CLO Holdco are simply wrong about 28 U.S.C. § 959(a) and the unavailability of the "Barton Doctrine" in a situation such as this.  28 U.S.C. § 959(a) states:

---

[51] *Helmer v. Pogue*, 2012 U.S. Dist. LEXIS 151262 (N.D. Ala. Oct. 22, 2012) (applying Barton Doctrine to debtor in possession); *see also* 11 U.S.C §§ 1107(a) (providing that a debtor in possession has all the rights and duties of a trustee and serves in the same fiduciary capacity).

[52] *See Carter v. Rodgers*, 220 F.3d 1249, 1252 & n.4 (11th Cir. 2000) (debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer for acts done in the actor's official capacity, and finding no distinction between a "bankruptcy-court-appointed officer" and officers who are "approved" by the court); *Hallock v. Key Fed. Sav. Bank (In re Silver Oak Homes)*, 167 B.R. 389 (Bankr. D. Md. 1994) (president of debtor).

[53] *Gordon v. Nick*, 1998 U.S. App. LEXIS 21519 (4th Cir. 1998) (managing partner of debtor).

000024

Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. ***Such actions shall be subject to the general equity of such court*** so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury. (Emphasis added.)

To be sure, this statute has long been recognized as a limited exception to the "Barton Doctrine," so that trustees and debtors in possession can be sued for postpetition torts or other causes of action that happen to occur in the ***ordinary course of operating a business*** (as opposed to actions of the trustee while engaged in the general administration of the case)—the classic example being a "slip and fall" personal injury suit that might occur on the premises of a business that a trustee or debtor in possession is operating.[54] However, DAF and CLO Holdco ignore the last sentence of the statute that gives the appointing court the equitable powers to control the litigation "as the same may be necessary to the ends of justice." This is precisely what a gatekeeper provision is all about.[55]

But as earlier noted, DAF and CLO Holdco are too late to argue about the legality or enforceability of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order. The Fifth Circuit has made clear that, if a party fails to object to or appeal a final order—even one that grants relief that may be outside of a bankruptcy court's jurisdiction—the order is *res judicata* as to parties who had the opportunity to object to it. It becomes the law of the case and is

---

[54] *E.g., Muratore v. Darr*, 375 F.3d 140, 144 (1st Cir. 2004) (section 959(a) "is intended to 'permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store'") (quoting *Carter v. Rodgers*, 220 F.3d 1249, 1254 (11th Cir. 2000)). *See also Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996); *In re Am. Associated Sys., Inc.*, 373 F. Supp. 977, 979 (E.D. Ky. 1974).

[55] The court further notes anecdotally that DAF and CLO Holdco demanded a jury trial in their Complaint, and they have alluded to this as a reason why it was appropriate to bring their suit in the District Court. But it appears they contractually waived their jury trial rights in a prepetition agreement with Highland. *See* DE # 2495, Ex. A thereto, ¶14(f).

000025

not subject to collateral attack.[56] The Supreme Court has more recently stated this principle in the

bankruptcy context in *United Student Aid Funds, Inc. v. Espinosa.*[57]

In summary, there can be no doubt that there are two binding, nonappealable final orders[58]

that govern in the situation at bar. Not only were they wholly proper but parties are now bound by

them regardless.

IV.    **The Evidence at the June 8, 2021 Hearing.**

The bankruptcy court held an evidentiary hearing on the civil contempt matter on June 8,

2021. The court considered the Declaration of John Morris (with Exhibits 1-18 thereto), at DE #

2237; Debtor's Exhibits 12-55, at DE ## 2410 & 2421; Exhibits 1, 3-12, 15-28, 30-46 of DAF,

CLO Holdco, and Mr. Patrick at DE ## 2411 & 2420; and the live witness testimony of Mr. Patrick

and Mr. Dondero.

There really is very little, if anything, in dispute.  No one disputes the existence of the

January 2020 Corporate Governance Order or the July 2020 Seery CEO Order or the Harbourvest

Settlement.  No one disputes the existence of the District Court Action or the Seery Motion. Thus,

all that the court heard at the June 8, 2021 hearing that was "new," beyond what was in the pleadings

and documents, was the explanations/rationales given by those involved with filing the District

Court Action and the Seery Motion.

---

[56] *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987).

