**No. 22-11036**

# United States Court of Appeals
## for the Fifth Circuit

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P., *Debtor,*

THE CHARITABLE DAF FUND L.P.; CLO HOLDCO, LIMITED; MARK PATRICK; SBAITI & COMPANY P.L.L.C.; MAZIN A. SBAITI; JONATHAN BRIDGES,

*Appellants,*

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Appellee.*

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P., *Debtor,*

JAMES DONDERO,

*Appellant,*

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
Nos. 3:21-cv-01974-X, 3:21-cv-1979-S

**BRIEF FOR APPELLANTS
THE CHARITABLE DAF FUND L.P.; CLO HOLDCO, LTD;
MARK PATRICK; SBAITI & COMPANY PLLC;
MAZIN A. SBAITI; JONATHAN BRIDGES**

Mazin A. Sbaiti
Jonathan Bridges
SBAITI & COMPANY PLLC
JPMorgan Chase Tower
2200 Ross Avenue
Suite 4900W
Dallas, TX 75201
Telephone: (214) 432-2899
mas@sbaitilaw.com

Erik S. Jaffe
 *Lead Counsel*
Brian J. Field
Aaron Gordon
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
ejaffe@schaerr-jaffe.com

*Counsel for Appellants The Charitable DAF Fund, L.P.;
CLO Holdco, Ltd.; Mark Patrick; Sbaiti & Company, PLLC;
Mazin A. Sbaiti; and Jonathan Bridges*

FEBRUARY 6, 2023

## CERTIFICATE OF INTERESTED PERSONS

No. 22-11036
*The Charitable DAF Fund, LP, et al. v.*
*Highland Capital Management, LP*

The undersigned counsel of record certifies that the following persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| | |
|---|---|
| Appellants: | The Charitable DAF Fund, L.P.<br>CLO Holdco, Ltd.<br>Mark Patrick<br>Sbaiti & Company, PLLC<br>Mazin A. Sbaiti<br>Jonathan Bridges |
| Counsel for Appellants: | SCHAERR \| JAFFE LLP<br>Erik S. Jaffe (ejaffe@schaerr-jaffe.com)<br>Brian J. Field (bfield@schaerr-jaffe.com)<br>Aaron Gordon (agordon@schaerr-jaffe.com)<br><br>SBAITI & COMPANY PLLC<br>Mazin A. Sbaiti (mas@sbaitilaw.com)<br>Jonathan Bridges (jeb@sbaitilaw.com) |
| Appellant: | James Dondero |
| Counsel for Appellant Dondero: | LEVINGER, P.C.<br>Jeffrey S. Levinger (jlevinger@levingerpc.com) |

Debtor & Appellee:   Highland Capital Management, L.P.

Counsel for Debtor   Kramer Levin Naftalis & Frankel, L.L.P.
& Appellee:          Roy Theodore Englert, Jr. (renglert@kramerlevin.com)
                     Shikha Garg (sgarg@kramerlevin.com)
                     Matthew M. Madden (mmadden@kramerlevin.com)

                     Pachulski Stang Ziehl & Jones, L.L.P.
                     Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com)
                     Gregory Vincent Demo (gdemo@pszjlaw.com)
                     John A. Morris (jmorris@pszjlaw.com)

                     Hayward, PLLC
                     Zachery Z. Annable (zannable@haywardfirm.com)
                     Melissa Sue Hayward (mhayward@haywardfirm.com)


                                        */s/ Erik S. Jaffe*
                                        Erik S. Jaffe

                                        *Counsel of Record for Appellants*
                                        *The Charitable DAF Fund, L.P.;*
                                        *CLO Holdco, Ltd.; Mark Patrick;*
                                        *Sbaiti & Company, PLLC; Mazin*
                                        *A. Sbaiti; and Jonathan Bridges*

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument as they believe it will significantly aid the decisional process in this case. There are strong grounds for reversing the judgment below, and the questions presented concerning contempt and the interpretation of judicial orders are likely to arise in future cases.

# TABLE OF CONTENTS

JURISDICTION ........................................................................ 1

ISSUES PRESENTED ............................................................. 1

STATEMENT OF THE CASE ................................................. 3

    A.   Statement of Facts ................................................. 5

    B.   Procedural Background ......................................... 7

SUMMARY OF ARGUMENT ............................................... 15

ARGUMENT ......................................................................... 21

    I.   Appellants Did Not Violate the Seery Order. ...................... 22

    II.   The Seery Order Was, at the Very Least, Ambiguous as to Whether Appellants' District-Court Motion Constituted Unauthorized "Pursu[it]" of a Claim. ............... 36

    III.   The Damages Imposed by the Bankruptcy Court Were Not Caused by the Alleged Contempt, Rendering them and the Order as a Whole Invalid ......................................... 40

    IV.   The *Barton* Doctrine Has Suspect Foundations and Should Not Be Extended to Corporate Officers of the Debtor. ..................................................................... 47

CONCLUSION ...................................................................... 59

CERTIFICATE OF SERVICE ............................................... 61

CERTIFICATE OF COMPLIANCE ...................................... 62

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ................................................................52

*Am. Mfrs. Mut. Ins. Co. v. Schaefer,*
124 S.W.3d 154 (Tex. 2003)....................................................36

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................52

*Balandran v. Safeco Ins. Co. of Am.,*
972 S.W.2d 738 (Tex. 1998)..............................................23, 26

*Barton v. Barbour,*
104 U.S. 126 (1881) ......................................... 2, 12, 51, 55

*Bennett v. Bombela,*
No. 83 C 480, 1996 WL 745384 (N.D. Ill. Dec. 30, 1996) ...........30

*Brogan v. United States,*
522 U.S. 398 (1998) ................................................................52

*Bryant v. Dayton Casket Co.,*
433 N.E.2d 142 (Ohio 1982) ...........................................30, 31

*Cal. Artificial Stone Paving Co. v. Molitor,*
113 U.S. 609 (1885) ................................................................15

*CANarchy Craft Brewery Collective, LLC v.*
*Tex. Alcoholic Beverage Comm'n,*
37 F.4th 1069 (5th Cir. 2022)................................................23

*Carroll v. Abide,*
788 F.3d 502 (5th Cir. 2015) ..........................................50, 55, 57

*Chua v. Ekonomou,*
1 F.4th 948 (11th Cir. 2021................................................57

*City of Champaign v. Hill,*
  173 N.E.2d 839 (Ill. App. Ct. 1961) .................................................... 25

*Cohens v. Virginia,*
  19 U.S. (6 Wheat.) 264 (1821) .......................................................... 25

*Day v. Persels & Assocs., LLC,*
  729 F.3d 1309 (11th Cir. 2013) ........................................................ 23

*Dew v. Crown Derrick Erectors, Inc.,*
  208 S.W.3d 448 (Tex. 2006) ............................................................ 41

*Diamond v. Charles,*
  476 U.S. 54 (1986) .......................................................................... 42

*Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush,*
  261 F.3d 1037 (11th Cir. 2001) ........................................................ 38

*Dynamic CRM Recruiting Sols., LLC v. UMA Educ., Inc.,*
  31 F.4th 914 (5th Cir. 2022) ..................................................... *passim*

*Fox v. Vice,*
  563 U.S. 826 (2011) .......................................................... 44, 45, 46

*Gen. Motors Corp. v. Tracy,*
  519 U.S. 278 (1997) ........................................................................ 51

*Goodyear Tire & Rubber Co. v. Haeger,*
  137 S. Ct. 1178 (2017) ............................................................. 43, 44

*Heritage Res., Inc. v. NationsBank,*
  939 S.W.2d 118 (Tex. 1996) ............................................................ 23

*Hernandez v. Mesa,*
  140 S. Ct. 735 (2020) ...................................................................... 53

*Hysaw v. Dawkins,*
  483 S.W.3d 1 (Tex. 2016) ................................................................ 29

*In re Cleveland Imaging & Surgical Hosp., LLC,*
  26 F.4th 285 (5th Cir. 2022) ............................................................ 40

*In re Highland Cap. Mgmt., L.P.*,
  No. 19-34054-SGJ11, 2021 WL 3418657
  (Bankr. N.D. Tex. Aug. 4, 2021),
  *aff'd in part, vacated in part sub nom.*
  *Charitable DAF Fund LP v. Highland Cap. Mgmt. LP*,
  No. 3:21-CV-01974-X, 2022 WL 4538466
  (N.D. Tex. Sept. 28, 2022) ........................................................ 1

*In re Hipp, Inc.*,
  895 F.2d 1503 (5th Cir. 1990) .................................................. 35

*In re Linton*,
  136 F.3d 544 (7th Cir. 1998) .................................................... 55

*In re SkyPort Glob. Commc'ns, Inc.*,
  528 B.R. 297 (S.D. Tex. 2015) ............................................ 25, 26

*In re SkyPort Glob. Commc'ns, Inc.*,
  642 F. App'x 301 (5th Cir. 2016) ............................................. 26

*In re SkyPort Glob. Commc'ns, Inc.*,
  661 F. App'x 835 (5th Cir. 2016) ............................................. 26

*In re SkyPort Glob. Commc'ns, Inc.*,
  No. 08-36737-H4-11, 2013 WL 4046397
  (Bankr. S.D. Tex. Aug. 7, 2013), *aff'd*,
  528 B.R. 297 (S.D. Tex. 2015), *aff'd*,
  642 F. App'x 301 (5th Cir. 2016), *and*
  661 F. App'x 835 (5th Cir. 2016) ............................................. 25

*In re Tex. Com. Energy*,
  607 F.3d 153 (5th Cir. 2010) .................................................... 22

*In re Yorkshire, LLC*,
  540 F.3d 328 (5th Cir. 2008) .................................................... 21

*Ingram v. Deere*,
  288 S.W.3d 886 (Tex. 2009).................................................... 23

*Lawrence v. Goldberg*,
  573 F.3d 1265 (11th Cir. 2009) ............................................... 56

*Martin v. Trinity Indus., Inc.*,
   959 F.2d 45 (5th Cir. 1992) .................................................................. 37

*Matter of Baum*,
   606 F.2d 592 (5th Cir. 1979) ........................................................ 21, 38

*Matter of Foster*,
   No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023) ........................ 50

*Matter of Hailey*, 621 F.2d 169 (5th Cir. 1980) ...................................... 36