[57] 130 S. Ct. 1367 (2010) (order confirming Chapter 13 plan, that improperly proposed to discharge a student loan without a hardship adversary proceeding, was not void where there had been no objection or appeal).

[58] DAF and CLO Holding presented a case at the June 8, 2021 hearing suggesting the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order might not have been final orders. The case dealt with an employment order under Section 327 of the Bankruptcy Code, and this court does not believe it was applicable here.

000026

Mr. Patrick testified that he became the manager/director of DAF and CLO Holdco on March 24, 2021,[59] and he earns no compensation for that role, although the prior manager/director, Mr. Grant Scott, earned $5,000 per month.[60] Mr. Patrick testified that he authorized the filing of the Complaint and the Seery Motion.[61] He testified that he retained the Sbaiti law firm 12 days before the District Court Action was filed, and the idea for filing the Complaint came from that firm,[62] although Mr. Dondero "brought certain information" to Mr. Patrick. Mr. Patrick then "engaged the Sbaiti firm to launch an investigation," and "also wanted Mr. Dondero to work with the Sbaiti firm with respect to their investigation of the underlying facts."[63] Mr. Patrick elaborated that he had no specific knowledge about the HarbourVest Settlement before taking charge of DAF and CLO Holdco,[64] but Mr. Dondero came to him with information about it.[65] Mr. Patrick did not talk to DAF's and CLO Holdco's prior managing member (Grant Scott) about the District Court Action, even though Grant Scott had been the managing member at the time of the HarbourVest Settlement that is the subject of the District Court Action.[66] Mr. Patrick hired the Sbaiti law firm at the unsolicited recommendation of D.C. Sauter,[67] the in-house general counsel of NexPoint

---

[59] Transcript 6/8/21 Hearing, at 97:3-21. [DE# 2440].

[60] *Id.* at 132:6-17. *See also* Debtor's Exh. 24 at 96:2-18 [DE # 2410].

[61] Transcript 6/8/21 Hearing, at 103:10-14; 104:3-13. [DE # 2440].

[62] *Id.* at 104:9-22.

[63] *Id.* at 105:1-5.

[64] *Id.* at 104:17-22.

[65] *Id.* at 105:13-106:16.

[66] Debtor's Exh. 24 at 101:10-102:20 [DE # 2410]; *see also* Transcript 6/8/21 Hearing, at 108:20-109:22. [DE # 2440].

[67] Transcript 6/8/21 Hearing, at 106:22-107:11. [DE # 2440].

000027

Advisors (a company of which Mr. Dondero is president and controls).[68] Mr. Patrick further testified that Mr. Dondero communicated directly with the Sbaiti firm in relation to the investigation that was being undertaken and he "did not participate in those conversations";[69] Mr. Patrick "considered Mr. Dondero as the investment advisor to the portfolio . . . I wanted him to participate in the investigation."[70] Mr. Patrick confirmed that there is no formal investment advisory agreement with Mr. Dondero, and DAF and CLO Holdco had previously been in an investment advisory agreement with Highland.[71] While Mr. Patrick's testimony was replete with comments that he deferred to the Sbaiti law firm quite a bit, he did confirm that he authorized the filing of the Seery Motion and he was aware of the July 2020 Seery CEO Order.[72]

As for Mr. Dondero, much of the testimony elicited from Mr. Dondero centered around whether he essentially controls DAF and CLO Holdco and the sequence of events that led to Mr. Grant Scott resigning as their managing member. Recall that Mr. Scott had been their managing member at the time of the HarbourVest Settlement—to which CLO Holdco objected and then

---

[68] NexPoint Advisors is 99% owned by Mr. Dondero's family trust, Dugaboy Investment Trust, and is 1% owned by NexPoint Advisors GP, LLC, which is 100% owned by Mr. Dondero. [DE # 2543].

[69] *Id.* at Transcript 6/8/21 Hearing, at 107:24-108:18. [DE # 2440].

[70] *Id.* at 107:18-23.

[71] The lawyers at Sbaiti & Company commented during opening statements that Mr. Dondero was the source of certain of the information in the Complaint and that they were asserting "work product privilege" and "attorney-client privilege" as to their communications with Mr. Dondero "because he's an agent of our client." *Id.* at 41:6-10. The court ultimately overruled this claim of privilege since, among other things, Mr. Patrick's own testimony confirmed that Mr. Dondero had no contractual arrangement of any sort with DAF and CLO Holdco, and he was not a board member and had no decision-making authority for them. *Id.* at 137:2-12; *See also id.* at 180:23-188:7. For purposes of privilege assertion, there was no evidence whatsoever that Mr. Dondero was an agent or representative of DAF and CLO Holdco.