*Matter of Highland Cap. Mgmt., L.P.*,
   48 F.4th 419 (5th Cir. 2022),
   *petitions for cert. filed sub nom.*
   *Highland Cap. Mgmt., L.P. v. NexPoint Advisors, L.P.*,
   No. 22-631 (U.S. Jan. 5, 2023) *and*
   *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*,
   No. 22-669 (Jan. 16, 2023) ......................................................... *passim*

*Matter of PFO Glob., Inc.*,
   26 F.4th 245 (5th Cir. 2022), *cert. denied sub nom.*
   *VSP Labs, Inc. v. Hillair Cap. Investments, LP*,
   142 S. Ct. 2782 (2022) ......................................................................... 33

*Matter of Riley*,
   923 F.3d 433 (5th Cir. 2019) .............................................................. 22

*Mazant v. Visioneering Inc.*,
   250 F. App'x 60 (5th Cir. 2007) ......................................................... 41

*NBA Props., Inc. v. Gold*,
   895 F.2d 30 (1st Cir. 1990) ................................................................. 37

*Oaks of Mid City Resident Council v. Sebelius*,
   723 F.3d 581 (5th Cir. 2013) .................................................. 18, 35, 36

*Odishelidze v. Aetna Life & Cas. Co.*,
   853 F.2d 21 (1st Cir. 1988) ................................................................. 34

*Petroleos Mexicanos v. Crawford Enters., Inc.*,
   826 F.2d 392 (5th Cir. 1987) ................................................................ 1

*Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries,*
  177 F.3d 380 (5th Cir. 1999) ........................................ 21, 37

*RealPage, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
  21 F.4th 294 (5th Cir. 2021) .............................................. 27

*Ruiz v. United States,*
  243 F.3d 941 (5th Cir. 2001) .............................................. 47

*St. Louis, K.C. & C.R. Co. v. Wabash R.R. Co.,*
  217 U.S. 247 (1910) ............................................................ 35

*Taggart v. Lorenzen,*
  139 S. Ct. 1795 (2019) ........................................................ 16

*Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.,*
  201 F.3d 551 (5th Cir. 2000) .............................................. 37

*Tex. Workforce Comm'n v. U.S. Dep't of Educ.,*
  973 F.3d 383 (5th Cir. 2020) .............................................. 37

*Thomas v. Collins,*
  323 U.S. 516 (1945) ............................................................ 48

*United States v. Hylton,*
  710 F.2d 1106 (5th Cir. 1983) ............................................ 48

*United States v. O'Quinn,*
  913 F.2d 221 (5th Cir. 1990) ......................................... 21, 37

*Vose v. Internal Improvement Fund,*
  28 F. Cas. 1286 (C.C.N.D. Fla. 1875) ................................ 39

*W. Water Mgmt., Inc. v. Brown,*
  40 F.3d 105 (5th Cir. 1994) ................................................ 48

*Whitman v. Am. Trucking Ass'ns,*
  531 U.S. 457 (2001) ............................................................ 15

*Ziglar v. Abbasi,* 137 S. Ct. 1843 (2017) ................................ 52

## Statutes

28 U.S.C. § 158 ......................................................................... 1

28 U.S.C. § 959 ....................................................................... 58

Investment Advisors Act of 1940 ........................................... 5

Ohio Rev. Code § 4123.90.......................................................30

## Treatises

12 James Wm. Moore et al., Moore's Federal Practice § 60.64 ..............34

12 James Wm. Moore et al., Moore's Federal Practice § 60.84 ..............34

Stewart Rapalje, A Treatise on Contempt § 43 (1884)..........................36

## Rules

Fed. R. Civ. P. 60....................................................................48

N.D. Tex. L.R. 15.1 ...........................................................31, 32

## Other Authorities

James A. Ballentine, *A Law Dictionary* (1916) .....................................24

*Black's Law Dictionary* (5th ed. 1979) .....................................31

*Black's Law Dictionary* (11th ed. 2019) ..................................24

*Black's Law Dictionary* (6th ed. 1990) ...................................24

Frank H. Easterbrook, *Text, History, and Structure in Statutory Interpretation*, 17 Harv. J.L. & Pub. Pol'y 61 (1994) .................................................................................52

John F. Manning, *The Eleventh Amendment and the Reading of Precise Constitutional Texts*, 113 Yale L.J. 1663 (2004) .................................................................................51

*Merriam-Webster Dictionary* ................................................27

Antonin Scalia & Bryan A. Garner,
   *Reading Law: The Interpretation of Legal Texts* (2012) ......................23

Walter A. Shumaker & George Foster Longsdorf,
   *The Cyclopedic Law Dictionary*
   (James C. Cahill 2d ed. 1922) ..............................................................24

Frederic Jesup Stimson, *A Concise Law Dictionary of Words,*
   *Phrases, and Maxims*
   (Harvey Cortlandt Voorhees ed. 1911) ...............................................24

*Webster's Third New International Dictionary*
   (unabridged ed. 1993) ...........................................................................24

# JURISDICTION

District court jurisdiction was based on 28 U.S.C. § 158(a)(1) for appeals from a final contempt order entered by a bankruptcy court. *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 398 (5th Cir. 1987). Jurisdiction in this Court is based on 28 U.S.C. § 158(d)(1) for appeal of an order entered pursuant to 28 U.S.C. § 158(a)(1). The final judgment of the District Court was entered on September 28, 2022. *In re Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ11, 2021 WL 3418657 (Bankr. N.D. Tex. Aug. 4, 2021) (ROA.27–57) ("Contempt Order"), *aff'd in part, vacated in part sub nom. Charitable DAF Fund LP v. Highland Cap. Mgmt. LP*, No. 3:21-CV-01974-X, 2022 WL 4538466 (N.D. Tex. Sept. 28, 2022) (ROA.12255–86). Appellants timely noticed their appeal on October 20, 2022. ROA.12287–89.

## ISSUES PRESENTED

1. Whether the district court erred in affirming the bankruptcy court's finding that Appellants violated the bankruptcy court's gatekeeping and exculpatory order.

2. Whether the district court erred in affirming the bankruptcy court's finding of contempt under a contrived reading of a gatekeeping and exculpatory order that was at best ambiguous as to the conduct at issue.

3. Whether the district court erred in affirming the bankruptcy court's imposition of substantial monetary sanctions against the Appellants absent any claim of damages caused by the underlying and already terminated conduct and where the expenses imposed by the bankruptcy judge lacked any remedial basis and thus served only to punish or deter Appellants.

4. Whether the district court erred in affirming the bankruptcy court's extension of the doctrine established in *Barton v. Barbour*, 104 U.S. 126 (1881), to allow gatekeeping and exculpation orders to shield the CEO of the debtor from claims of liability being brought in the district court.

## STATEMENT OF THE CASE

Appellants challenge an order of contempt and extraordinary monetary sanctions entered by the bankruptcy court in response to a harmless district court motion for leave to amend an already pending complaint to add the debtor's CEO, James Seery, where the motion candidly acknowledged and questioned both the applicability and validity of the bankruptcy court's gatekeeping and exculpation order as applied to Seery as CEO. The motion was denied before anyone even responded to it, was not renewed, and caused absolutely no harm. The bankruptcy court nonetheless accepted Appellees' invitation to hold a contempt hearing to punish Appellants and inquire into matters irrelevant to the existence of any unclaimed injury from the alleged contempt. That hearing had no valid remedial purpose and thus the resulting award represented unauthorized punishment, not compensation.

The bankruptcy court's conclusion—that a mere motion challenging the scope and validity of a gatekeeping and exculpation order and seeking district court permission to file an amended complaint adding Seery violated the bankruptcy court's order requiring permission to "commence

or pursue a claim" against Seery (and forbidding certain claims entirely)—was erroneous.

The motion for leave neither commenced nor pursued a claim against Seery, but merely sought permission to do so while fully acknowledging the gatekeeping order yet disputing its application and validity. The contrary conclusion was based on a strained and implausible interpretation of the order's text which, even if admitting of such an unlikely reading, did not do so with the clarity required to support a finding of contempt. Furthermore, the damages imposed in the resulting contempt order were not *caused* by the alleged violation of the gatekeeping order, which, if anything, likely might well have saved money by avoiding pointless and duplicative proceedings. Rather, any damages were caused by the bankruptcy court's unnecessary and punitive hearing probing matters not relevant to whether a violation occurred or caused harm.

On appeal, the district court signed off on the bankruptcy court's flawed analysis, without adequately engaging the serious shortcomings of the bankruptcy court's reasoning.

## A.    Statement of Facts

The judgment of contempt arises out of the Chapter 11 bankruptcy of Highland Capital Management, L.P. ("Debtor" or "Highland"), an investment advisor governed by federally imposed fiduciary duties under the Investment Advisors Act of 1940.  Appellant The Charitable DAF Fund, L.P. ("DAF") was a direct client (and later a creditor) of Highland. Bankruptcy Judge Stacey G.C. Jernigan presided over these proceedings.

Appellant DAF is the sole owner of Appellant CLO Holdco, Ltd. ("Holdco").  ROA.28.  (Appellants refer collectively to DAF and Holdco as "DAF.") James Dondero, who was previously Highland's CEO, created several charitable trusts over twenty years ago, and, when their charters ended around 2011, their then-trustee created DAF to continue raising money for multiple charities.[1]  *Id.*  On March 24, 2021, Appellant Mark Patrick became DAF's general manager.  ROA.29.  Holdco is the investment arm for DAF; it invests DAF's principal funds and distributes the returns to its certificate holders: The Dallas Foundation, the Greater

---

[1] In Dallas, the DAF has donated over $32 million to charities such as the Family Place, Dallas Children's Advocacy Center, the Center for Brain Health (which helps law enforcement, fireman, and servicemen who suffered from PTSD after 9/11), and many others.  ROA.11694.

Kansas Community Foundation, the Santa Barbara Foundation, and the Community Foundation of North Texas. ROA.11695:1–24.

On October 16, 2019, Highland filed for Chapter 11 bankruptcy as a debtor-in-possession. ROA.35. No bankruptcy receiver or trustee was ever appointed. Rather, three independent directors were appointed to manage Highland, including James Seery. The board then selected Seery to serve as Highland's CEO and Chief Restructuring Officer during the bankruptcy proceedings. ROA.36.

In approving these selections, the bankruptcy court expressly deferred to the board's "business judgement" in selecting Seery. ROA.11722–23. It then issued an order that contained "gatekeeping" and exculpatory provisions. The relevant portion of that order provides:

> No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

Order ¶ 5 (July 16, 2020) (ROA.1172) ("Seery Order"). Beyond just channeling litigation to the bankruptcy court, the gatekeeping order

effectively exculpated Seery, in his role as CEO, from all causes of action—such as breach of fiduciary duty, breach of contract, and negligence—that do not require "willful misconduct or gross negligence."