[72] *Id.* at 111:5-112:9.

000028

withdrew its objection.[73]  Mr. Dondero testified that he believed Mr. Scott's decision to withdraw the objection to the HarbourVest Settlement was inappropriate.[74]

Mr. Dondero further confirmed that he was the founder and primary donor to DAF.[75] He expressed disapproval for Mr. Scott's various decisions on behalf of DAF and CLO Holdco during the bankruptcy case (such as withdrawing a proof of claim and settling a lawsuit with the Debtor).[76] He testified about general knowledge of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order.[77]  He confirmed that he participated in discussions with Mr. Sbaiti regarding the filing of the Complaint—indicating he spoke with the firm a "[h]alf dozen times, maybe."[78] He testified that he was not involved with the Seery Motion itself.[79]

The totality of the evidence was clear that Mr. Dondero sparked this fire (*i.e.,* the idea of bringing the District Court Action to essentially re-visit the HarbourVest Settlement and to find a way to challenge Mr. Seery's and the Debtor's conduct), and Mr. Patrick and Sbaiti & Company, PLLC, were happy to take the idea and run with it. The court believes the evidence was clear and convincing that Mr. Dondero encouraged Mr. Patrick to do something wrong, and Mr. Patrick basically abdicated responsibility to Mr. Dondero with regard to dealing with Sbaiti and executing the litigation strategy.

### Conclusions of Law

---

[73] *Id.* at 163:10-165:18.

[74] *Id.*

[75] *Id.* at 165:19-24.

[76] *Id.* at 161:24-168:1; 169:1-170:9.

[77] *Id.* at 178:16-180:11.

[78] *Id.* at 180:12-22; 207:10-12.

[79] *Id.* at 210:7-14.

000029
[illegible]

A. <u>Jurisdiction and Authority</u>.

Bankruptcy subject matter jurisdiction exists in this matter, pursuant to <u>28 U.S.C. § 1334(b)</u>. This bankruptcy court has authority to exercise such subject matter jurisdiction, pursuant to <u>28 U.S.C. § 157(a)</u> and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984. This is a core matter pursuant to <u>28 U.S.C. § 157(b)</u> in which this court may issue a final order.

The contempt motion currently before the court seeks for this court to hold DAF, CLO Holdco, Sbaiti & Company, PLLC, and any persons who authorized their actions in civil contempt of court for violating two orders of this court. Mr. Patrick and Mr. Dondero have both responded herein—neither, of course, admitting to any wrongdoing.

It is well established that bankruptcy courts have civil (as opposed to criminal) contempt powers. "The power to impose sanctions for contempt of an order is an inherent and well-settled power of all federal courts—including bankruptcy courts."[80] A bankruptcy court's power to sanction those who "flout [its] authority is both necessary and integral" to the court's performance of its duties.[81] Indeed, without such power, the court would be a "mere board[ ] of arbitration, whose judgments and decrees would be only advisory."[82]

---

[80] *In re SkyPort Global Comm's, Inc.,* No. 08-36737-H4-11, <u>2013 WL 4046397</u>, at *1 (Bankr. S.D. Tex. Aug. 7, 2013), *aff'd.,* <u>661 Fed. Appx. 835</u> (5th Cir. 2016); *see also In re Bradley,* <u>588 F.3d 254, 255</u> (5th Cir. 2009) (noting that "civil contempt remains a creature of inherent power[,]" to "prevent insults, oppression, and experimentation with disobedience of the law[,]" and it is "widely recognized" that contempt power extends to bankruptcy) (quoting <u>11 U.S.C. § 105(a)</u>, which states, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.),* <u>108 F.3d 609, 613</u> (5th Cir. 1997) ("[W]e assent with the majority of the circuits … and find that a bankruptcy court's power to conduct civil contempt proceedings and issue orders in accordance with the outcome of those proceedings lies in <u>11 U.S.C. § 105</u>."); *Citizens Bank & Trust o. v. Case (In re Case),* <u>937 F.2d 1014, 1023</u> (5th Cir. 1991) (held that bankruptcy courts, as Article I as opposed to Article III courts, have the inherent power to sanction and police their dockets with respect to misconduct).