## B.    Procedural Background.

On April 12, 2021, DAF filed a complaint in the district court against Highland and two Highland-controlled entities.  ROA.2663–88.[2]

The complaint arose out of a post-petition settlement agreement between the Debtor, Highland, and a creditor called HarbourVest, which occurred after the Seery Order.  As part of that agreement, negotiated by Seery, ROA.2664, Highland settled HarbourVest's claims and acquired HarbourVest's interests in a managed fund, Highland CLO Funding, Ltd. ("HCLOF"), at a valuation of $22.5 million.  ROA.2667–73.  The bankruptcy court approved the settlement.  ROA.2669.

Appellant DAF, through Holdco, also owned a substantial portion of HCLOF and had a potential interest in buying HarbourVest's stake, which it later came to believe was worth far more than $22.5 million. ROA.2667–73 (HCLOF stake alleged to be worth $41.8 million at time of

---

[2] This complaint was filed nine months after the Seery Order.  It was only at this point when DAF engaged new counsel, Sbaiti & Company PLLC ("Attorney Appellants").

7

approval hearing). While that low purchase price may have been a good deal for Highland, DAF believed that by purchasing the HCLOF stake itself, rather than offering its client DAF the option to purchase it, Highland violated various duties owed to DAF.

The complaint alleged that, based in substantial part on Seery's conduct as CEO, the Highland defendants had breached their fiduciary duties under the Advisor's Act, interfered with the HCLOF company agreement, acted negligently, and violated the RICO statute in the process of securing the HarbourVest settlement. *See* Compl. ¶¶ 55–141 (ROA.2673–87). The complaint did not name Seery, and thus DAF did not need or seek the bankruptcy court's permission to file the complaint.

Shortly after the complaint was filed, however, DAF filed a Motion with the district court expressly acknowledging the gatekeeping and exculpatory order and seeking that court's review of the validity and scope of the Seery Order and leave to amend the complaint to add Seery as a defendant. ROA.2689–98. Although Federal Rule of Civil Procedure 15(a) would have allowed DAF to amend the complaint as of right, DAF filed the Motion "out of an abundance of caution" in light of the Seery Order, as the Motion itself explained. ROA.2689. DAF told

Highland's attorneys as much in the pre-motion meet-and-confer process. ROA.2649–50. Reflecting such caution, the proposed order accompanying the Motion was not self-executing and would not have automatically added Seery as a defendant. ROA.2787 (omitting "deemed filed" from proposed order).

The proposed Amended Complaint, had leave been granted and ultimately acted upon by DAF, would have added Seery as a defendant on claims for, *inter alia*, breach of fiduciary duty, negligence, and tortious interference that otherwise would have been barred by the exculpatory aspects of the Seery Order (hence the discussion of such order in the Motion). The Motion "present[ed] the issue [of potentially adding Seery] in a manner that allows the bankruptcy court to address it, should [the district] Court decide that the bankruptcy court is authorized to do so." ROA.2697.

The next day, before Highland even responded to the Motion, the district court denied it without prejudice for procedural reasons. Min. Order, *Charitable DAF Fund v. Highland Cap. Mgmt.*, No. 3:21-cv-0842 (N.D. Tex. Apr. 20, 2021) ("[t]o the extent a motion for leave to file an amended complaint is required under Rule 15, Plaintiffs may renew their

motion after Defendants are served and have appeared") (ROA.2782). DAF never renewed the Motion and Highland never responded to it.

Notwithstanding the ultimately costless non-event of DAF having briefly sought, but been denied, guidance and permission from the district court, Highland moved the bankruptcy court to initiate contempt proceedings against Appellants and their counsel for filing the Motion. Mot. for Order to Show Cause (Apr. 23, 2021) (ROA.1764–68). Notably, in doing so, Highland did not claim to have suffered any damages from the district-court Motion. Rather, Highland merely contended that Appellants violated the Seery Order, and that "[i]n this context, particularly with a vexatious litigant like Mr. Dondero, judicial sanctions would serve the dual purposes of (i) coercing the Violators into compliance with the Orders, and (ii) compensate the Debtor for losses sustained in addressing such violations." ROA.1797. Indeed, Highland confirmed that its damages, if any, arose only out of its "bringing [the contempt] Motion." ROA.1778.

The bankruptcy court promptly issued an order requiring "the violators" (*i.e.*, DAF, Holdco, and their control persons and counsel) to show cause why they should not be held in contempt. Order (April 29,

2021) (ROA.2584–86).  For the next several weeks, the bankruptcy court permitted Highland to initiate extensive discovery, including depositions and document exchanges, directed not at DAF's own conduct in filing the Motion, but instead at Dondero's current relationship to DAF and whether he played any behind-the-scenes part in DAF's conduct.

On June 8, 2021, the bankruptcy court held an evidentiary hearing on the order to show cause, at which it heard several hours of largely irrelevant argument and testimony from multiple witnesses. ROA.11658–959.  After hearing argument that Dondero, as an adviser to DAF, gave information to DAF's counsel, the court ordered Dondero to disclose privileged and work-product-protected communications over significant objections.  ROA.11841–44.

On August 4, 2021, the bankruptcy court held Appellants and their counsel in contempt for challenging the Seery Order and seeking leave of the district court to add Seery to the action against Highland.  *See* Contempt Order at 7 (ROA.33).  And it held Dondero in contempt as a supposedly secret control person, despite his having no legal authority

over DAF and having not been a party to the complaint or the Motion. *Id*. at 19–21, 30–31 (ROA.45–47, 56–57).[3]

The bankruptcy court held that the Seery Order was appropriate under *Barton v. Barbour*, 104 U.S. 126 (1881), and questioned the timeliness of Appellants' challenge to the reach of the Order, stating that "no one appealed" it when it was entered and thus it was "too late to argue about the[] legality or enforceability."   Contempt Order at 8, 15–17 (ROA.34, 41–43).

The court then concluded that merely requesting review of that Order and leave to file an amended complaint was "pursu[ing] a claim" against Seery, notwithstanding that the Amended Complaint was never ultimately filed or "commenced." *Id.* at 27 (ROA.53).

---

[3] Co-Appellant Dondero has made no secret of his concern with the bankruptcy judge's antipathy towards him and all entities she views as affiliated with him.  Since the contempt proceedings, he sought to have her recused and objected to her conduct in other manners. *See, e.g.,* Mot. to Recuse (ROA.14185–86).  While those issues are not directly presented in this appeal, they are nonetheless relevant as they confirm the protective necessity of the high hurdles imposed on findings of contempt, particularly where a bankruptcy judge effectively collapses any separation of powers by writing restrictive but potentially vague orders, effectively prosecuting perceived violations thereof, and adjudicating and punishing any violations deemed to have occurred. *See infra*, at 36–37 nn.11 & 12 (discussing restrictions on contempt power).

Despite Highland having spent nothing to oppose the supposedly offending Motion, the bankruptcy court penalized Appellants by sanctioning them $239,655 in "damages" created by Highland's and the court's own efforts to punish Appellants, representing Highland's attorneys' fees for the contempt proceeding itself and expenses the bankruptcy court "assume[d]" were "related to the contempt matter." *Id.* at 29 (ROA.55). The bankruptcy court ignored Appellants' argument that Highland would have incurred comparable expenses even if Appellants had first filed their Motion for leave in the bankruptcy court, and that such expenses should be offset before finding any damages caused by the alleged contempt. *See* ROA.11708.

In a further reflection of the punitive and deterrent nature of the contempt proceedings and order, the bankruptcy court "add[ed] on a monetary sanction of $100,000 for each level of rehearing, appeal, or petition for *certiorari* that [Appellants] may choose to take with regard to this Order, to the extent [they] ... are not successful." *Id.* at 29–30 (ROA.55–56).

Appellants appealed to the district court. Appellees conceded, and the district court agreed, that the $100,000-per-appeal sanction was

excessive and improper and accordingly the court vacated that aspect of the contempt judgment. ROA.12267. On all other aspects of the Contempt Order, however, the district court largely echoed the bankruptcy court.

Regarding whether the Motion for leave violated the Seery Order, the district court cited a few general, non-legal definitions of "pursue" as "'seeking' or 'trying' to obtain a desired end." ROA.12260 (citations omitted). It then concluded that that the Motion "s[ought]" to add Seery as a defendant and thus "pursue[d]" a claim against him. ROA.12260–61. The district court further rejected the argument that the Seery Order was too ambiguous to support contempt, briefly concluding that the Order was "definite and specific," and dismissing Appellants' arguments as mere "definitional quibble[s]." ROA.12262–63. The court also rejected arguments that the damages were improper and improperly punitive rather than compensatory, acknowledging the lack of harm from the contempt itself, but treating payment for the amounts expended by Highland in bringing the contempt proceeding itself as compensatory. ROA.12270–71. The district court declined to consider costs Highland would have incurred absent the alleged contempt as bearing on whether

a net injury occurred, approving the bankruptcy court's narrow focus on "the fees incurred during the contempt hearing." ROA.12271 n.82. Finally, regarding the validity of the Seery Order, under the *Barton* doctrine and otherwise, the court held that it "lack[ed] jurisdiction to consider [a] collateral attack" on the bankruptcy court's power to issue the Order because neither Appellants nor their predecessors in interest challenged the Order at the time it was entered. ROA.12264–66.[4]

This appeal followed.

## SUMMARY OF ARGUMENT

"Process of contempt is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the [alleged contemnor's] conduct." *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885). That longstanding principle, largely equivalent to the rule of lenity, applies equally in the bankruptcy context

---

[4] Appellants also argued before the district court that the imposition of sanctions violated due process, were excessive fines, and that the Seery Order raised Takings and Appointment Clause problems. Those concerns are not being raised here as independent issues, but they nonetheless inform construction of the Order and appellate review of the contempt proceedings. *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 471 (2001) (discussing "the canon requiring texts to be so construed as to avoid serious constitutional problems").

today. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) ("bankruptcy statutes … do not grant courts unlimited authority" to discipline parties and their counsel but "incorporate the[se] traditional standards" for "when a party may be held in civil contempt for violating an injunction").

Here, the bankruptcy and district courts flouted this basic principle, ignored the text the Seery Order, and imposed $239,655 in unwarranted sanctions against Appellants for "damages" caused not by the supposedly contemptuous and short-lived Motion for leave, but by Highland and the bankruptcy court's improper and unnecessary efforts to punish Appellants.