[81] *SkyPort Global,* <u>2013 WL 4046397</u>, at *1.

[82] *Id.* (internal quotations omitted); *see also Bradley,* <u>588 F.3d at 266</u> (noting that contempt orders are both necessary and appropriate where a party violates an order for injunctive relief, noting such orders "are important to the

22

000030
APP 0003698

Contempt is characterized as either civil or criminal depending upon its "primary purpose."[83] If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil.[84] It is clear that Highland's intent is to both seek compensation for the expenses incurred by Highland, due to the Alleged Contemnors' purported violations of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order (*i.e.,* the gatekeeper provisions therein), and to coerce compliance going forward.

    B.   <u>Type of Civil Contempt: Alleged Violation of a Court Order.</u>

There are different types of civil contempt, but the most common type is violation of a court order (such as is alleged here). "A party commits contempt when [they] violate[] a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order."[85] Thus, the party seeking an order of contempt in a civil contempt proceeding need only establish, by clear and convincing evidence:[86] "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order."[87]

---

management of bankruptcy cases, but have little effect if parties can irremediably defy them before they formally go into effect.").

[83] *Bradley*, <u>588 F.3d at 263</u>.

[84] *Id.* (internal citations omitted).

[85] *Travelhost*, <u>68 F.3</u>d at 961.

[86] *United States v. Puente*, <u>558 F. App'x 338, 341</u> (5th Cir. 2013) (per curiam) (internal citation omitted) ("[C]ivil contempt orders must satisfy the clear and convincing evidence standard, while criminal contempt orders must be established beyond a reasonable doubt.").

[87] *F.D.I.C. v. LeGrand*, <u>43 F.3d 163, 170</u> (5th Cir. 1995); *see also Martin v. Trinity Indus., Inc.*, <u>959 F.2d 45, 47</u> (5th Cir. 1992) (same); *Travelhost*, <u>68 F.3</u>d at 961 (same).

000031
APP 000399

C.  <u>Specificity of the Order</u>.

To support a contempt finding in the context of an order alleged to have been violated, the order must delineate 'definite and specific' mandates that the defendants violated."[88] The court need not, however, "anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated."[89]

D.  <u>Possible Sanctions</u>.

To be clear, if the court ultimately determines that the Alleged Contemnors are in contempt of court, for not having complied with the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order, the court can order what is necessary to: (1) compel or coerce obedience of the order; and (2) to compensate the Debtor/estate for losses resulting from the Alleged Contemnors' non-compliance with the court orders.[90] The court must determine that the Debtor/movant showed by clear and convincing evidence that: (1) the orders were in effect; (2) the orders required or prohibited certain conduct; and (3) that the Alleged Contemnors failed to comply with the orders.[91] "[T]he factors to be considered in imposing civil contempt sanctions are: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order."[92] "Compensatory civil contempt reimburses the injured party for

---

[88] *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000) (citing Fed. R. Civ. P. 65).

[89] *Id.*

[90] *In re Gervin*, 337 B.R. 854, 858 (W.D. Tex. 2005) (citing *United States v. United Mine Workers*, 330 U.S. 258 (1947)).

[91] *In re LATCL&F, Inc.*, 2001 WL 984912, at *3 (N.D. Tex. 2001) (citing to *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 400 (5th Cir. 1987)).

[92] *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (citing *United States v. United Mine Workers*, 330 U.S. 258 (1947)).

000032


the losses and expenses incurred because of [their] adversary's noncompliance."[93] Ultimately, courts have "broad discretion in the assessment of damages in a civil contempt proceeding."[94]

E.   Knowledge of the Order.

"An alleged contemnor must have had knowledge of the order on which civil contempt is to be based.  The level of knowledge required, however, is not high. And intent or good faith is irrelevant."[95] To be clear, "intent is not an element in civil contempt matters.  Instead, the basic rule is that all orders and judgments of courts must be complied with promptly."[96]

F.   Willfulness of Actions.

For civil contempt of a court order to be found, "[t]he contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order."[97] For a stay violation, the complaining party need not show that the contemnor intended to violate the stay. Rather, the complaining party must show that the contemnor intentionally committed the acts which violate the stay. Nevertheless, in determining whether damages should be awarded under the court's contempt powers, the court considers whether the contemnor's conduct constitutes a willful violation of the stay.[98]

---

[93] *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976); *see also Travelhost*, 68 F.3d at 961 (noting that "[b]ecause the contempt order in the present case is intended to compensate [plaintiff] for lost profits and attorneys' fees resulting from the contemptuous conduct, it is clearly compensatory in nature."); *In re Terrebonne Fuel & Lube, Inc.,* 108 F.3d at 613 (affirming court's decision to impose sanctions for violating injunction and awarding plaintiff costs and fees incurred in connection with prosecuting defendant's conduct); *F.D.I.C.*, 43 F.3d at 168 (affirming court's imposition of sanctions requiring defendant to pay movant attorneys' fees).