*First*, the Motion for leave did not violate the Seery Order. That Order required the bankruptcy court's approval before an entity could "commence or pursue a claim or cause of action … against Mr. Seery." ROA.1172. All agree that Appellants' district-court Motion did not "commence" a claim against Seery. But the courts below held that the Motion nonetheless amounted to "pursu[it]" of such a claim. It did not.

To "pursue" a claim means to "prosecute" it, and Appellants could not have prosecuted any claim against Seery, since he was never named a defendant in the district-court proceeding. Both the definitions of the

relevant words and the structure of the gatekeeping sentence demonstrate that one cannot "pursue" a claim that has yet to be "commenced." That Seery might *later* have become a defendant had the district court ultimately granted the Motion is irrelevant to whether the Motion itself constituted pursuit of a claim against him and puts the cart before the horse. And had leave been granted with full knowledge and consideration of the Seery Order, any ensuing conduct thus authorized by supervening order of the district court could not possibly be deemed contempt of an order that would no longer have controlled. Appellants neither commenced nor pursued a claim against Seery, did not violate the Seery Order, and hence did not engage in contempt.

*Second*, while the district court relied on one particularly broad and out-of-context definition of "pursue" to reach Appellants' conduct, that definition applied here is implausible at best and lacks the clarity and certainty necessary to sustain a contempt finding. Indeed, the district court largely ignored the competing definitions of "pursue" and the context from the phrase "commence or pursue a claim," which, at the very least, made the Order ambiguous as to whether Appellants' district-court Motion constituted "pursu[it]" of a claim. Litigants may not be held in

17

civil contempt unless, among other things, they violated an order that "neither vaguely nor ambiguously, required the [alleged contemnor] to … abstain from certain conduct." *Oaks of Mid City Resident Council v. Sebelius*, 723 F.3d 581, 585 (5th Cir. 2013).

*Third*, even if the Motion were deemed contemptuous, the damages awarded to Appellees were not caused by the supposedly contemptuous conduct, were legally flawed in their measure in any event, and thus constituted improper and unauthorized punishment, not compensation. Not only did the quickly denied Motion for leave cost Appellees nothing, it was not renewed and there was no ongoing "contemptuous" conduct requiring the bankruptcy court's action.   Furthermore, the expense imposed by the contempt proceedings had nothing to do with a proper consideration of whether Appellants' conduct constituted contempt or caused any injury.   Instead, it was focused largely on punishing James Dondero, who was not a party to the Motion and hence was irrelevant to evaluating whether that Motion constituted contempt or caused damages.   In short, the hearing just offered the opportunity to attack Dondero and make Appellants pay for the privilege.   The cost of such

proceedings reflect punishment, not an effort to remedy any ongoing contempt or compensate for the non-existent costs of the Motion.

Even apart from the unnecessarily self-inflicted and bankruptcy-court-inflicted costs of the contempt proceedings, the district court failed to consider the costs Highland would have faced had the Motion been filed first in the bankruptcy court and then appealed to the district court thereafter. Highland would have expended significant resources in those proceedings, potentially more than it did in the contempt proceeding. Accordingly, the contempt sanction did not reflect only the net injury actually *caused* by the purported violation of the Seery Order, and thus was impermissibly punitive, rather than compensatory in nature.

*Finally*, the contempt judgment should be reversed because it was premised on an unwarranted extension of the questionable *Barton* doctrine. That doctrine's extra-statutory policymaking is increasingly suspect given more recent jurisprudential developments and hence *Barton* should not be extended to circumstances beyond its narrow terms or clear precedent otherwise controlling this Court.

Tellingly, Appellees have not identified any case from this Circuit that has extended the *Barton* doctrine to corporate officers of a debtor.

19

Indeed, this Court itself has recently rejected exculpating Seery and others when reviewing the final bankruptcy order regarding Highland. *Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 438 (5th Cir. 2022), *petitions for cert. filed sub nom. Highland Cap. Mgmt., L.P. v. NexPoint Advisors, L.P.,* No. 22-631 (U.S. Jan. 5, 2023) *and NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*, No. 22-669 (Jan. 16, 2023).  And, while it was too late in that final-order proceeding to challenge earlier orders not at issue in that appeal, here the objection to Seery's exculpation was raised in the Motion to the district court at Appellants' first reasonable opportunity to consider the Seery Order as applied, and at a time when such order was not final.  And it is now properly being challenged in an appeal concerning the direct application of the Seery Order as the basis for a finding of contempt based on the very act of challenging that Order via the Motion.  Because the Seery Order, and the contempt judgment premised on its supposed violation, reflect an unwarranted and inappropriate extension of the *Barton* doctrine, the judgment below should be reversed.

# ARGUMENT

Contempt may only be used when there has been a violation of "a clear and unambiguous order." *United States v. O'Quinn*, 913 F.2d 221, 222 (5th Cir. 1990) (per curiam); *accord Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999) (same). There was no such violation here. Under any reasonable understanding of the term, Appellants did not "pursue" a claim against Seery. Appellants were never put on notice that the Seery Order would reach a Motion for leave that was denied in a case where Seery was never named as a defendant. Such an ambiguous and "uncertain[]" application of an order cannot form the basis of a contempt finding. *Matter of Baum*, 606 F.2d 592, 593 (5th Cir. 1979).

Rather than following the law constraining civil contempt, the bankruptcy court sought to punish Appellants for their harmless and terminated conduct. The bankruptcy court's judgment was "clearly erroneous" as to both the law and the facts. And the district court compounded these errors by repeating them. Under the applicable abuse-of-discretion review standard, *In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008), this Court should reverse those decisions. A

bankruptcy court abuses its discretion when its ruling is based "on an erroneous review of the law or on a clearly erroneous assessment of the evidence." *Id.* And applying *de novo* review to the "bankruptcy court's interpretation of its own orders [and related] pure[] legal questions," *Matter of Riley*, 923 F.3d 433, 437 (5th Cir. 2019), the courts below erred in imposing and affirming the contempt order.

## I. Appellants Did Not Violate the Seery Order.

Appellants did not improperly "commence or pursue a claim" against Seery within the plain, ordinary, and contextual meaning of the Seery Order. The courts below each erred in holding otherwise.

The Seery Order was a preliminary step in a bankruptcy reorganization plan, which "represents a kind of consent decree that should be interpreted as a contract." *In re Tex. Com. Energy*, 607 F.3d 153, 158 (5th Cir. 2010). Courts must give contractual terms "'their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense.'" *Dynamic CRM Recruiting Sols., LLC v. UMA Educ., Inc.*, 31 F.4th 914, 920 (5th Cir. 2022) (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118,

121 (Tex. 1996)).[5]  "To properly understand the objective meaning conveyed by … text, '[a court] must read all parts of the [instrument] together, striving to give meaning to … every word' and 'to avoid rendering any portion inoperative.'"  *Id.* at 918 (quoting *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)).

Moreover, "when the law is the subject, ordinary *legal* meaning is to be expected." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1317 (11th Cir. 2013) (emphasis added) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 73 (2012)).  The Texas Supreme Court thus often consults *Black's Law Dictionary* as the lead authority on the "ordinary meaning" of words used in legal documents. *See Ingram v. Deere*, 288 S.W.3d 886, 899 (Tex. 2009); *see also CANarchy Craft Brewery Collective, LLC v. Tex. Alcoholic Beverage Comm'n*, 37 F.4th 1069, 1074 (5th Cir. 2022) (applying Texas law and relying on *Black's* for "ordinary" meaning).

In this case, it is not alleged that Appellants "commence[d]" a claim against Seery by filing their district-court Motion.   Rather,  the

---

[5] Texas law governs construction of federal "consent decrees concluded between Texas parties." *Frew v. Janek*, 780 F.3d 320, 327 n.28 (5th Cir. 2015).

bankruptcy court erroneously held that Appellants "pursue[d] a claim" against Seery in violation of the exculpation and gatekeeping aspects of the Seery Order.

Looking to the *legal* meaning of "pursue," it means "[t]o prosecute or sue," as in "to pursue for damages." *Pursue*, *Black's Law Dictionary* (11th ed. 2019). Earlier editions of *Black's* made the point even more plainly, *see Pursue*, *Black's Law Dictionary* 1237 (6th ed. 1990) ("To follow, prosecute, or enforce a matter judicially, as a complaining party."); as do some lay dictionaries, *see Pursue*, *Webster's Third New International Dictionary* 1848 (unabridged ed. 1993) ("[T]o follow or seek by judicial proceedings: PROSECUTE"). Older legal dictionaries tell a similar story. *See, e.g.*, *Pursue*, Frederic Jesup Stimson*, A Concise Law Dictionary of Words, Phrases, and Maxims* 291 (Harvey Cortlandt Voorhees ed. 1911) ("To prosecute."); *Pursue*, James A. Ballentine, *A Law Dictionary* 401 (1916) ("To cause one's prosecution."); *Pursue*, Walter A. Shumaker & George Foster Longsdorf, *The Cyclopedic Law Dictionary* 826 (James C. Cahill 2d ed. 1922) ("To follow a matter judicially, as a complaining party."). As a court in this Circuit has similarly explained, "'[t]o pursue' … refers to the process of prosecuting a claim in court, or

the initiation and continued pursuit of a legal suit." *In re SkyPort Glob. Commc'ns, Inc.*, No. 08-36737-H4-11, 2013 WL 4046397, at \*45 (Bankr. S.D. Tex. Aug. 7, 2013), *aff'd*, 528 B.R. 297 (S.D. Tex. 2015), *aff'd*, 642 F. App'x 301 (5th Cir. 2016), *and* 661 F. App'x 835 (5th Cir. 2016).

A litigant thus "commences" an action against another by beginning it, and *then* "pursues" that action by carrying it out.[6]  Thus, the phrase "pursuit of a claim," even according to its "broad definition," "encompass[es] the initiation of a new suit and the prosecution of a pending cause of action." *SkyPort*, 2013 WL 4046397, at \*75. Appellants' district-court Motion did neither.   Rather, that Motion sought only *permission* to take future action—permission that was never given.[7]

---

[6] This point is reinforced by decisions equating "pursue" with "prosecute," *see City of Champaign v. Hill*, 173 N.E.2d 839, 843 (Ill. App. Ct. 1961) (citing other dictionaries equating the two words), which similarly refers to the actions taken to litigate an already-filed claim, *see Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 408 (1821) ("To commence a suit, is to demand something by the institution of process in a Court of justice; and to prosecute the suit, is, according to the common acceptation of language, to continue that demand.").