[94] *Am. Airlines*, 228 F.3d at 585; *see also F.D.I.C.*, 43 F.3d at 168 (reviewing lower court's contempt order for "abuse of discretion" under the "clearly erroneous standard."); *In re Terrebonne Fuel & Lube, Inc.,* 108 F.3d at 613 ("The bankruptcy court's decision to impose sanctions is discretionary[]").

[95] *Kellogg v. Chester,* 71 B.R. at 38.

[96] *In re Unclaimed Freight of Monroe, Inc.,* 244 B.R. 358, 366 (Bankr. W.D. La. 1999); *see also In re Norris*, 192 B.R. 863, 873 (Bankr. W.D. La. 1995) ("Intent is not an element of civil contempt.")

[97] *Am. Airlines*, 228 F.3d at 581 (citing *N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984)).

[98] *In re All Trac Transport, Inc.,* 306 B.R. 859, 875 (Bankr. N.D. Tex. 2004) (internal citations omitted).

25

000033
APP 001

Case 19-3_Case:_2_1_-_1_1_D_06 26_6D_0_c_u_m_e_nt_0_6/_6_5_/_21 P_a_g_e_8_2_d 0_8_/_4_2_F_i_l_e_d:_0_5_/_2_3_/_2_0_2_ag_e 26 of 31

Case 3:21-cv-01974-X   Document 8-1   Filed 09/27/21   Page 58 of 463   PageID 588

G.  <u>Applying the Evidence to the Literal Terms of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order.</u>

The court concludes that there is clear and convincing evidence that DAF, CLO Holdco, Sbaiti & Company, PLLC (through attorneys Mazin Sbaiti and Jonathan Bridges), Mr. Patrick, and Mr. Dondero—each and every one of them, with their collaborative actions—violated the specific wording of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order, and all are in contempt of the bankruptcy court.  The evidence was clear and convincing:  (1) that two court orders were in effect (the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order); (2) that the orders prohibited certain conduct (*i.e.,* "[n]o entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim.");[99] and (3) that the all of the Alleged Contemnors (DAF, CLO Holdco, Sbaiti & Company, PLLC, Mr. Mazin Sbaiti, Mr. Jonathan Bridges, Mr. Patrick, and Mr. Dondero) knew about the orders and failed to comply with the court's orders.

As earlier noted, the District Court Action is all about Mr. Seery's allegedly deceitful conduct in connection with a bankruptcy court-approved settlement (*i.e.,* the HarbourVest Settlement), to which CLO Holdco objected, but then withdrew its objection the day of the hearing.  ***The lawsuit is, from this court's estimation, wholly frivolous***.  This court is in a better position to realize its frivolousness than any other—having spent hours reflecting on the merits of the HarbourVest Settlement.  This court believes that it is clear and convincing that each of the Alleged

---

[99] This is quoting from the July 2020 Seery CEO Order.  The January 2020 Corporate Governance Order, of course, had the same prohibitory language as to all three of the Independent Directors.

000034

Contemnors knew that it would be a "hard sell" to convince this bankruptcy court that the District Court Action and the claims against Mr. Seery should be allowed to go forward. That's why they tried their luck with the District Court—concocting a rationale that their methods were proper since the bankruptcy court's power to exercise bankruptcy subject matter is derivative, by statute, from the District Court. This rationale is nothing more than thinly veiled forum shopping. But worse, it is, in this instance, contempt of court. The Alleged Contemnors argue that they should not be held in contempt because, in filing the Complaint (which mentions Mr. Seery 50 times—but merely names him as a "potential party"), they did not "commence or pursue" a claim against Mr. Seery. Likewise, they argue that, in filing the Seery Motion, they did not actually "commence or pursue" a claim against Mr. Seery. They argue that a request for leave from the District Court, to add him to the District Court Action, cannot possibly meet the definition of "pursue"—and that one can only "pursue" litigation against a party *after* "commencing" an action against the party. This is linguistic gymnastics that does not fly. The Alleged Contemnors were pursuing litigation when they filed the Seery Motion in the District Court (and maybe even as early as when they filed the Complaint mentioning Mr. Seery 50 times and describing him as a "potential party"). These were all sharp litigation tactics, to be sure, but more problematic, were contemptuous of this court's orders.