[7] During a later stage of the *SkyPort* litigation, the bankruptcy court did, however, conclude that a filing seeking to add new claims against *existing* defendants violated an order stating: "The Plaintiffs are temporarily enjoined from pursuing any and all claims or causes of action, derivative or direct, against all of the Defendants." 528 B.R. at 348. The district court affirmed with little discussion, indicating agreement with the bankruptcy court's "reject[ion] [of] the [contemnors'] argument that

In agreeing with the bankruptcy court as to the broad meaning of "pursue" in the Seery Order, the district court rejected the legal definitions Appellants identified and chose generic, non-legal definitions of the word "as 'seeking' or 'trying' to obtain a desired end" based on the assertion that this was how "most dictionaries" defined "pursue." ROA.12260–61 (citations omitted). The court then concluded that Appellants' Motion "s[ought]" to add Seery as a defendant to their other suit and thus "pursue[d]" a claim against him.

The district court's reasoning divorces the word "pursue" from its long legal history and the context of the Seery Order. But term cannot be "properly underst[oo]d" without "read[ing] all parts of [an instrument] together, striving to give meaning to every … word[.]" *Dynamic*, 31 F.4th at 918 (quoting *Balandran*, 972 S.W.2d at 741). And when selecting from multiple dictionary definitions of a particular word a court must

---

making a request to pursue a claim was not pursuing a claim." *Id.* at 347. In *SkyPort*, however, the injunction was much broader than the Seery Order and did not distinguish between seeking permission and pursuing a claim. Furthermore, litigation had already been "commenced" against the same defendants and hence the motion was in pursuit or expansion of the commenced claims. And, though the contempt judgment was affirmed on appeal, whether a request to amend constitutes "pursuing" a claim does not appear to have been raised or addressed. *See* 642 F. App'x 301; 661 F. App'x 835, 842–43.

determine which "definitions of [a word] [are] reasonably applicable in the … context." *RealPage, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 21 F.4th 294, 298 (5th Cir. 2021). For example, some definitions of "pursue" include "to follow in order to overtake, capture, kill, or defeat," *Pursue, Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/pursue (last visited Feb. 5, 2023), yet obviously that is not the sense in which the Seery Order uses the word. Context matters.

Appellants naturally read the Seery Order's prohibition on the "pursu[it]" of certain claims in its legal and contextual sense—as barring or requiring permission to *further* litigate claims that were already "commence[d]" against Seery. If "pursue" instead means any pre-commencement action that might eventually lead to suit, it would be hard to imagine any limit to what constitutes "pursuit" of a claim—legal research, drafting a complaint, conferring with a client, etc. Furthermore, such an overbroad definition of "pursue" would render the word

"commence" superfluous, violating the most basic of rules for contractual (and statutory) construction. *See Dynamic*, 31 F.4th at 919 & n.16.[8]

Indeed, the Seery Order's own requirement of bankruptcy-court permission before commencing or pursuing certain claims confirms that a motion for permission to amend cannot itself be deemed to "commence or pursue a claim." If one may not "commence or pursue a claim" without first receiving authorization, and the act of requesting authorization (regardless from whom it is sought) itself is deemed to "pursue a claim," the Order eats its tail and prospective litigants would always violate the Seery Order even by seeking to comply with it.[9] When interpreting terms

---

[8] In its district-court brief, Highland dismissed the overbreadth argument as a "parade of horribles," claiming that the Seery Order supposedly only "appl[ies] to actions taken in court." ROA.12100. But that non-textual "only-in-court-action" limitation on the Seery Order's scope has no basis in the sweeping definition advocated by Highland and adopted by the courts below. If "pursue" as used in the Order merely means, "try to achieve something," ROA.12098, 12260 & n.24 (citation omitted), then it does not matter whether one is "trying" in court or out of court. And that non-textual limitation still would not cure the definition's nullification of the word "commence," which obviously happens in court in any event.

[9] That the bankruptcy court may have wished to be the exclusive recipient and potential grantor of such pleas does not alter the linguistic point that the mere request for permission to take an act is not the requested act itself. Otherwise, there would be an infinite regression of requests for permission to seek permission.

in an instrument, "apparent inconsistencies or contradictions must be harmonized, to the extent possible, by construing the document as a whole." *Hysaw v. Dawkins*, 483 S.W.3d 1, 13 (Tex. 2016).

Furthermore, as this Court has explained, the use of certain words or phrases by "legal authorities (including [judicial] decisions) … necessarily inform[s]" interpretation of such language in legal texts, "for the objective meaning conveyed by … terminology may depend on longstanding usage or linguistic conventions surrounding that terminology." *Dynamic*, 31 F.4th at 921–22. The many legal sources cited above more than support a narrower reading of the word "pursue" in the Seery Order. And the handful of cases interpreting the word "pursue" in the legal context likewise cut against the bankruptcy court's reading of the word here.

For example, one district court interpreting a class certification order had to determine whether two putative plaintiffs (Brooks and Bailey) had "pursued" their claims prior to receiving the class action notice in the mail. The court held that no such "pursu[it]" had occurred, even though both filed suit:

> [W]hether the mere filing of the lawsuits constitutes a "pursuit of the discrimination claims" is suspect. Indeed, the

> Black's Law Dictionary p. 1112 (1979) defines "pursuit" as, "To follow, *prosecute*, or enforce a matter judicially, as a complaining party." Because, for jurisdictional reasons, the courts dismissed the three cases before Books and Bailey could begin discovery, file pleadings, and eventually proceed to a trial on the merits, Bailey and Books could not "pursue" their claims.

*Bennett v. Bombela*, No. 83 C 480, 1996 WL 745384, at *5 (N.D. Ill. Dec. 30, 1996). That discussion nicely illustrates the distinction between "commenc[ing]" and "pursu[ing]" a claim and would give both terms in the Seery Order meaning. If the dismissal of an existing suit before any litigation on the merits means a claim was not "pursued," then surely the denial of Appellants' district-court Motion before Seery was named as a defendant at all means that no claims against him were "pursued."

In another decision, the Ohio Supreme Court interpreted "pursue" in the context of a statute providing that "[n]o employer shall discharge … any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act[.]" Ohio Rev. Code § 4123.90. In that case, *Bryant v. Dayton Casket Co.*, 433 N.E.2d 142 (Ohio 1982), the court rejected a former employee's retaliation argument, concluding that the statute "applies only if the employee had … tak[en] some action which would constitute the actual pursuit of his

claim, not just an expression of his intent to do so." *Id*. at 145. The court primarily relied on *Black's* definition of "pursue" as "[t]o follow … a matter judicially, as a complaining party." *Id*. at 144 (quoting *Black's Law Dictionary* 1112 (5th ed. 1979)).

In this case, Appellants' district-court Motion was far more akin to "an expression of … intent" to sue Seery than it was to an "action which would constitute the actual pursuit of [such a] claim," in the sense of "follow[ing] … [the] matter judicially, as a complaining party." *Id*. at 144–45. Indeed, even if Appellants' Motion *had* been granted, Appellants still would not have been "pursu[ing]" a claim against Seery, as the Appellants' accompanying proposed order was not self-executing. ROA.2787 (omitting "deemed filed").

The district court rejected this argument, insisting that Appellants "would have had no choice" but to amend if their Motion was granted: "They attached the proposed amended complaint, and, as the local rules make clear, '[i]f leave [to amend] is granted … the clerk will file a copy of the amended pleading.'" ROA.12261 (quoting N.D. Tex. L.R. 15.1(b)). But that overlooks the rest of the rule: "If leave is granted, the amended pleading will be deemed filed as of the date of the order granting leave,

*or as otherwise specified by the presiding judge*, and the clerk will file a copy of the amended pleading." N.D. Tex. L.R. 15.1(b) (emphasis added). The proposed order granting leave did not specify that the amended complaint would be filed, and the Motion presented the option of allowing the bankruptcy court to consider the amendment instead. Nothing in the Local Rule would have predetermined the filing of the Amended Complaint in such circumstances.

Furthermore, the Motion expressly challenged the Seery Order as both inapplicable and invalid, explaining that leave should be granted *if* the district court agreed. ROA.2689–98. Thus, the Motion made clear that Appellants intended only to "pursue" a claim *after* a determination was made that the Seery Order was inapplicable or invalid. Given that necessary predicate for granting leave to amend, it is literally impossible for any resulting amendment to violate the Seery Order, which would no longer control if and when such an amendment came to pass. Any order granting leave to file Amended Complaint would necessarily have *superseded* the Seery Order and hence any resultant filing (automatic or not) could not have *violated* that Order.

32

Regardless whether the bankruptcy court thought the Motion somehow violated its overarching "intent" in adopting the Seery Order, it is the text of the Order, not such subjective intent, that matters. "[R]eliance on … subjective intent" in interpreting bankruptcy courts' orders is not appropriate; only "the plain text controls." *Matter of PFO Glob., Inc.*, 26 F.4th 245, 255 (5th Cir. 2022), *cert. denied sub nom. VSP Labs, Inc. v. Hillair Cap. Investments, LP,* 142 S. Ct. 2782 (2022) (mem.).

In any event, even if the Seery Order's abstract "purpose" of limiting legal distractions for Seery should affect its interpretation, this consideration would also cut against the bankruptcy court's reading of the Order.  DAF's suit against Highland was already properly filed and Seery would necessarily have been involved in its defense anyway, even if not as a defendant.  More importantly, Appellants' district-court Motion never required a response from Seery, was denied before even being served on him, and was not renewed.  The Motion did not distract or harass him in the slightest, and certainly not in any way distinct from its theoretical impact on Highland itself, which was already a proper party to the litigation and not protected by the Seery Order nor separately burdened by any supposed violation of that Order.  Thus, even

if minimizing legal bother for Seery (as opposed to Highland), were relevant to determining whether the Seery Order was violated, Appellants still did not clearly violate the Order.