**V. Damages**.

The Contempt Motion requests that the court: (a) find and hold each of the Alleged Contemnors (directed at DAF, CLO Holdco, Sbaiti & Company, PLLC, and any persons who actually authorized their acts—*i.e.,* "Authorizing Persons") in contempt of court; (b) direct the Alleged Contemnors, jointly and severally, to pay the Debtor's estate an amount of money equal to two times the Debtor's actual expenses incurred in bringing this contempt matter, payable within three calendar days of presentment of an itemized list of expenses; (c) impose a penalty of three

27

000035

times the Debtor's actual expenses incurred in connection with any future violation of any order of this court; and (d) grant the Debtor such other and further relief as the court deems just and proper under the circumstances.[100]

As indicated earlier, the court can order what is necessary to: (1) compel or coerce obedience of an order; and (2) to compensate the Debtor/estate for losses resulting from non-compliance with a court order. Here, the court believes compensatory damages are more appropriate than a remedy to compel or coerce future compliance. Compensatory damages are supposed to reimburse the injured party for the losses and expenses incurred because of their adversary's noncompliance. Courts have broad discretion but may consider such factors as: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order.

As far as the harm from noncompliance, the Debtor presented invoices of the fees incurred by its counsel relating to this matter. The invoices were Exhibits 54 & 55 [DE # 2421]. The invoices reflect fees of the Debtor's primary bankruptcy counsel, Pachulski Stang, relating to this contempt matter, during the time period of April 18–April 30, 2021, of $38,796.50,[101] and another $148,998.50,[102] during the time period of May 1–June 7, 2021. These total **$187,795**, and the court determines these to have been reasonable and necessary fees incurred in having to respond and react to the contemptuous conduct set forth herein. Moreover, the court considers it to likely be a

---

[100] Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court Orders. [DE # 2247].

[101] The total fees and expenses for this time period were $1,295,070.58, but the court has calculated the fees related to this contempt matter.

[102] The total fees and expenses for this time period were $1,465,010 but the court has calculated the fees related to this contempt matter.

000036

conservative number because: (a) it does not reflect the fees and expenses incurred at the June 8, 2021 Hearing (which went 4+ hours); (b) it does not include any expenses the firm incurred (the court notes from the time entries that there were depositions taken—thus, there must have been expenses); (c) it does not include any fees and expenses that the UCC may have incurred monitoring this contested matter; and (d) it does not include any fees for Pachulski's local counsel (Hayward & Associates). As for the June 8, 2021 Hearing, the court is aware that at least three professionals from Pachulski Stang participated (Jeff Pomeranz at $1,295/hour; John Morris at $1,245/hour; and paralegal Asia Canty at $425/hour, for a total of $2,965/hour; multiplied by 4 hours equals $11,860)—thus, the court will add on another $11,860 of fees that should be reimbursed. The expenses the Pachulski firm incurred during this time period were $22,271.14, but they are not itemized. Thus, the court will assume $10,000 of this related to the contempt matter. The court will conservatively assume the UCC incurred $20,000 in fees monitoring this matter—as this matter could impact their constituency's recovery (the court is aware that the UCC's lawyer Matthew Clemente attended the June 8, 2021 Hearing). The court will conservatively assume that Hayward and Associates incurred $10,000 in fees assisting Pachulski. Thus, all totaled, this amounts to **$239,655** of fees and expenses that this court is imposing upon the Alleged Contemnors, jointly and severally, to reimburse the bankruptcy estate for the fees and expenses it has incurred relating to their contemptuous acts.

The Debtor has asked for the court to impose a penalty of three times the Debtor's actual expenses incurred in connection with any future violation of any order of this bankruptcy court. The court declines to do this. However, the court will add on a sanction of $100,000 for each level of rehearing, appeal, or petition for *certiorari* that the Alleged Contemnors may choose to take

000037
APP.006.005

with regard to this Order, to the extent any such motions for rehearing, appeals, or petitions for certiorari are not successful.