Finally, Highland's district-court brief argued that Appellants could not avoid the "prohibition on using a contempt proceeding to launch a collateral attack on [a judicial] order" by "pitch[ing] their appeal as … 'a subsequent as-applied challenge' to the … Seery Order[]." ROA.12107. But Appellants' interpretive argument here, as distinct from their challenge to the validity of the Seery Order, *infra*, at Part IV, is not even remotely a "collateral attack" on the Order.[10]   An argument regarding "the mere construction of a [judicial] decree involves no challenge of its

---

[10] Even the challenge to the validity of the Seery Order in the Motion was not an impermissible collateral attack and, in any event, preceded the contempt proceedings. In one sense, Appellants' Motion may be construed as a Rule 60 motion. *See* 12 James Wm. Moore et al., Moore's Federal Practice § 60.84[b][2][a] (3d ed. 2005) ("Historically, there is precedent for the idea that it is within the equitable powers of a federal court to grant relief from a civil judgment issued by another federal court."); *id.* § 60.64 (explaining that appropriate requests for relief are treated as Rule 60(b) motions regardless of label) (citing, *e.g.*, *Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 24 (1st Cir. 1988) (treating motion to amend complaint after dismissal order as a Rule 60(b) motion)). Surely an order cannot prohibit its own challenge and penalize as contempt any attempt to do so. And to treat renewal of a direct challenge to the Seery Order as a "collateral attack" when raised as a defense to the ensuing contempt proceedings based on that self-same direct challenge seems solipsistic.

validity." *St. Louis, K.C. & C.R. Co. v. Wabash R.R. Co.*, 217 U.S. 247, 250–51 (1910). This Court has deployed this principle in the contempt-proceeding context, ordering a contempt sanction vacated while carefully noting interpretive questions are not impermissible collateral attacks: "The point is not that the [order] was invalid, it is that regardless of whether [the order] was valid, [it] did not proscribe the [alleged contemnor's] conduct." *Sebelius*, 723 F.3d at 586 n.18. So, too, here regarding how to interpret the word "pursue" in context.[11]

In sum, although there are some overbroad and non-contextual definitions of "pursue" that might cover the underlying Motion, the Seery Order's "plain language, when read in context, giving effect to all [its]

_____

[11] Of course, in construing the scope of a judicial order, doctrines of avoidance may indirectly look to the uncertain validity of an order to determine whether a broad construction should be avoided and a narrow construction favored. Such avoidance, after all, underlies the rule requiring that an order supporting contempt be unambiguous given underlying due process and separation of powers concerns. *See infra* at 36, n.12. Likewise, the lack of bankruptcy court authority to impose criminal contempt would require careful attention to the nature and scope of any sanctions imposed. *In re Hipp, Inc.*, 895 F.2d 1503, 1510–11 (5th Cir. 1990) ("bankruptcy courts do not have inherent criminal contempt powers"). And, an order stretching the bounds of a bankruptcy court's gatekeeping and exculpatory authority would favor a narrow reading of any such order regardless whether a full-blown challenge to the order might raise questions of timing.

provisions, is unambiguous" in failing to reach a mere request, promptly denied, to later commence a claim against Seery. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003). The bankruptcy court erred in holding otherwise, and its judgment of contempt therefore must be reversed.

## II.    The Seery Order Was, at the Very Least, Ambiguous as to Whether Appellants' District-Court Motion Constituted Unauthorized "Pursu[it]" of a Claim.

Even if the district court were correct and Appellants had violated one *possible* interpretation of the Seery Order, the district court nonetheless erred. Relying on such ambiguity cannot support a finding of contempt. One may not be held in contempt unless he or she violated an order that "neither vaguely nor ambiguously, required the [alleged contemnor] to … abstain from certain conduct." *Sebelius*, 723 F.3d at 585; *see also* Stewart Rapalje, A Treatise on Contempt § 43 (1884) ("In order to punish a violation of an injunction order, the order must clearly embrace and prohibit the act complained of …."). "[T]he judicial contempt power is a potent weapon which should be used only where clearly warranted." *Matter of Hailey*, 621 F.2d 169, 172 (5th Cir. 1980). In particular, "a contempt citation must be based on a clear and

unambiguous order," and "any ambiguities redound in favor of the accused." *O'Quinn*, 913 F.2d at 222 (citing *NBA Props., Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990)); *see also Piggly Wiggly*, 177 F.3d at 383 (finding of contempt must be reversed on appeal "'if the court's order upon which the contempt was founded is vague or ambiguous.' Therefore, the contempt power should only be invoked where a specific aspect of [an order] has been clearly violated.") (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).[12]

An "ambiguous" textual provision is one that is "capable of being understood in two or more possible senses or ways." *Tex. Workforce Comm'n v. U.S. Dep't of Educ.*, 973 F.3d 383, 388 (5th Cir. 2020) (cleaned up); *see also Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, 201 F.3d 551, 554 (5th Cir. 2000) (citing conflicting definitions from *Webster's*

---

[12] This rule against ambiguity is a contempt-proceeding equivalent of the rule of lenity, which is a "time-honored interpretive guideline," *Cargill v. Garland*, 57 F.4th 447, 471 (5th Cir. 2023) (en banc) (quotation marks omitted), that resolves ambiguity in favor of potential defendants. Just as lenity is driven by due process and separation of powers concerns in the criminal context, *id*. at 470; *id*. at 473 (Ho, J., concurring in part), the requirement of an unambiguous prohibition to support a finding of contempt serves similar functions. Both ensuring fair notice and restricting the consolidation of disparate authority in a single decisionmaker are served by that rule, in the bankruptcy context just as elsewhere.

and *Black's* as evidence of ambiguity). Here, at least one reasonable reading of the word "pursue" as used in the Seery Order (if not the most reasonable one) requires action to prosecute a "claim" that has been "commence[d]." Merely recognizing this as a credible interpretation of the word as compared to the interpretation offered by the courts below, is sufficient to show that the Seery Order is ambiguous and the contempt sanction improper. "It is enough that there are two reasonable, competing interpretations [of the order], which is the very definition of ambiguity. Given the ambiguity …, [the alleged contemnors'] conduct in accordance with their reasonable interpretation of the [order] … cannot be contumacious." *Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*, 261 F.3d 1037, 1062 (11th Cir. 2001); *see also Matter of Baum*, 606 F.2d at 593 (contempt improper "[g]iven the possible uncertainty concerning the effect of [the] order").

Such ambiguity is made even more obvious given that the Seery Order's text did not provide Appellants any viable mechanism for requesting the permission to add Seery as defendant on the claims at issue in the Highland suit. The Seery Order only requires permission before "commenc[ing] or pursu[ing]" a "claim of willful misconduct or

gross negligence against Mr. Seery." ROA.1172. That is the Order's purported gatekeeping function, where the bankruptcy court attempts to keep control of such claims for itself. But any claims involving lesser *mens rea* are functionally banned outright as there is no provision for granting permission for them. Appellants' only plausible recourse was to seek supervening permission from the district court while acknowledging the gatekeeping and exculpatory aspects of the Seery Order. Nothing in the Seery Order plainly or unambiguously prohibited such a challenge to the exculpatory provisions or required a pointless request for permission from the bankruptcy court that the Order indicated would not be forthcoming.[13]

Because there is at least "sufficient room for difference of opinion" as to whether Appellants violated the Seery Order, that "divest[s] their acts of the character of contempts of court, until the court shall have explicitly declared what they shall or shall not do." *Vose v. Internal Improvement Fund*, 28 F. Cas. 1286, 1288 (C.C.N.D. Fla. 1875) (Bradley,

---

[13] Of course, the Motion itself recognized that if the district court rejected the exculpatory aspects of the Seery Order, it could still refer the ultimate decision on the Motion to the bankruptcy court. ROA.2697. Thus, filing in the district court did not foreclose the bankruptcy court from being able to perform a gatekeeping function if the district court agreed.

J.). Rather than simply clarifying the at best ambiguous Seery Order, the bankruptcy court jumped straight to contempt and must be reversed.

## III. The Damages Imposed by the Bankruptcy Court Were Not Caused by the Alleged Contempt, Rendering them and the Order as a Whole Invalid.

Apart from the absence of contemptuous conduct, the damages awarded by the bankruptcy court were not caused by the allegedly contemptuous Motion and hence reflected impermissible punishment rather than compensatory civil damages. *In re Cleveland Imaging & Surgical Hosp., LLC*, 26 F.4th 285, 292 n.9 (5th Cir. 2022) ("Bankruptcy courts lack the power to impose sanctions so punitive that they amount to a finding of criminal contempt."). The $239,655 awarded to Highland were not for any costs imposed by the Motion (which cost them nothing), nor even for attempting to recover any such claimed costs (Highland made no such claim in their motion for an order to show cause, ROA.1778). Rather, they were exclusively for the costs expended on the improper effort to punish an alleged contempt that had already ceased and caused no damages.[14]

---

[14] And part of the damages awarded were for expenses the bankruptcy court merely "assume[d]" were "related to the contempt matter." Contempt Order at 29 (ROA.55).

Those proceedings had no legitimate compensatory function and were not proximately caused by the Motion, but instead by the intervening cause of Highland's and the bankruptcy court's improperly punitive pursuits. *See Mazant v. Visioneering Inc.*, 250 F. App'x 60, 66 (5th Cir. 2007) ("[A] tortfeasor is not liable for damages brought about by a later, separate, independent, intervening cause, even though the tortfeasor's conduct may have created the original peril.") (citations omitted); *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006) ("A new and independent cause is one that intervenes between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause. … An intervening cause … reliev[es] that defendant of liability.") (citations omitted).

Here, the contempt proceedings were commenced and pursued not to recover actual damages or to terminate ongoing contempt, but rather to *create* damages to punish Appellants and Dondero, and perhaps to deter future questioning of or challenges to the bankruptcy court's

orders.[15]    Each of those purposes is punitive and more properly characterized as the function of criminal contempt. Such unnecessary costs cannot be characterized as having been "caused" by the harmless and terminated Motion, but instead by the intervening cause of Highland and the district court seeking punishment.

Furthermore, even if imposing the cost of those unnecessary and punitive proceedings could be characterized as "compensation," the bankruptcy court did not measure those costs against the expense Highland would have borne in the absence of the allegedly contemptuous choice of initial venue. *See* ROA.11708 (raising issue at hearing). Had Appellants first filed the Motion for leave with the bankruptcy court rather than with the district court, there is no doubt Highland would

---

[15] Had the bankruptcy court merely forced the parties to wait in the hall for several days and then imposed as compensation the costs Highland's lawyers charged for engaging in such a pointless exercise, it would be apparent that such award was punitive rather than genuinely compensatory in nature. Given the absence of any claim for damages from the Motion itself, and no ongoing contempt to be suppressed, the contempt proceedings here are functionally no different. They served no valid *civil* purpose. One cannot treat the fees expected in a proceeding to be deemed damages sufficient to initiate that proceeding, else *all* contempt proceedings would be civil simply because a complaining party sought to recover fees for their time in helping to punish the target. *Cf. Diamond v. Charles*, 476 U.S. 54, 70–71 (1986) (potential recovery of attorney's fees to be expended on a case not sufficient to confer standing).

have opposed such leave both in the bankruptcy court and on the inevitable appeal of its denial. *Cf.* ROA.11886, ROA.11888, ROA.11891 (Highland attacking the proposed amended complaint itself during the contempt proceedings). It thus would have expended far more than the nothing it actually spent in response to the short-lived Motion, and quite likely a comparable or greater amount than it spent on the improper contempt proceedings. Absent such a comparison of expenses, the bankruptcy court failed to address causation properly and again illustrated the punitive nature of the proceedings and resulting contempt award.