    Accordingly, it is hereby ORDERED that:

(i)    DAF, CLO Holdco, Sbaiti & Company, PLLC (including Mazin Sbaiti and Jonathan Bridges), Mark Patrick, and James Dondero (collectively, now the "Contemnors") are each in civil contempt of court in having violated the court's January 2020 Corporate Governance Order and July 2020 Seery CEO Order—the court having found by clear and convincing evidence that: (1) these orders were in effect and each of the Contemnors knew about them; (2) the orders prohibited certain conduct; and (3) the Contemnors failed to comply with the orders;

(ii)    In order to compensate the Debtor's estate for loss and expense resulting from the Contemnors' non-compliance with the orders, the Contemnors are jointly and severally liable for the compensatory sum of **$239,655** and are directed to pay the Debtor (on the 15th day after entry of this order) an amount of money equal to **$239,655;**

(iii)    The court will add on a monetary sanction of **$100,000** for each level of rehearing, appeal, or petition for *certioriari* that the Contemnors may choose to take with regard to this Order, to the extent that any such motions for rehearing, appeals, or petitions for *certiorari* are pursued by any of them and are not successful;

(iv)    Other sanctions (such as further deterrence sanctions) are denied at this time but, ***should any of these Contemnors be subject to another contempt motion in this court in the future and be found to have committed contempt***, the court anticipates imposing significant deterrence sanctions (the court duly notes that this is the second

000038

time in the last several weeks that the court has found Mr. Dondero to be in contempt

of court); and

(v)      The court reserves jurisdiction to interpret and enforce this Order.

### End of Memorandum Opinion and Order ###



# Tab 5

**Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not be Held in Civil Contempt for Violating Two Court Orders (ROA.1764-68)**

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

---

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

---

## DEBTOR'S MOTION FOR AN ORDER REQUIRING THE VIOLATORS TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING TWO COURT ORDERS

Highland Capital Management, L.P., the debtor and debtor-in-possession (the "<u>Debtor</u>" or

"<u>Highland</u>") in the above-captioned chapter 11 case ("<u>Bankruptcy Case</u>"), by and through its

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

undersigned counsel, files this motion (the "Motion") seeking entry of an order requiring The Charitable DAF Fund, L.P. ("The DAF"), CLO Holdco, Ltd. ("CLO Holdco"), the persons who authorized The DAF and CLO Holdco, respectively (together, the "Authorizing Persons") to file the Seery Motion (as defined below) in the DAF Action (as defined below), and Sbaiti & Company PLLC ("Sbaiti & Co." and together with The DAF, CLO Holdco, and the Authorizing Persons, the "Violators"), counsel to The DAF and CLO Holdco in the DAF Action, to show cause why each of them should not be held in civil contempt for violating the Court's: (a) *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339], and (b) *Order Approving Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Retention of James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative Nunc Pro Tunc to March 15, 2020* [Docket No. 854] (together, the "Orders"). In support of its Motion, the Debtor states as follows:

## JURISDICTION AND VENUE

1.       This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2.       Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

3.       The predicates for the relief requested in the Motion are sections 105(a) and 362(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 7065 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

2

4.       The Debtor requests that this Court issue the proposed form of order attached as

**Exhibit A** (the "Proposed Order"), pursuant to sections 105(a) and 362(a) of the Bankruptcy Code

and Rules 7001 and 7065 of the Bankruptcy Rules.

5.       For the reasons set forth more fully in the *Debtor's Memorandum of Law in Support*

*of Motion for an Order Requiring the Violators to Show Cause Why They Should Not Be Held in*

*Civil Contempt for Violating Two Court Orders* (the "Memorandum of Law"), filed

contemporaneously with this Motion, the Debtor requests that the Court: (a) find and hold each of

the Violators in contempt of court; (b) direct the Violators, jointly and severally, to pay the

Debtor's estate an amount of money equal to two (2) times the Debtor's actual expenses incurred

in bringing this Motion, payable within three (3) calendar days of presentment of an itemized list

of expenses; (c) impose a penalty of three (3) times the Debtor's actual expenses incurred in

connection with any future violation of any order of this Court (including filing any motion in the

District Court to name Mr. Seery as a defendant without seeking and obtaining this Court's prior

approval, as required under the Orders), and (d) grant the Debtor such other and further relief as

the Court deems just and proper under the circumstances.