In order to be properly characterized as "civil," a contempt sanction "must be compensatory rather than punitive in nature.… A fee award is [compensatory] if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). "That kind of causal connection … is appropriately framed as a but-for test: The complaining party … may recover 'only the portion of his fees that he would not have

paid but for' the misconduct." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). Insofar as the costless Motion in the district court ultimately saved Highland the amounts it would otherwise have spent litigating in the bankruptcy court and then the district court, the supposed contempt cannot be said to have "caused" any net injury.

On appeal, the district court acknowledged that "Highland might have paid more attorneys' fees if [Appellants] had ... requested the bankruptcy court's permission to sue Seery," but deemed such avoided costs irrelevant to the "fees incurred during the contempt hearing, which would not have occurred in the absence of the sanctioned conduct." ROA.12271 n.82 (quoting *Goodyear*, 137 S. Ct. at 1187). But the district court misconstrues the but-for principle of *Goodyear*.

The question is not whether a particular proceeding and its expenses would have occurred at all absent the challenged conduct, but whether the proceeding that did occur imposed added costs beyond what would otherwise have been incurred absent the challenged conduct. *See Fox*, 563 U.S. at 839 (the complaining party's "attorneys would have done much the same work even if Fox [the sanctioned party] had not brought his frivolous claims"; it "seems likely that Vice's attorneys would at least

have conducted similar fact-gathering activities" for the claims remanded to state court; "The District Court's decision to award full attorney's fees to Vice failed to take proper account of this overlap between the frivolous and non-frivolous claims."). *Fox* rejected the fee award for having failed to apply the proper but-for standards. That the expenses Vice would have incurred absent Fox's sanctionable conduct were not for legally *identical* tasks (litigating federal-law claims versus litigating state-law claims) did not prevent the comparable costs of state court litigation from being viewed as an alternative cause of the expenditures, thus undermining any but-for causation from the frivolous federal court claims. It was enough that Vice's counsel would have "done much the same work" even had no sanctionable conduct occurred. *Id.*

In this case, Highland would have incurred costs shielding Seery from liability even if Appellants had first moved the bankruptcy court for permission to make him a defendant. That such alternative proceedings would have been different than the (unnecessary) contempt proceedings on which Highland spent its resources is irrelevant. *See Fox*, 563 U.S. at 840 (rejecting test that merely "traced" expenses to an ensuing proceeding as not properly accounting for work the "lawyers would have

done" regardless of the improper conduct) (cleaned up).  But-for causation requires consideration of the counterfactual alternative absent the alleged contempt, not merely what did occur after the alleged contempt.  And even if there were uncertainty about the relative magnitude of such alternative expenditure scenarios, the failure to even apply the proper causations standards reflects the punitive, rather than compensatory, nature of the award.

Whatever discretion a trial court may enjoy in calculating compensatory fines for sanctionable litigation conduct, "[a] trial court has [such] wide discretion … only when[] it calls the game by the right rules." *Fox*, 563 U.S. at 839.  "[T]he trial court must apply the correct standard, and the appeals court must make sure that has occurred."  *Id.* at 838. Here, the bankruptcy court applied an incorrect standard of injury causation, ignoring both the intervening cause of unnecessary and improperly punitive proceedings and the proper standards for offsetting expenditures that would have been incurred even absent the challenged conduct. Both issues remove the award from the properly compensatory or remedial civil category and show it to be a punitive award reserved to criminal contempt proceedings beyond the power of a bankruptcy court.

**IV.    The *Barton* Doctrine Has Suspect Foundations and Should Not Be Extended to Corporate Officers of the Debtor.**

Finally, the district court also erred by approving an unsupported expansion of the *Barton* doctrine, which is already on shaky ground given more recent jurisprudential developments that render the initial case doubtful.

Before turning to the substance of the *Barton* doctrine and whether it can support the Seery Order, Appellants first note that this Court may properly consider that question.  Contrary to the suggestions of the courts below, ROA.43–44, ROA.12265, a challenge to the validity and scope of the Seery Order is appropriate in these proceedings.  The Seery Order was not a "final" appealable order at the time the Motion challenged its application and validity because the bankruptcy court "retain[ed] jurisdiction." ROA.12110; *Ruiz v. United States*, 243 F.3d 941, 948–49 (5th Cir. 2001).  This Court's characterization of the Seery Order as "final" in the context of reviewing the subsequent final bankruptcy order, *Matter of Highland Cap.*, 48 F.4th at 438 n.15, does not speak to whether it was "final" at the time of the Motion or the resulting contempt order.[16]

---

[16] But even if considered "final," Appellants' Motion would have been timely as it was effectively a Rule 60 motion.  *See supra* n.10.  Appellants

Nor is this an improper collateral attack on the Seery Order, as this Court characterized the arguments raised about the Seery Order in the proceedings concerning the separate final bankruptcy order. *Id.* To begin with, the Seery Order was not at issue in the appeal regarding the final order, yet it is directly relied upon to support the finding of contempt in this case. Furthermore, while this Court has rejected collateral attacks on an injunction "if earlier review of the injunction was available," *W. Water Mgmt., Inc. v. Brown*, 40 F.3d 105, 108 (5th Cir. 1994), Appellants had no reasonable warning that the Seery Order would extend to mere motions questioning the Order itself in the district court, lacked a concrete and ripe factual circumstance in which to raise any challenges prior to the Motion, and thus would have unreasonably been

---

had no reasonable opportunity to seek such relief earlier, before the events leading to the Highland suit even occurred and before anyone suggested that the Seery Order would bar mere requests to the district court that would have been pointless in the bankruptcy court. Appellants sought relief "within a reasonable time," Fed. R. Civ. P. 60(c), and certainly cannot be held in contempt for such efforts regardless whether they were successful. If, however, the Seery Order is read to forbid such efforts to obtain relief, it not only raises serious due process concerns, but also implicates the First Amendment right to "petition for redress of grievances." *Thomas v. Collins*, 323 U.S. 516, 530 (1945); *see also United States v. Hylton*, 710 F.2d 1106, 1111 (5th Cir. 1983) (the right to petition is "[i]nseparable from the guaranteed rights entrenched in the first amendment").

asking for an advisory opinion on hypothetical future applications of the Order.[17]

This was not a situation of nakedly and flagrantly violating an order and then disputing it after the fact.  Rather, the supposed "violation" was the very act of questioning the scope and application of the order in the first place. The challenge to the Seery Order was raised at the first reasonable opportunity prior to any willful violation of that Order and thus should be deemed timely.  Otherwise, all parties would absurdly be forced to bring facial challenges to every hypothetical application of every possible order.

Renewing the Motion's earlier challenge to the Seery Order as part of the contempt proceedings and appeals is neither improper nor reasonably characterized as an improper "collateral" attack. The request for the district court to interpret, modify, or reject the Seery Order so that the Amended Complaint could be considered or filed constituted a timely challenge to that Order.  That challenge was raised *before* the contempt

---

[17] Moreover, the Attorney Appellants could not have challenged the Seery Order when it was issued because they had not yet entered the case.  And, insofar as the contempt order seeks to hold them personally liable, the fact that they are DAF's agents does not make DAF their agent for purposes of binding them or waiving their separate rights.

proceeding itself when it was reasonably "available" to do so and thus the renewed arguments in these proceedings are not an attempt to justify violating the order by only challenging it after the fact.

Returning to the substance of whether the *Barton* doctrine properly can be stretched to insulate a corporate officer such as Seery, it is, of course, true that this Court has recognized that "circuit courts have unanimously applied the *Barton* doctrine in bankruptcy cases." *Carroll v. Abide*, 788 F.3d 502, 505 (5th Cir. 2015). But neither that case nor any other Fifth Circuit case we have found discussing the *Barton* doctrine applied it to cloak corporate officers with judicial immunity and exculpate them from entire categories of claims against them. Indeed, this Court has instead rejected the exculpatory order proposed for Seery as CEO and other non-debtors in the final bankruptcy order in this very case. *See* discussion *infra*, at 20.[18]

The *Barton* doctrine should not be casually expanded given its foundation in purposivism—a relic of an era permitting judge-made law

---

[18] Even this Court's most recent, unpublished, decision applying the *Barton* doctrine did so in the context of a trustee, not a corporate officer, and did not suggest any further expansion. *See Matter of Foster*, No. 22-10310, 2023 WL 20872, at *5–*6 (5th Cir. Jan. 3, 2023).

to round out some broad statutory purpose even absent statutory text—that the modern Supreme Court rejects.  In *Barton*, the Supreme Court relied upon its broadly conceived purpose of bankruptcy law, its policy judgment regarding how to further or prevent frustration of that purpose, and its preferred interactions between Article I and Article III tribunals that Congress had not addressed and manufactured an implied supplement to the statutory scheme to requiring the Article I judge's consent to initiate an action against a receiver in a foreign Article III jurisdiction.  *Barton*, 104 U.S. at 128.

That interpretative approach does not fly today, and certainly should not be extended beyond the narrow bounds of existing and binding precedent.  *Cf. Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 312 (1997) (Scalia, J., concurring) (noting his "continuing adherence to the view that the so-called 'negative' Commerce Clause is an unjustified judicial invention, not to be expanded beyond its existing domain").  Instead, "the Court now hews closely to the rules embedded in the enacted text, rather than adjusting that text to make it more consistent with its apparent purposes."  John F. Manning, *The Eleventh Amendment and the Reading of Precise Constitutional Texts*, 113 Yale L.J. 1663, 1665 (2004) (citing *Pa.*

*Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998); *Brogan v. United States*, 522 U.S. 398, 403 (1998)).[19]

Just as causes of action can no longer be created by the courts, they likewise cannot be allowed to be destroyed at the whim of a bankruptcy judge through adoption of an exculpatory clause based on an ever-expanding reading of the implied authority *Barton* created.