6.       In accordance with Rule 7007-1 of the *Local Bankruptcy Rules of the United States*

*Bankruptcy Court for the Northern District of Texas* (the "Local Rules"), contemporaneously

herewith and in support of this Motion, the Debtor is filing: (a) its Memorandum of Law, and (b)

the *Declaration of John A. Morris  in Support of the Debtor's Motion for an Order Requiring the*

*Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court*

*Orders* (the "Morris Declaration") together with the exhibits annexed thereto.

7.      Based on the exhibits annexed to the Morris Declaration, and the arguments contained in the Memorandum of Law, the Debtor is entitled to the relief requested herein as set forth in the Proposed Order.

8.      Notice of this Motion has been provided to all parties.  The Debtor submits that no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests that the Court (i) enter the Proposed Order substantially in the formed annexed hereto as **Exhibit A** granting the relief requested herein, and (ii) grant the Debtor such other and further relief as the Court may deem proper.

DOCS_NY:42974.2 36027/002

001139

Dated:  April 23, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# Tab 6

**Order Requiring the Violators to Show Cause
Why They Should Not be Held in Civil Contempt
For Violating Two Court Orders
(ROA.2584-86)**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 28, 2021**

**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | § |
| | §  Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § |
| | §  Case No. 19-34054-sgj11 |
| Debtor. | § |
| | § |

**ORDER REQUIRING THE VIOLATORS TO SHOW CAUSE WHY THEY SHOULD
NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING TWO COURT ORDERS**

Having considered (a) the *Debtor's Motion for an Order Requiring the Violators to Show
Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court Orders* [Docket
No. 2247] (the "Motion"), (b) the *Debtor's Memorandum of Law in Support of Motion for an
Order Requiring the Violators to Show Cause Why They Should Not Be Held in Civil Contempt
for Violating Two Court* [Docket No. 2236] (the "Memorandum of Law"),[2] (c) the exhibits

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address
for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Memorandum
of Law.

001876

22-90066584

annexed to the *Declaration of John A. Morris in Support of Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court Orders* [Docket No. 2237] (the "Morris Declaration"), and (d) all prior proceedings relating to this matter, including the proceedings that led to the entry of each of the Orders and the Approval Order; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having determined that the legal and factual bases set forth in the Motion establish good cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      On **Tuesday, June 8, 2021 at 9:30 a.m. (Central Time)** (i) The Charitable DAF Fund, L.P. ("The DAF"); (ii) CLO Holdco, Ltd. ("CLO Holdco"); (iii) Sbaiti & Company PLLC ("Sbaiti & Co."); (iv) those persons who authorized The DAF and CLO Holdco, respectively, to file *Plaintiff's Motion for Leave to File First Amended Complaint in the District Court* in that certain civil action styled *Charitable DAF Fund, L.P. et al. v. Highland Capital Management, L.P. et al.*, case no. 21-cv-00842, pending in the United States District Court for the Northern District of Texas; and (v) James Dondero shall appear **in-person** before this Court and show cause why an order should not be granted: (a) finding and holding each of the Violators in contempt of court; (b) directing the Violators, jointly and severally, to pay the Debtor's estate an amount of money equal to two (2) times the Debtor's actual expenses incurred in bringing this Motion, payable within three (3) calendar days of presentment of an itemized list of expenses; (c) imposing a penalty of three (3) times the Debtor's actual expenses incurred in connection with any future violation of

2

001877
22-30062585

any order of this Court (including filing any motion in the District Court to name Mr. Seery as a defendant without seeking and obtaining this Court's prior approval, as required under the Orders), and (d) granting the Debtor such other and further relief as the Court deems just and proper under the circumstances.

2.     Any response (each, a "Response") to the relief requested in the Motion shall be filed with the Clerk of the Court on or before **Friday, May 14, 2021 at 5:00 p.m. (Central Time)** (the "Response Deadline").

3.     The Debtor may file a reply (each, a "Reply") to any Response.  Any Reply shall be filed with the Clerk of the Court on or before **Friday, May 21, 2021 at 5:00 p.m. (Central Time)** (the "Reply Deadline").

4.     The Court shall retain exclusive jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Order.

### END OF ORDER ###

DOCS_NY:43022.1 36027/002

001878

22-01006-2586