Even though this panel cannot override *Barton* or related Fifth Circuit precedent, it need not take such precedent and expand upon it. *See Abbasi*, 137 S. Ct. at 1857 ("Given the notable change in the Court's approach to recognizing implied causes of action, … the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009));

---

[19] *See also Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress"; where a private remedy is lacking in a statute, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute"); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) ("If the statute does not itself so provide, a private cause of action will not be created through judicial mandate."); Frank H. Easterbrook, *Text, History, and Structure in Statutory Interpretation*, 17 Harv. J.L. & Pub. Pol'y 61, 68 (1994) (invoking "an imputed 'spirit' to convert one approach into another dishonors the legislative choice as effectively as expressly refusing to follow the law.")

*Hernandez v. Mesa*, 140 S. Ct. 735, 750 (2020) (declining yet again to expand *Bivens* into any new contexts). Rather, this Court should limit those cases to their terms and narrow applications, which do not include allowing gatekeeping and exculpatory orders for the benefit of the debtor's corporate officers.

On appeal of the final reorganization order in this case, this Court followed a similar approach, refusing to extend exculpatory and gatekeeping protections to non-debtors including Seery as CEO, even while acknowledging and permitting the *Barton* doctrine and related protections to apply to debtors in possession who stand in the shoes of trustees. *Matter of Highland Cap.*, 48 F.4th at 435–39. But that result turned on the presence of statutory provisions protecting debtors-in-possession as if they were trustees, and the absence of express provisions extending protections to non-debtor parties, including Seery as CEO. *Id.* at 437–38. The Court further held that because non-debtor parties were removed from the exculpation provisions, they were likewise not subject to the injunction or its gatekeeping provisions, and hence it was unnecessary to resolve challenges to those provisions as to such parties. *Id.* at 438. The court did not look to policy arguments, its own views on

53

the administration of bankruptcy orders, or other non-statutory concerns.[20]   Rather, it did what the Supreme Court now expects and declined to supplement a statutory scheme beyond its terms or the terms of binding precedent.[21]

The bankruptcy court, by contrast, did precisely what the Supreme Court now rejects—it expanded a judicially-invented doctrine beyond its precedential scope based on its own policy views.  *See* ROA.42 (concluding that while Seery was not a trustee, he should be treated as such because

---

[20] Indeed, this Court recognized that there are other ways to address concerns with burdensome litigation, noting that a "non-debtor exculpation within a reorganization plan is not a lawful means to impose vexatious litigant injunctions and sanctions." *Matter of Highland Cap.*, 48 F.4th at 439 n.19.  Rather, the bankruptcy court has other "power to enjoin and impose sanctions … by following the procedures to designate [parties] vexatious litigants." *Id.*

[21] To be sure, this Court expressly declined to rule on the validity of the two earlier gatekeeping orders at issue in this case. *Matter of Highland Cap.*, 48 F.4th 419, 438 n.15.  Noting that it lacked jurisdiction to consider orders (including the Seery Order) not before it on appeal, it nonetheless observed that such orders might be final as to the parties before it in the appeal of the final bankruptcy order.  But as discussed *supra*, at 47–50, for purposes of this case, the Seery order is directly at issue, was not final at the time the Motion was made or the contempt proceedings took place, and hence would not be *res judicata* here.

of the court's own view that it was "rather obvious" that Seery "should have similar protections").[22]

Extending *Barton* in this case is even more suspect given that *Barton*'s primary concern does not even apply. *Barton* held that a court in the District of Columbia could not exercise jurisdiction in a suit against a receiver that had been appointed by a court in Virginia. 104 U.S. at 126–28, 131. *Barton* was rooted in the "concern that if debtors could sue the trustee in a foreign jurisdiction, the foreign 'court would have the practical power to turn bankruptcy losers into bankruptcy winners.'" *Carroll*, 788 F.3d at 506 (quoting *In re Linton*, 136 F.3d 544, 546 (7th Cir. 1998)). But here, Appellants looked only to the district court that had authority over the bankruptcy court in this case to begin with.

Furthermore, even as *Barton* has been expanded to reach Trustees and their agents, that still does not cover this case. Seery was not hired

---

[22] Yet, as noted in the Order approving Seery's appointment as CEO, and again during the contempt hearing, the bankruptcy court deferred to Highland's "reasonable business judgment … in proposing that Seery be CEO"—a role he had already served in for months before seeking the bankruptcy court's blessing. ROA.1288, 11722. By applying the business-judgment rule in deferring to Highland's selections, the court confirmed that Seery was a CEO, not the court's agent. And the claims regarding which DAF sought leave to amend would have challenged Seery's conduct as a CEO and fiduciary, not his conduct as a Director.

or appointed by a receiver or trustee.  He was not tasked by the Court with liquidating the estate, for example.  He is the CEO of a private company, appointed by its privately designated board in their professed "business judgment."  He is free to make private business decisions about Highland, hire and fire employees, and purchase and dispose of Highland's property, all without court direction and without court approval save for his settlement of claims against the estate for which he must seek court approval.  He is also slated to make millions of dollars in salary and even more in bonuses.  A trustee typically does not, and cannot, do those things.[23]

Other policy arguments for expanding the *Barton* doctrine, even if they were relevant and appropriate, are similarly inapplicable.  For example, the bankruptcy court emphasized that the *Barton* doctrine exists to "maintain a panel of competent and qualified trustees[.]"

---

[23] Courts that have extended *Barton* to the direct agents of a receiver or trustee have done so under the guise that said agents were the "equivalent" of the appointed receiver or trustee for policy reasons. *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009).  Notably, the Fifth Circuit has not similarly used its own policy views to expand the *Barton* doctrine.  Even its recent decision in *Matter of Highland Cap.*, 48 F.4th at 439 n.17, looked to the statutory rights of a debtor-in-possession, rather than engage in a freewheeling extrapolation of a presumed bankruptcy policy.

ROA.41.  But this rationale for *Barton* has been rejected: "the *Barton* doctrine is grounded in the exclusive nature of *in rem* jurisdiction.  The need to attract qualified individuals to serve as receivers and bankruptcy trustees might be a legitimate policy concern, but it has nothing to do with subject-matter jurisdiction."  *Chua v. Ekonomou*, 1 F.4th 948, 954 (11th Cir. 2021).  Furthermore, the idea that if a candidate for CEO was not offered immunity, then they would not do the job is also unsupported by any evidence or even common sense. Every CEO faces such risks, are handsomely compensated for their roles, and insurance exists precisely to cover such concerns.

Even this Court's own policy explanation in *Carroll* that the rationale of *Barton* was to prevent a litigant from "obtain[ing] some advantage over the other claimants upon the assets in the receiver's hands," 788 F.3d at 505–06, has no application in this case.  The suit against Highland itself had already and properly been initiated, and was not restricted by any gatekeeping order.  Adding Seery to that suit added no incremental threat at all to the Highland's assets.

Furthermore, the Bankruptcy Code expressly authorized claims, such as the ones for which permission was sought, to be brought without

permission even against Trustees and receivers, as well as against other managers of any property.   28 U.S.C. § 959(a) ("Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property."); *see also* ROA.11999 (raising § 959(a) in the district court below).   Here, Appellants alleged that Seery served as both advisor and manager with regard to property brought within Highland's control—HarborVest's stake in HCLOF—and Appellants' complaint concerns his alleged breaches of fiduciary duty in connection with such property.   That such property was undervalued and purchased for Highland in connection with a settlement does not insulate the conduct surrounding it from suit as allowed by § 959(a).   Otherwise, all property managed in connection with the bankruptcy—that is to say all property bought, sold, or held by or for a debtor—would be insulated, rendering § 959(a) toothless.

Given the *Barton* doctrine's questionable foundations in purposivism, the inapplicability of the common policy arguments used to justify its expansion, and the statutory provisions rejecting the need for

permission to bring suit in connection with property managed by or for a debtor, the *Barton* doctrine should not be extended to insulate a private company executive from claims based on his conduct violating his duties as such an executive. This case is several steps removed from the *Barton* doctrine, and this Court should not expand that doctrine beyond its limited binding holdings. This Court should follow the Supreme Court's approach in cases like *Abbasi* and *Hernandez* and treat such expansion beyond the narrow confines of binding precedent as disfavored. As no such precedent extends *Barton* to corporate officers such as Seery, the doctrine is inapplicable, the Seery Order invalid, and hence the judgment of contempt erroneous.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of contempt against Appellants. Appellants did not violate the Seery Order, and the bankruptcy court's conclusion that their district-court Motion constituted unauthorized "pursu[it]" of a claim against Seery was founded upon an unreasonable interpretation of the Order's language. Moreover, even if the bankruptcy court's interpretation was a plausible reading of the Seery Order, it was certainly not the only one, nor the best

one.  Such ambiguity means that the judgment of contempt must be reversed.  And even if the Motion could be deemed contemptuous, it did not cause any injury and the damages awarded thus lacked any compensatory of present remedial purpose.  As their only purpose was to punish or deter, the finding of contempt was beyond the civil contempt authority of the bankruptcy court.  Finally, because the Seery Order was based on an unwarranted extension of an already dubious legal principle—the *Barton* doctrine—the Order was invalid as applied in this case and cannot support a finding of contempt for having questioned that order in the district court.

February 6, 2023                     Respectfully submitted,

Mazin A. Sbaiti                          */s/ Erik S. Jaffe*
Jonathan Bridges                      Erik S. Jaffe
SBAITI & COMPANY PLLC            *Lead Counsel*
JPMorgan Chase Tower             Brian J. Field
2200 Ross Avenue                      Aaron Gordon
Suite 4900W                               SCHAERR | JAFFE LLP
Dallas, TX 75201                         1717 K Street NW, Suite 900
Telephone: (214) 432-2899        Washington, DC 20006
mas@sbaitilaw.com                    Telephone: (202) 787-1060
                                               ejaffe@schaerr-jaffe.com

*Counsel for Appellants The Charitable DAF Fund, L.P.;*
*CLO Holdco, Ltd.; Mark Patrick; Sbaiti & Company, PLLC;*
*Mazin A. Sbaiti; and Jonathan Bridges*

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that on February 6, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ Erik S. Jaffe*
Erik S. Jaffe

# CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,630 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Office 2016 in 14-point Century Schoolbook font.

I further certify that 1) all required redactions have been made, and 2) that this document has been scanned for viruses with the most current version of a commercial virus scanning program and is free of viruses.


*/s/ Erik S. Jaffe*
Erik S. Jaffe

Dated: February 6, 2023