No. 22-11036

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**In the Matter of Highland Capital Management, L.P.,**

**Debtor**

**THE CHARITABLE DAF FUND, L.P.; CLO HOLDCO, LIMITED;
MARK PATRICK; SBAITI & COMPANY, P.L.L.C.;
MAZIN A. SBAITI; JONATHAN BRIDGES,**

**APPELLANTS**

v.

**HIGHLAND CAPITAL MANAGEMENT, L.P.,**

**APPELLEE.**

---

**In the Matter of Highland Capital Management, L.P.,**

**Debtor.**

**JAMES DONDERO,**

**APPELLANT,**

v.

**HIGHLAND CAPITAL MANAGEMENT, L.P.,**

**APPELLEE.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
CASE NO. 3:21-CV-01974-X

**ANSWERING BRIEF OF APPELLEE**

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Hayley R. Winograd
10100 Santa Monica Blvd.
Los Angeles, CA 90067
(310) 277-6910

HAYWARD PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

*Counsel for Appellee*

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Roy T. Englert, Jr.
Matthew M. Madden
Shikha Garg
Paul Brzyski
2000 K Street NW, 4th Floor
Washington, DC 20006
(202) 775-4500

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that:

(a)    There are no other debtors associated with this bankruptcy case other than Highland Capital Management L.P., and there are no publicly-held corporations that own 10% or more of Appellee Highland Capital Management L.P., which is not a corporation and which is not a parent corporation;

(b)    That the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.    **Defendant - Appellants:**
**The Charitable DAF Fund, L.P.**
**CLO Holdco, Limited**
**Mark Patrick**
**James Dondero**
**Sbaiti & Company PLLC**
**Mazin Sbaiti**
**Jonathan Bridges**

Counsel for Defendants – Appellants The Charitable DAF Fund, L.P., CLO Holdco, Limited, Mark Patrick, Sbaiti & Company PLLC, Mazin Sbaiti, and Jonathan Bridges:

Erik S. Jaffe
Brian J. Field
Aaron Gordon
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060

Mazin A. Sbaiti
Jonathan Bridges
SBAITI & COMPANY PLLC
JPMorgan Chase Tower

2200 Ross Avenue
Suite 4900W
Dallas, TX 75201
Telephone: (214) 432-2899

Counsel for Defendant – Appellant James Dondero:
LEVINGER PC
Jeffrey S. Levinger
J. Carl Cecere
1700 Pacific Ave., Suite 2390
Dallas, TX 75201
Telephone: (21) 855-6817

2.     **Appellee (Debtor):**
       **Highland Capital Management, L.P.**

Counsel for Appellee:

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910

PACHULSKI STANG ZIEHL & JONES LLP
John A. Morris
Gregory V. Demo
Hayley R. Winograd
780 Third Avenue, 34th Floor
New York NY 10017-2024
Telephone: (212) 561-7700

HAYWARD PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100

DOCS_NY:47281.23 36027/003

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Roy T. Englert, Jr.
Matthew M. Madden
Shikha Garg
2000 K Street NW, 4th Floor
Washington, D.C. 20006
Telephone: (202) 775-4500

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Appellee*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee respectfully submits that oral argument is unlikely to aid the Court in resolving the questions presented because (a) the appeal lacks merit, (b) no novel or unusual issues are raised, and (c) the parties' briefs adequately set forth the parties' positions.

DOCS_NY:47281.23 36027/003

# TABLE OF CONTENTS

**Page**

ISSUES PRESENTED ............................................................................. 1

SUMMARY OF ARGUMENT ............................................................... 2

STATEMENT OF THE CASE ................................................................ 6

    A.    Case Background ........................................................................ 6

        1.    The Bankruptcy Proceedings ...................................... 6

        2.    The Gatekeeper Provisions ......................................... 7

    B.    The HarbourVest Settlement and DAF's and CLO Holdco's Subsequent Lawsuit in District Court ....................................... 9

    C.    The DAF Parties Pursue Claims Against Seery Without Seeking, Let Alone Obtaining, Bankruptcy Court Approval ............ 12

    D.    The Contempt Proceedings ..................................................... 13

    E.    The Contempt Order................................................................ 17

    F.    The District Court Affirms All Aspects of the Contempt Order Relevant to This Appeal ................................................. 19

    G.    Appellants Appeal the Contempt Order in this Court ........................ 19

ARGUMENT ....................................................................................... 20

    A.    Standard of Review ................................................................. 20

    B.    The Bankruptcy Court's Finding That the DAF Parties Violated the Seery Order Is Not Clearly Erroneous ......................... 21

    C.    The Orders Provided Sufficient Notice of the Prohibited Conduct ................................................................................... 26

    D.    The DAF Parties Cannot Avoid a Contempt Finding with a Collateral Attack on the Final Orders They Violated ....................... 32

        1.    Appellants' Collateral Attack on the Gatekeeper Provisions Is Improper ............................................... 32

        2.    The Gatekeeper Provisions Properly Apply to Seery ............. 35

    E.    Dondero Had Adequate Notice of Contempt ..................................... 42

    F.    The Bankruptcy Court's Finding That Dondero Violated the Gatekeeper Provisions Is Not Clearly Erroneous ............................. 44

G.    The Bankruptcy Court's Sanction Award Was Not an Abuse of Discretion ...................................................................................46

1.    Legal Standard .........................................................................47

2.    The Bankruptcy Court's Sanction Award Was Compensatory and Not Punitive ...............................................48

3.    The Sanctions Award Was Properly Based on Highland's Costs ........................................................................................50

4.    The Bankruptcy Court's Factual Findings Supporting Its Fee Award Were Not Clearly Erroneous ................................52

CONCLUSION ...................................................................................54

CERTIFICATE OF COMPLIANCE WITH FRAP 32(A) ....................................56

CERTIFICATE OF SERVICE ............................................................................56

DOCS_NY:47281.23 36027/003

# TABLE OF AUTHORITIES

## CASES

*Alberti v. Klevenhagen,*
    46 F.3d 1347 (5th Cir. 1995) ................................................................43

*Am. Airlines, Inc. v. Allied Pilots Ass'n,*
    228 F.3d 574 (5th Cir. 2000) ........................................... 21, 22, 29, 47

*Am. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO,*
    No. 4:19-CV-414-A, 2019 WL 3774501 (N.D. Tex. Aug. 12, 2019) ................27

*Baron v. Sherman (In re Ondova Ltd. Co.),* No. 09-34784-SGJ-7, 2017 WL
    477776 (Bankr N.D. Tex. Feb. 1, 2017), *report and recommendation*
    *adopted,* No. 3:16-CV-00947-M, 2018 WL 580151 (N.D. Tex. Jan. 26, 2018) .35

*Barton v. Barbour,*
    104 U.S. 126 (1881) ................................................................. 14, 18

*Blanks v. Lockheed Martin Corp.,*
    No. 4:05CV137LN, 2006 WL 1139941 (S.D. Miss. Apr. 25, 2006)...................25

*Butler Aviation Int'l v. Whyte (In re Fairchild Aircraft Corp.),*
    6 F.3d 1119 (5th Cir. 1993) ........................................................ 20, 46

*Carroll v. Abide,*
    788 F.3d 502 (5th Cir. 2015) ....................................................... 38, 39

*Carter v. Rodgers,*
    220 F.3d 1249 (11th Cir. 2000) ..........................................................41

*Certificate of Service,*
    Case No. 19-34054-sgj (Bankr. N. D. Tex.) ............................................8

*Charitable DAF Fund v. Highland Cap. Mgmt., L.P.,*
    No. 3:21-CV-00842-B (N.D. Tex. Sept. 20, 2021).....................................12

*Chua v. Ekonomou,*
    1 F.4th 948 (11th Cir. 2021)..............................................................39

*Clanton v N. Pac. Grp., Inc.,*
    No. 2:10-CV-57KS-MTP, 2010 WL 2944562 (S.D. Miss. July 22, 2010) .........41

*Dew v. Crown Derrick Erectors, Inc.,*
    208 S.W.3d 448 (Tex. 2006) .............................................................50

*FDIC v. LeGrand*,
    43 F.3d 163 (5th Cir. 1995) ................................................................22

*Fox v. Vice*,
    563 U.S. 826 (2011) .........................................................................51

*Geller v. Branic Int'l Realty Corp.*,
    212 F.3d 734 (2d Cir. 2000) ...........................................................23

*Goodyear Tire & Rubber Co. v. Haeger*,
    137 S. Ct. 1178 (2017) .....................................................................51

*Gulf King Shrimp Co. v. Wirtz*,
    407 F.2d 508 (5th Cir. 1969) ..........................................................31

*Highland Cap. Mgmt., L.P. v. NexPoint Advisors, L.P.*,
    No. 22-631 (U.S. Jan. 5, 2023) .......................................................30

*In re Fabricators, Inc.*,
    926 F.2d 1458 (5th Cir. 1991) ........................................................21

*In re Timmons*,
    607 F.2d 120 (5th Cir. 1979) ..........................................................32

*Ingalls v. Thompson (In re Bradley)*,
    588 F.3d 254 (5th Cir. 2009) ............................................. 20, 30, 49

*James v. Cleveland Sch. Dist.*,
    No. 4:19-CV-66-DMB-RP, 2020 U.S. Dist. LEXIS 135248 (N.D. Miss. July 30,
    2020) ...............................................................................................23

*Lamar Fin. Corp. v. Adams*,
    918 F.2d 564 (5th Cir. 1990) ..........................................................49

*Lebovits v. Scheffel (In re Lehal Realty Assocs.)*,
    101 F.3d 272 (2d Cir. 1996) ............................................... 36, 41

*M.D. v. Abbot*,
    509 F. Supp. 3d 683 (S.D. Tex. 2020) .............................................43

*Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S.A. Co.*,
    195 F.3d 765 (5th Cir. 1999) ..........................................................31

*Matter of Ondova Ltd. Co.*,
    914 F3d 990 (5th Cir 2019) ............................................................36

*Mazant v. Visioneering, Inc.*,
    250 F. App'x 60 (5th Cir. 2007) .....................................................50

iv

*McComb v. Jacksonville Paper Co.*,
  336 U.S. 187 (1949) ........................................................................31

*McDaniel v. Blust*,
  668 F.3d 153 (4th Cir. 2012) .........................................................36

*McVay v. Halliburton Energy Servs., Inc.*,
  608 F. App'x 222 (5th Cir. 2015)...................................................30

*Meyer v. Brown & Root Constr. Co.*,
  661 F.2d 369 (5th Cir.1981) ...........................................................27

*Muratore v. Darr*,
  375 F.3d 140 (1st Cir. 2004) .................................................... 39, 40

*Negron-Almeda v. Santiago*,
  528 F.3d 15 (1st Cir. 2008) ............................................................23

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
  48 F.4th 419 (5th Cir. 2022) .................................................. passim

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*,
  No. 22-669 (Jan. 16, 2023)..............................................................30

*Payne v. Univ. of S. Miss.*,
  681 F. App'x 384 (5th Cir. 2017).............................................. 53, 54

*Petroleos Mexicanos v. Crawford Enters., Inc.*,
  826 F.2d 392 (5th Cir. 1987) ..........................................................22

*Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc.
(In re Terrebonne Fuel & Lube, Inc.)*,
  108 F.3d 609 (5th Cir.1997) .................................................... 21, 47

*Reich v. Crockett*,
  No. 95-50159, 1995 WL 581875 (5th Cir. 1995)................................33

*Republic Supply Co. v. Shoaf*,
  815 F.2d 1046 (5th Cir. 1987).........................................................33

*Roussell v. Brinker Int'l, Inc.*,
  441 F. App'x 222 (5th Cir. 2011).....................................................47

*Ruiz v. United States*,
  243 F.3d 941 (5th Cir. 2001) ..........................................................34

*Saizan v. Delta Concrete Prods. Co., Inc.*,
  448 F.3d 795 (5th Cir 2006) ...........................................................47

v

*Satterfield v. Malloy*,
    700 F.3d 1231 (10th Cir. 2012) ................................................................39

*Schermerhorn v. Centurytel, Inc. (In re Skyport Glob. Commc'ns, Inc.)*,
    No. 08-36737-H4-11, 2013 WL 4046397
    (Bankr. S.D. Tex. Aug. 7, 2013) ........................................... 27, 31, 51

*United States v. Brown*, 561 F.3d 420 (5th Cir. 2009) ............................................31

*Villegas v. Schmidt*,
    788 F3d 156 (5th Cir. 2015) ................................................................36

*Von Clark v. Butler*,
    916 F.2d 255 (5th Cir. 1990) ................................................................48

*W. Water Mgmt., Inc. v. Brown*,
    40 F.3d 105 (5th Cir. 1994) ................................................................33

*Wegner v. Standard Ins. Co.*,
    129 F.3d 814 (5th Cir. 1997) ........................................... 47, 52, 53, 54

*Whitehead v. Food Max of Miss., Inc.*,
    332 F.3d 796 (5th Cir. 2003) ................................................................21

## STATUTES

28 U.S.C. § 959(a) ................................................................. passim

## RULES

FED. R. CIV. P. 15(a)(1)(A) ................................................................. 12, 24

FED. R. CIV. P. 65 ................................................................45

Fed. R. Civ. P. 65(d) ................................................................. 26, 31

Fed. R. Civ. P. 65(d)(1) ................................................................27

FED. R. CIV. P. 65(d)(2)(A)-(C) ................................................................45

N.D. TEX. CIV. R. 15.1(b) ................................................................25

vi

## <u>ISSUES PRESENTED</u>

1. Whether the Bankruptcy Court's finding that Appellants violated the Gatekeeper Provision in the Seery Order should be affirmed as not clearly erroneous?

2. Whether the Orders were sufficiently specific to put Appellants on notice of the prohibited conduct?

3. Whether the Appellants' collateral attack on the Gatekeeper Provisions as improper extensions of the *Barton* Doctrine is both improper and without merit?

4. Whether Dondero had adequate notice that he was subject to contempt?

5. Whether the Bankruptcy Court's finding that Dondero violated the Gatekeeper Provisions should be affirmed as not clearly erroneous?

6. Whether the Bankruptcy Court's sanction award should be affirmed as a proper exercise of its discretion?

## SUMMARY OF ARGUMENT

The Bankruptcy Court's finding that Appellants violated the Gatekeeper Provision in the Seery Order should be affirmed as not clearly erroneous. The Orders prohibited them from "commenc[ing] or pursu[ing] a claim or cause of action of any kind" against Seery without leave of the Bankruptcy Court. Yet, the overwhelming evidence established that, with knowledge of the Orders, Appellants attempted to sue Seery in the District Court without leave of the Bankruptcy Court.

Appellants' contention that their attempt to sue Mr. Seery in District Court did not constitute "pursuit" of a claim under the Gatekeeper Injunctions because it was only a "preliminary step," is unsupported, belied by the record, and otherwise does not pass the straight face test. Again, the unambiguous terms of the Gatekeeper Provisions prohibited Appellants from "commec[ing]" or "pursu[ing]" a claim against Seery without leave of the Bankruptcy Court. Appellants' interpretation that they could only "pursue" after commencing an action violates the plain meaning of the Orders and basic rules of construction. It is also undermined by the very purpose of the Orders, which was to protect the Debtor's Independent Directors, and Seery in his capacity as the Debtor's CEO, from baseless, threatening, or vexatious litigation by having the Bankruptcy Court serve as a "gatekeeper." Appellants' attempt to alter the meaning of the word "pursue" in an attempt to justify their conduct should be rejected.

Appellants' contention that they did not have "notice" of the Orders is also unavailing. The Orders were sufficiently specific to put Appellants on "notice" of the prohibited conduct where the clear and unambiguous terms of the Gatekeeper Provisions prohibited Appellants from "commenc[ing] or pursu[ing] a claim or cause of action of any kind" against Seery without obtaining leave of the Bankruptcy Court, and where the very purpose of the Orders was to protect Seery from precisely this type of conduct.

Appellants' collateral attack on the Gatekeeper Provisions as unjustified extensions of the *Barton* Doctrine is both improper and without merit. Appellants failed to appeal the Orders, and launched their collateral attack on the Orders fifteen months after entry of the Governance Order, nine months after entry of the Seery Order, and only ***after*** being accused of violating the Gatekeeper Provisions. As this Court recently found when it affirmed Highland's Confirmation Order, the Orders are final, non-appealable, and "to the extent Appellants seek to roll back the protections in the [Orders] … such a collateral attack is precluded." *See NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.* (*In re Highland Cap. Mgmt., L.P.*), 48 F.4th 419, 438 n.15 (5th Cir. 2022).

Appellants' argument that the Gatekeeper Provisions improperly extend the *Barton* Doctrine is also wrong on the merits. Under applicable Fifth Circuit law (and the law of other circuits), bankruptcy courts can perform a gatekeeping function by

3

requiring litigants to obtain bankruptcy court approval before initiating an action against the trustee or other bankruptcy-court-appointed officers, such as Seery. And, again, this Court recently ratified its prior rulings under *Barton* when it affirmed Highland's Confirmation Order. *See NexPoint*, 48 F.4th at 439.

Dondero's argument that he lacked adequate notice that he was subject to contempt is also belied by the record. The Bankruptcy Court's show-cause order directed Dondero to appear before it in person to show cause why he should not be held in contempt of court for violating the Orders. Dondero actively participated in the contempt proceedings and acknowledged being named among the "violators."

The Bankruptcy Court's finding that Dondero violated the Gatekeeper Provisions was not clearly erroneous. This finding was supported by Patrick's and Dondero's testimony regarding, *inter alia*, (a) Dondero's role in sparking the "investigation" of Seery's alleged improper conduct concerning the HarbourVest Settlement; (b) Dondero's extensive communications with the Sbaiti Firm concerning the preparation of the Original Complaint; and (c) Dondero's reluctant admission that he "probably" knew the Seery Motion would be filed.

Finally, the Bankruptcy Court's sanction award should be affirmed as a proper exercise of its discretion. The monetary award was based solely on Highland's cost of enforcing the Orders, and the Bankruptcy Court's sanction was plainly compensatory. The Bankruptcy Court's factual findings in support of its fee award

4

were not clearly erroneous.  They were based on the Court's intimate familiarity with the record of this case, detailed time entries, and the Bankruptcy Court's conservative estimate of Highland's reasonable costs expended.

## <u>STATEMENT OF THE CASE</u>[1]

A.    <u>Case Background</u>

1.    <u>The Bankruptcy Proceedings</u>

On October 16, 2019, Highland, a multibillion-dollar global investment adviser, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ROA.1608-09. At the time, Highland was controlled by James Dondero ("<u>Dondero</u>"). *Id.* Highland was forced into bankruptcy by the "myriad of massive, unrelated, business litigation claims that it faced ... after a decade or more of contentious litigation in multiple forums all over the world." ROA.1611.

The office of the United States Trustee and Highland's Official Committee of Unsecured Creditors (the "<u>Committee</u>") expressed concerns about Dondero's ability to act as an estate fiduciary given his history of self-dealing, fraud, and other misconduct. ROA.1614. To avoid the appointment of a chapter 11 trustee to take control of the estate, the Committee, Highland, and Dondero agreed to a governance settlement, which the Bankruptcy Court approved on January 9, 2020 (the "<u>Governance Order</u>"). ROA.1132-36. Pursuant to the Governance Order, Dondero relinquished control of Highland and resigned his positions as an officer and director of Highland and its general partner. *Id.* Three new independent directors were appointed to govern Highland during its bankruptcy proceedings and reorganization:

---

[1] Citations to "ROA.___" are to the Record on Appeal.

James P. Seery, Jr., John S. Dubel, and retired bankruptcy judge Russell Nelms (the "Independent Directors").  ROA.1615, 1046-47.  The Bankruptcy Court described each director as "eminently qualified," observing that Seery had "vast experience at prominent firms with high-yield and distressed investing similar" to Highland; Dubel had "40 years of experience restructuring large complex businesses and serving on boards"; and Nelms had extensive relevant experience from having served as a bankruptcy judge.  ROA.1615.

### 2.    The Gatekeeper Provisions

With Dondero's consent, the Governance Order included a "gatekeeper provision" that prohibited the commencement of litigation against the Independent Directors without the Bankruptcy Court's prior authorization (the "First Gatekeeper Provision").  The First Gatekeeper Provision was adopted to protect the Independent Directors from baseless litigation and provided the following:

> No entity may commence or pursue a claim or cause of action of any kind against any Independent Director ... relating in any way to the Independent Director's role as an independent director ... without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Independent Director ... and (ii) specifically authorizing such entity to bring such claim. The Court will have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

ROA.1134-35.  The Governance Order was not appealed and is final.

Highland later moved to have Seery appointed Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative of Highland while maintaining his role as an Independent Director.  ROA.1137-69 (the "Seery Motion").  On July 16, 2020, following a hearing, the Bankruptcy Court entered an order granting the Seery Motion (the "Seery Order", and together with the Governance Order, the "Orders").  ROA.1170-81.  Neither Dondero nor any other party-in-interest objected to the Seery Motion or appealed the Seery Order.[2]

Like the Governance Order, the Seery Order contained a "gatekeeper provision," this one to provide additional protection for Seery in his new roles (the "Second Gatekeeper Provision", and together with the First Gatekeeper Provision, the "Gatekeeper Provisions"), that provided:

> No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim.  The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

ROA.1172.

---

[2] CLO Holdco (defined below) and Dondero were served with both the Seery Motion and the Seery Order.  *See* ROA.7145-49; *Certificate of Service*, Case No. 19-34054-sgj (Bankr. N. D. Tex.), Docket No. 881, Exhibit A.

The Gatekeeper Provisions were essential to each of the Orders. As the Bankruptcy Court explained, "it was not as easy to get such highly qualified persons to serve as independent board members and, later, as the Debtor's[3] Chief Executive Officer, as it would be in an ordinary chapter 11 case" because of the "culture of constant litigation" propagated by Dondero. ROA.1616. "Naturally, [the directors] were worried about getting sued no matter how defensible their efforts" because "everything always ended in litigation at Highland." *Id.* Each of the Independent Directors, including Seery, testified that they would not have accepted the role of Independent Director without "a gatekeeper provision prohibiting the commencement of litigation against the independent directors without the Bankruptcy Court's prior authority." *Id.*

**B.    The HarbourVest Settlement and DAF's and CLO Holdco's Subsequent Lawsuit in District Court**

In late 2020, Highland sought Bankruptcy Court approval of a proposed settlement with one of its largest creditors, HarbourVest, which had asserted a prepetition, unsecured claim in excess of $300 million based on Highland's alleged fraudulent misrepresentations and other unlawful conduct. ROA.1403-15. Dondero

---

[3] "Debtor" is used interchangeably with Highland.

and several affiliated entities, including CLO Holdco, Ltd. ("CLO Holdco"),[4] were

the only objectors to the proposed settlement. ROA.4669-706.

On January 20, 2021, the Bankruptcy Court conducted an evidentiary hearing

concerning the proposed settlement.  At the beginning of the hearing, CLO Holdco—

then under the direction of Grant Scott ("Scott")—voluntarily and specifically

withdrew its objection. ROA.582-83.   Following the close of evidence and

argument, the Bankruptcy Court overruled the remaining objections and entered an

order (the "HarbourVest Order") approving the HarbourVest settlement, finding it

to be fair, equitable, and in the best interests of the Debtor's estate (the "HarbourVest

Settlement"). ROA.1426-48.[5]

Scott was Dondero's college housemate and longtime friend and had served

as the DAF's managing member since 2012. *Id.*; *see also* ROA.11391 at 150:3-5;

ROA.11395 at 154:11-24; ROA.11397 at 156:7-10; ROA.8321 at 28:21. Shortly

---

[4] CLO Holdco is a wholly-owned subsidiary of The Charitable Donor Advised Fund
(the "DAF" and together with CLO Holdco, the "DAF Parties"). The DAF is a
limited partnership formed by Dondero that purports to be a charitable fund and that
controls $200 million in assets derived from Highland, Dondero, and Dondero's
family trusts. ROA.578; *see also* ROA.11406 at 165:19-24. Dondero was the DAF's
managing member until 2012 and serves as its informal investment advisor. *Id.*

[5] Dondero's trusts appealed the HarbourVest Order (the "HarbourVest Appeal").
One of the trusts later conceded it lacked standing to prosecute the HarbourVest
Appeal, but the other, The Dugaboy Investment Trust ("Dugaboy"), persisted. After
Dugaboy's initial appeal was dismissed on standing grounds, Dugaboy appealed to
the Fifth Circuit where it remains *sub judice*. *See* USCA Case No. 22-10960.

after CLO Holdco withdrew its objection to the HarbourVest Settlement, Scott was replaced as the DAF's managing member by Mark Patrick ("Patrick"), a long-time Highland employee. ROA.578-79; ROA.11332-4 at 95:18-97:21. CLO Holdco's counsel who advised Scott to withdraw CLO Holdco's objection was replaced by Mazin Sbaiti ("Sbaiti") and Jonathan Bridges ("Bridges"), attorneys at Sbaiti & Company PLLC (the "Sbaiti Firm"). ROA.595; ROA.11343 at 106:8-16.

On April 12, 2021, just days after Patrick replaced Scott and the Sbaiti Firm was engaged as new counsel, the DAF Parties collaterally attacked the HarbourVest Order, suing Highland and related entities[6] in the United States District Court for the Northern District of Texas (the "District Court"), alleging that Highland withheld material information from the DAF Parties and engaged in self-dealing in connection with the HarbourVest Settlement (the "DAF Action"). *See* ROA.2282-308 (the "Original Complaint"). Although Seery was not named as a defendant in the Original Complaint, he was obviously the ultimate target. As the Bankruptcy Court observed:

> Note that in the Original Complaint, Mr. Seery is named as a 'potential party' and, while not nominally a party, he was mentioned approximately 50 times, by this court's count. Mr. Seery's conduct is plastered throughout the Complaint, accusing him of deceitful, improper conduct.

---

[6] The two other named defendants included Highland CLO Funding, Ltd. ("HCLOF"), and Highland HCF Advisors, Ltd. Appellants subsequently voluntarily dismissed HCLOF. Adv. Proc. No. 21-03067-sgj, Docket No. 80.

ROA.580. *See also* ROA.2282-308.

The DAF Action was filed in the District Court to evade the Bankruptcy Court's jurisdiction. After extensive motion practice, on September 21, 2021, the District Court entered an order enforcing the order of reference and transferring the DAF Action to the Bankruptcy Court. *See Charitable DAF Fund v. Highland Cap. Mgmt., L.P.*, No. 3:21-CV-00842-B (N.D. Tex. Sept. 20, 2021), Docket. No. 64.

## C.   The DAF Parties Pursue Claims Against Seery Without Seeking, Let Alone Obtaining, Bankruptcy Court Approval

A week after filing the Original Complaint, through their counsel (Sbaiti and Bridges), the DAF Parties moved for leave in the District Court to amend their Original Complaint to add Seery as a defendant (the "Seery Motion"); a copy of the proposed amended complaint (the "Proposed Complaint") was attached to the Seery Motion. ROA.2351-444.

*The filing of the Seery Motion evidenced the Appellants' intent to evade the Gatekeeper Provisions and the Bankruptcy Court because it was completely unnecessary: The DAF Parties had the unilateral right to amend the Original Complaint at that time*. S*ee* FED. R. CIV. P. 15(a)(1)(A) ("Rule 15"). But Appellants knew that the Orders prohibited the DAF Parties from unilaterally naming Seery as a defendant, so they schemed to file the Seery Motion in an attempt to obtain the

District Court's approval to do what they could not.[7] Tellingly, the DAF Parties filed the Seery Motion without notice to Highland or any other defendant—even after being explicitly warned that Highland would seek sanctions if they violated the Gatekeeper Provisions. ROA.2329-40.

On April 20, 2021, the District Court denied the unopposed Seery Motion without prejudice. ROA.2782.

## D.    The Contempt Proceedings

On April 23, 2021, after uncovering these machinations, Highland moved for an order requiring the DAF Parties, the persons who authorized the Seery Motion, and the Sbaiti Firm to show cause why they should not be held in civil contempt for violating the Gatekeeper Provisions (the "Contempt Motion"). ROA.1764-72. Highland's Contempt Motion alleged that Appellants knowingly violated the Gatekeeper Provisions by using the Seery Motion to pursue claims against Seery without obtaining Bankruptcy Court approval. ROA.1776-97.

On April 29, 2021, the Bankruptcy Court entered an order requiring (a) the DAF, (b) CLO Holdco, (c) the Sbaiti Firm, (d) those persons who authorized the

---

[7] While the DAF Parties informed the District Court that the Gatekeeper Provisions existed, they also argued that (a) those Provisions were unenforceable because the Bankruptcy Court lacked jurisdiction to enter them, and (b) even if valid, the Seery Motion complied with the Gatekeeper Provisions because "the Bankruptcy Court's powers are derivative from the District Court." ROA.582.

DAF Parties to file the Seery Motion, and (e) Dondero to appear before it to show cause why they should not be held in contempt for violating the Orders and found jointly and severally liable for Highland's expenses incurred in filing the Contempt Motion (the "Show-Cause Order"). ROA.2584-86.

On June 8, 2021, the Bankruptcy Court held an evidentiary hearing on the Contempt Motion (the "Contempt Hearing"), during which it considered, *inter alia*, (a) Appellants' legal challenges to the Orders' facial validity under 28 U.S.C. § 959(a) and the *Barton* Doctrine;[8] (b) documentary evidence, including the Original Complaint, the Seery Motion, and the Orders, and (c) the credibility of Dondero's and Patrick's testimony concerning their roles in preparing the Original Complaint, commencing the DAF Action, and filing the Seery Motion.

Patrick testified that he became the manager and authorized representative of the DAF Parties on March 24, 2021, (ROA.11334 at 97:3-21), and that he serves without compensation (ROA.11373 at 132:6-17; ROA.8499 at 96:2-18). Patrick also testified that at the time he accepted these positions, he had (a) no specific knowledge regarding the HarbourVest Settlement or the allegations that were later set forth in the Original Complaint; (b) "no reason to believe that Seery had done

---

[8] *See Barton v. Barbour*, 104 U.S. 126 (1881), discussed further *infra*. Notably, neither the Governance Order (including the First Gatekeeper Provision), entered in January 2020 with Dondero's consent, nor the Seery Order (including the Second Gatekeeper Provision), entered in July 2020, was ever appealed.

anything wrong with respect to the HarbourVest transaction" (ROA.11342-43 at 105:21-106:7); and (c) never spoken with Scott (his predecessor) about these matters, even though Scott caused CLO Holdco to withdraw its objection to the HarbourVest Settlement. ROA.11345-46 at 108:20-109:22; *see also* ROA.5571-72 at 101:10-102:20 (Scott never communicated with anyone about the DAF Parties filing a lawsuit relating to the HarbourVest Settlement).[9]

Patrick's position changed promptly after his appointment when Dondero brought "certain information" to Patrick about the HarbourVest Settlement and told him that "an investment opportunity was essentially usurped or taken away" from the DAF Parties.  After receiving this information, Patrick retained the Sbaiti Firm to conduct an "investigation." ROA.11342 at 105:1-5; ROA.11343 at 106:8-16.[10]

Toward that end, Patrick "wanted Mr. Dondero to work with the Sbaiti firm with respect to their investigation of the underlying facts." ROA.11341-42 at 104:23-105:5; *see also* ROA.11344 at 107:12-23 (Patrick "wanted [Dondero] to participate in the investigation that the Sbaiti firm was undertaking prior to the filing of this complaint"). But Dondero did not just "participate" in the investigation, he

---

[9] Patrick could only recall having "a general awareness that there was a HarbourVest something or other," but did not know "the specific aspects of it." ROA.11342-43 at 105:21-106:7.

[10] Patrick retained the Sbaiti Firm at the suggestion of D.C. Sauter, in-house counsel to NexPoint Advisors, L.P., a Dondero-controlled entity. Patrick never considered engaging any other law firm.  ROA.11343-44 at 106:17-107:11.

drove it: As Patrick explained, "Dondero communicated directly with the Sbaiti Firm in relation to the investigation that was being undertaken" to the exclusion of Patrick. ROA.11344 at 107:12-23.[11]

Patrick also confirmed that although he deferred to the Sbaiti Firm on matters relating to the DAF Action, (ROA.11347 at 110:16-19), he authorized the filing of the Original Complaint and Seery Motion while knowing of the Seery Order. (ROA.11340 at 103:10-14; ROA.11341 at 104:3-13; ROA.11348-49 at 111:5-112:9).

For his part, Dondero precipitated and guided the Sbaiti Firm's "investigation" because he disapproved of Scott's decision (among other decisions) to withdraw CLO Holdco's objection to the HarbourVest Settlement. ROA.11402-09 at 161:24-168:1; ROA.11410-11 at 169:1-170:9. In connection therewith, Dondero "saw versions of th[e] complaint before it was filed," "participated in discussions with Mr. Sbaiti concerning the substance of [the Original Complaint] before it was filed" (ROA.11421 at 180:12-22), and spoke with the Sbaiti Firm a

---

[11] In his opening statement, Sbaiti acknowledged that Dondero was the source of "some of the information that came into" the Original Complaint but contended that their communications were privileged because Dondero was purportedly "an agent of our client [*i.e.*, the DAF Parties]." ROA.11278 at 41:2-15. After hearing the evidence, the Bankruptcy Court found that there was no factual basis to support the assertion of the privilege. ROA.11344 at 107:18-23; ROA.11378 at 137:2-12; ROA.11421-29 at 180:23-188:7.

DOCS_NY:47281.23 36027/003

"[h]alf dozen times, maybe." (*id.* at 180:12-22; ROA.11448 at 207:10-12). Finally, Dondero reluctantly admitted that he "[p]robably" was "aware that that [Seery Motion] was going to be filed prior to the time that it actually was filed." ROA.11451 at 210:1-6.[12]

## E.    The Contempt Order

On August 3, 2021, the Bankruptcy Court issued its order finding the DAF; its general manager, Patrick; CLO Holdco; the Sbaiti Firm; attorneys Sbaiti and Bridges; and Dondero in contempt for violating the Gatekeeper Provisions and awarding sanctions (the "Contempt Order"). ROA.606.

As a threshold matter, the Bankruptcy Court rejected Appellants' challenge to the Orders, emphasizing that "[*n*]*o one appealed the two bankruptcy court orders with the gatekeeper provisions.*" ROA.584. Thus, the Orders were "final and nonappealable orders that have *res judicata* effect" to parties who had the opportunity to object to them, including the DAF Parties. ROA.592-93.

The Bankruptcy Court also rejected challenges to the lawfulness of the Gatekeeper Provisions on the merits. Specifically, after thoroughly reviewing the purpose and intent of the Gatekeeper Provisions, the Bankruptcy Court held that the Gatekeeper Provisions appropriately protected Seery and explained that bankruptcy

---

[12] Dondero engaged in these activities knowing the Orders existed. ROA.11419-21 at 178:16-180:11.

courts routinely employ gatekeeper provisions, pursuant to *Barton*, 104 U.S. 126, and apply them to "various court-appointed and court-approved fiduciaries and their agents in bankruptcy cases, including debtors in possession, officers and directors of a debtor, and ... general partner[s] of a debtor." ROA.590-92. *see also* ROA.593 (the Bankruptcy Court also rejected the argument that the Gatekeeper Provisions violated 28 U.S.C. § 959(a)).

Next, the Bankruptcy Court found that Appellants violated the Gatekeeper Provisions because the filing of the Seery Motion constituted the pursuit of a claim against Seery without prior Bankruptcy Court authorization. ROA.603. The Bankruptcy Court rejected the DAF Parties' contention that they did not "commence or pursue" a claim against Seery because he had not yet been added as a defendant, characterizing such a defense as "linguistic gymnastics that does not fly." *Id.*[13]

The Bankruptcy Court also found Patrick in contempt for violating the Orders because he authorized the Seery Motion. ROA.595. The Bankruptcy Court found that Dondero violated the Orders because he "sparked this fire" by encouraging Patrick to file the DAF Action and by communicating directly with the Sbaiti Firm about the suit. ROA.596-97. Finally, the Bankruptcy Court found that Sbaiti and

---

[13] It strains credulity to suggest that, if the District Court had granted the Seery Motion, the DAF Parties would have then returned to the Bankruptcy Court to seek approval to add Seery as a defendant under the Gatekeeper Provisions. Indeed, the Seery Motion would have been unnecessary if that were the plan.

Bridges, the attorneys at the Sbaiti Firm, were also responsible for filing the Seery Motion. ROA.602.

The Bankruptcy Court awarded sanctions in the amount of $239,655 based on detailed time invoices submitted by Highland's primary counsel and conservative estimates of Highland's other expenses. ROA.604-05. To account for Highland's future expenses as a result of Appellants' misconduct, the Bankruptcy Court also imposed a $100,000 sanction for each unsuccessful appeal that Appellants pursued. ROA.605.

## F.    The District Court Affirms All Aspects of the Contempt Order Relevant to This Appeal

Appellants appealed the Contempt Order to the District Court. ROA.19-57. On September 28, 2022, the District Court entered an exhaustive *Memorandum and Order* affirming all aspects of the Contempt Order relevant to this appeal, including the $239,655 sanction as a proper exercise of the Bankruptcy Court's discretion.[14] ROA.12255-86.

## G.    Appellants Appeal the Contempt Order in this Court

In this appeal, Appellants argue that (a) they did not violate the Seery Order because filing of the Seery Motion supposedly did not constitute "pursuit of a

---

[14] With the parties' agreement, the District Court vacated the Contempt Order's prospective imposition of a $100,000 sanction for each unsuccessful appeal. *See* ROA.12267.

claim;" (b) the Seery Order did not give them notice of the contemptuous conduct; and (c) the Seery Order is facially invalid because it should not apply to the Debtor's corporate officers.

Dondero argues that the Contempt Order should be reversed because (i) he never received notice before being found in contempt; and (ii) he did not violate the Gatekeeper Provisions.

All Appellants challenge the $239,655 sanction award, arguing it is excessive and impermissible, and that the damages incurred were not caused by their contemptuous conduct.

## ARGUMENT

### A.   Standard of Review

"Like the district court, this court reviews a bankruptcy court's findings of fact for clear error, and its legal conclusions de novo." *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 261 (5th Cir. 2009).  The "clearly erroneous" standard warrants reversal only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Butler Aviation Int'l v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1128 (5th Cir. 1993). "The clearly erroneous rule deserves strict application in this case where the district court has affirmed the bankruptcy court's findings." *In re Fabricators, Inc.*, 926 F.2d

1458, 1464 (5th Cir. 1991); *see also Placid Ref. Co. v. Terrebonne Fuel & Lube,*

*Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997).

A bankruptcy court's assessment of monetary sanctions for contempt is reviewed for abuse of discretion. *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000) (reviewing contempt finding and damage award for abuse of discretion in non-bankruptcy appeal). For this "deferential" review, abuse of discretion is only found if the trial court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 803 (5th Cir. 2003) (internal quotation marks omitted). "Generally, an abuse of discretion only occurs where *no reasonable person* could take the view adopted by the trial court." *Id*. (internal quotations omitted).

**B.      The Bankruptcy Court's Finding That the DAF Parties Violated the Seery Order Is Not Clearly Erroneous**

Appellants argue that the Bankruptcy Court erred in finding that they violated the Seery Order, contending that they did not "commence or pursue" a claim against Seery in violation of the Gatekeeper Provisions because the Seery Motion "sought only permission to take future action." *See* DAF Br. at 22-36[15]; Dondero Br. at 25-

---

[15] "DAF Br." refers to *Brief for Appellants The Charitable DAF Fund L.P.; CLO Holdco, Ltd; Mark Patrick; Sbaiti & Company PLLC; Mazin A. Sbaiti; Jonathan Bridges* (Document No. 66).

28.[16]  Appellants fail to meet their burden of proving that the Bankruptcy Court committed "clear error."

To establish civil contempt, a movant must show by clear and convincing evidence "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987); *see also FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). The "court need not anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated." *See Am. Airlines*, 228 F.3d at 578. "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *Id.* at 581. Based on the overwhelming evidence, the Bankruptcy Court did not clearly err in finding that Appellants violated the Gatekeeper Provisions.

There can be no credible dispute that (a) the Orders were in effect; (b) the Orders prohibited certain conduct, namely, "commenc[ing] or pursu[ing] a claim or cause of action of any kind" against Seery relating to his role as an Independent Director or as an officer of the Debtor without the Bankruptcy Court's prior authorization; and (c) Appellants—with actual knowledge of the Orders—pursued,

---

[16] "Dondero Br." refers to *Brief of Appellant James Dondero* (Document No. 64).

and effectively commenced, an action against Seery without obtaining Bankruptcy Court approval.

Nevertheless, Appellants contend that filing the Seery Motion did not constitute "pursuit" of a claim because it was only a "preliminary step," and that one can only "pursue" litigation after commencing litigation. *See* DAF Br. at 24-36; Dondero Br. at 25-28. This argument is pure sophistry and ignores the purpose and intent of the Gatekeeper Provisions. *See supra* at 4-6. Appellants' interpretation of the Gatekeeper Provisions, as prohibiting them from "pursuing" only after "commencing" an action also violates basic rules of construction by necessarily rendering the word "pursue" superfluous. *See James v. Cleveland Sch. Dist.*, No. 4:19-CV-66-DMB-RP, 2020 U.S. Dist. LEXIS 135248, at *11 (N.D. Miss. July 30, 2020) ("[A]pplying the canon against surplusage to the Court's order dictates an interpretation that none of the phrases are inoperative or superfluous, void or insignificant") (internal quotations omitted). Appellants were bound by the unambiguous terms of the Gatekeeper Provisions, and any attempt to alter the plain language therein should be rejected. *See Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000) ("[R]egardless of what [a] district court had in mind at the time it signed [an] order, the order must be interpreted as its plain language dictates"); *Negron-Almeda v. Santiago*, 528 F.3d 15, 23 (1st Cir. 2008) ("[W]hen a court's order is clear and unambiguous, neither a party nor a reviewing court can

disregard its plain language simply as a matter of guesswork or in an effort to suit interpretive convenience") (internal quotations omitted).

No credible dispute exists that, as the Bankruptcy Court found, and the District Court affirmed, by filing the Seery Motion, Appellants "tried to—and, in fact, took every action necessary on their part to—bring a claim against Seery" in violation of the Gatekeeper Orders. ROA.12261.[17] Indeed, the indisputable evidence establishes that:

- The DAF Parties filed the Original Complaint in the District Court and identified Seery as the primary "bad actor";[18]

- The DAF Parties then filed the Seery Motion to circumvent the requirement to obtain the Bankruptcy Court's approval to add Seery as a defendant;

- The Seery Motion was unnecessary because the DAF Parties had the right under Rule 15 to amend the Original Complaint to add Seery as a defendant;

- The DAF Parties never served the Original Complaint or the Seery Motion nor did they notify any of the defendants (or Seery) of the filing of the Seery Motion; and

---

[17] Contrary to Appellants' assertions, the plain and ordinary meaning of "pursue" is to "to try to achieve something" (Macmillan Dictionary), or "to do something or try to achieve something over a period of time" (Oxford Learner's Dictionary); *see also* Merriam-Webster.com Dictionary (defining "pursue" as "try to get or do (something) over a period of time"); American Heritage Dictionary (defining pursue as "[t]o strive to gain or accomplish"); Cambridge Dictionary (defining "pursue" as to "try to do ... or achieve [something], usually over a long period of time").

[18] Again, as the Bankruptcy Court observed, in the Original Complaint, Seery was named a 'potential party,' was mentioned approximately 50 times, and his "conduct [was] plastered throughout the Complaint, accusing him of deceitful, improper conduct." ROA.580.

24

- Without notice to the Debtor or Seery to provide opposition, the DAF Parties attempted to persuade the District Court that the Gatekeeper Provisions were unlawful or that they were in compliance with the Orders in any event.

The DAF Parties were plainly attempting to gain the District Court's imprimatur for adding Seery as a defendant without anyone knowing. Under these circumstances, the Bankruptcy Court's finding that Appellants "pursue[d]" claims against Seery in violation of the Gatekeeper Provisions was not clear error.

Appellants' contention that holding them liable under these circumstances creates a slippery slope where preliminary tasks such as legal research, "drafting a complaint," or "conferring with a client" may be confused with the "pursuit" of claims is a red herring. DAF Br. at 27. The issue here is not whether Appellants violated the Gatekeeper Provisions by drafting, researching, or conferring with their attorneys regarding potential claims against Seery. It is whether Appellants violated the Gatekeeper Provisions by filing the Seery Motion in the District Court to assert claims against Seery without Bankruptcy Court approval.[19] As the District Court explained, no further action from Appellants was required to sue Seery. ROA.12261. Had the District Court granted the Seery Motion, the Proposed Complaint would have become the operative pleading. N.D. TEX. CIV. R. 15.1(b)

---

[19] As the District Court noted, requesting leave to amend differs from legal research or client communications because "a party who moves to amend usually does intend to amend." ROA.12260-61 (citing *Blanks v. Lockheed Martin Corp.*, No. 4:05CV137LN, 2006 WL 1139941, at *2 (S.D. Miss. Apr. 25, 2006)).

("If leave [to amend] is granted ... the clerk will file a copy of the amended pleading").

Appellants' conduct was not accidental. Rather, with knowledge of the Orders, Appellants surreptitiously and intentionally sought to add Seery as a defendant in the District Court—not the Bankruptcy Court—without notice to Highland. As the Bankruptcy Court correctly found, Appellants knew it would be a "hard sell" to convince the Bankruptcy Court that their claims against Seery should be allowed to go forward, so they "tried their luck with the District Court." ROA.602-03. Appellants' "rationale is nothing more than thinly veiled forum shopping." *Id.* Accordingly, the Bankruptcy Court's finding that Appellants violated the Orders should be affirmed.

## C.  The Orders Provided Sufficient Notice of the Prohibited Conduct

Appellants argue, alternatively, that even if they violated one "possible interpretation" of the Seery Order, the Order was too "ambiguous" to provide them with sufficient notice of the prohibited conduct. DAF Br. at 36. Appellants' claim relies on the same unsupported argument that they "reasonably interpreted" the Gatekeeper Provisions as prohibiting only the prosecution of a "claim" that had already been "commenced." DAF Br. at 37-38.

For the same reasons discussed above, the Gatekeeper Provisions were sufficiently definite and specific to form the basis for contempt. Rule 65(d) requires

that "[e]very order granting an injunction … (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." FED. R. CIV. P. 65(d)(1).  Elaborate detail is unnecessary; an injunction need only "be framed so that those enjoined will know what conduct the court has prohibited." *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981); *see also Schermerhorn v. Centurytel, Inc. (In re Skyport Glob. Commc'ns, Inc.)*, No. 08-36737-H4-11, 2013 WL 4046397, at *44 (Bankr. S.D. Tex. Aug. 7, 2013) ("The language of an injunction should be as specific as is necessary to inform those who are enjoined exactly what conduct is prohibited"), *aff'd*, 528 B.R. 297 (S.D. Tex. 2015), *aff'd in part*, 642 F. App'x 301 (5th Cir. 2016), and *aff'd*, 661 F. App'x 835 (5th Cir. 2016).

Thus, "the command for specificity is not absolute," and "[s]ome compromise must be effected in a decree between the need for articulation, and the need for sufficient comprehensiveness to prevent easy evasion." *Skyport Glob.*, 2013 WL 4046397 at *44 (internal quotation marks omitted); *see also Am. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, No. 4:19-CV-414-A, 2019 WL 3774501, at *9 (N.D. Tex. Aug. 12, 2019) ("Injunctions cannot be so narrow as to allow for easy evasion").  A court may even use general terms to define an injunction. *Skyport Glob.*, 2013 WL 4046397 at *44.  In evaluating the specificity of an order, "the Court

27

should therefore consider the order as a whole, including what was said on the record as well as its context within the overall litigation." *Id.* (internal quotation marks omitted).

Here, the Gatekeeper Provisions were sufficiently specific to put Appellants on notice of the prohibited conduct, namely, "commenc[ing] or pursu[ing]" a claim against Seery without the Bankruptcy Court's prior approval. Appellants contend that the Gatekeeper Provisions contain "obvious" ambiguities because they apply to claims of "willful misconduct or gross negligence," while "claims involving lesser *mens rea* are functionally banned outright as there is no provision" for such claims. *See* DAF Br. at 38-39. Appellants' contention is mere hair splitting or, as the Bankruptcy Court called it, "linguistic gymnastics."

It is also false. The Proposed Complaint is replete with allegations of Seery's "willful misconduct [and] gross negligence." *See, e.g.*, ROA.5120 ¶ 68 (alleging that Seery is liable for "aiding and abetting HCM's and HCFA's breaches of fiduciary duty by controlling them and either recklessly or intentionally causing them to breach their duties"); ROA.5121 ¶¶ 70-72 (alleging that the "simple thesis of this claim" is that Seery (and others) breached fiduciary duties by, *inter alia*, "insider trading" and otherwise engaging in securities fraud); ROA.5128-29 (alleging that Seery's "negligence or gross negligence" caused Plaintiff harm); ROA. 5129-33 ¶¶ 121-44 (alleging RICO claim against Mr. Seery). Thus, Appellants' assertion that

the proposed claims against Seery were somehow not covered by the Gatekeeper Provisions because such claims did not concern allegations of "willful misconduct or gross negligence" is contradicted by the baseless allegations in the Proposed Complaint.

Moreover, as the District Court explained, the Bankruptcy Court "did not need to delineate every activity that could constitute pursuit of a claim against Seery. And it certainly did not need to explain that filing a proposed complaint—which this Court could automatically docket—constituted pursuit of a claim." ROA.12262; *see also Am. Airlines*, 228 F.3d at 578 (a court need not "anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated").

Appellants' suggestion that they thought they could file the Seery Motion (including the Proposed Complaint) in the District Court despite the clear terms of the Gatekeeper Provisions does not pass the straight-face test.  Again, the Orders were intended to protect the Independent Directors and Seery from potentially vexatious, harassing, and distracting litigation by having the Bankruptcy Court— steeped with the knowledge of Highland's bankruptcy case—serve as a "gatekeeper." Notably, the Bankruptcy Court painstakingly reiterated the rationale for the Gatekeeper Provisions (as well as the statutory and jurisdictional bases for

the adoption of those Provisions) in its Confirmation Order[20] entered on February

22, 2021, just seven weeks before the Original Complaint was filed. ROA.1656-61.

Appellants understood the meaning of the Gatekeeper Provisions, but filed the

Seery Motion precisely to avoid the Bankruptcy Court. Based on the record as a

whole, Appellants had notice that attempting to sue Seery in District Court without

obtaining the Bankruptcy Court's authorization violated the Gatekeeper Provisions.

*See Bradley*, 588 F.3d at 267 (argument that bankruptcy court's rulings were too

vague and indefinite to support contempt finding "do[es] not gainsay the simple fact

that when [appellant] committed the acts resulting in contempt, he knew what he

was prohibited from doing … and did it anyway," noting that appellant "fail[ed] to

cite specific language suggesting he received contradictory instructions or that the

court meant to allow the conduct it later found to be contemptuous" and  rejecting

"the argument that the bankruptcy court failed to provide [him] with clear

instructions covering the conduct that led to the contempt finding"); *McVay v.*

*Halliburton Energy Servs., Inc.*, 608 F. App'x 222, 227 (5th Cir. 2015) (rejecting

appellant's argument that provision enjoining him from certain conduct was too

---

[20] "Confirmation Order" refers to the *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Bankr. Docket No. 1943], *aff'd, NexPoint*, 48 F.4th at 438 n.15, *petitions for cert. filed sub nom. Highland Cap. Mgmt., L.P. v. NexPoint Advisors, L.P.,* No. 22-631 (U.S. Jan. 5, 2023) *and NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*, No. 22-669 (Jan. 16, 2023))

"indefinite" in light of the record, noting that "[r]ead as a whole and in context," the injunction "provided [appellant] fair notice of what he may, and must not, do, and [was] clearly capable of being implemented and enforced"). Appellants' attempt to escape liability by trying to manufacture an ambiguity where none exists is not credible and should be rejected.[21]

Finally, assuming, *arguendo*, that Appellants were somehow confused about clearly prohibited conduct, they could have—and should have—asked the Bankruptcy Court to clarify its order. As this Court has explained, the proper way to resolve "doubts about the meaning of any part of [an] injunction" is to seek the issuing court's guidance. *Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 517 (5th Cir. 1969) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949)); *see also SkyPort Glob.*, 528 B.R. at 351 (rejecting as meritless an argument on appeal that an injunction did not comply with Rule 65(d) "because the way to challenge an

---

[21] Even if, as Appellants insist, the Gatekeeper Provisions were somehow subject to "interpretation," (Br. at 38), the "mere fact that . . . interpretation is necessary does not render the injunction so vague and ambiguous that a party cannot know what is expected of him." *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 771 (5th Cir. 1999); *see also United States v. Brown*, 561 F.3d 420, 438 (5th Cir. 2009) (same); *Skyport Glob.*, 2013 WL 4046397 at *46 (explaining that a "Preliminary Injunction Order is not *per se* invalid simply because two different interpretations are possible…. Rather, the Court's overriding consideration is simply whether the enjoined parties understand what conduct, or 'contact,' is prohibited" and finding that the order "contained sufficient detail to put the [enjoined party] on notice of the enjoined conduct" under Rule 65(d)).

31

injunction is by direct appeal or by a motion to modify," and the parties did neither); *In re Timmons*, 607 F.2d 120, 124-25 (5th Cir. 1979) (recognizing that the remedy for an incorrect order is an appeal, and absent a stay even incorrect orders must be complied with until decreed invalid). Appellants' failure to seek clarity from the Bankruptcy Court (assuming they actually needed it) does not excuse their violation of the Gatekeeper Provisions.

In sum, the Gatekeeper Provisions provided Appellants with sufficient notice of the prohibited conduct, and for this additional reason, the Contempt Order should be affirmed.

**D.    The DAF Parties Cannot Avoid a Contempt Finding with a Collateral Attack on the Final Orders They Violated**

Appellants challenge the validity of the Gatekeeper Provisions, asserting they inappropriately extend the *Barton* Doctrine by insulating the Debtor's court-appointed corporate officers, including Seery, and run afoul of 28 USC § 959(a). DAF Br. at 50-59. Appellants' collateral attack on the Gatekeeper Provisions is both procedurally improper and without merit.

**1.    Appellants' Collateral Attack on the Gatekeeper Provisions Is Improper**

Appellants' collateral attack on the Gatekeeper Provisions is improper and should be rejected. "The collateral attack on an injunction during contempt proceedings is prohibited if earlier review of the injunction was available." *W. Water*

*Mgmt., Inc. v. Brown*, 40 F.3d 105, 108 (5th Cir. 1994); *see also Reich v. Crockett*, No. 95-50159, 1995 WL 581875, at *2 (5th Cir. 1995) (per curiam) (same). That prohibition applies even if a party argues that a bankruptcy court exceeded its jurisdiction in issuing the order. *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1052-53 (5th Cir. 1987) (creditor precluded from challenging legality of release provision in reorganization plan where appellant did not object to or appeal the underlying order). *Shoaf* was recently affirmed by this Court *in connection with the very Orders at issue here*:

> Highland Capital, like the bankruptcy court, claims the *res judicata* effect of the January and July 2020 orders appointing the independent directors and appointing Seery as CEO binds the court to include the protection provisions here. ***We lack jurisdiction to consider collateral attacks on final bankruptcy orders even when it concerns whether the court properly exercised jurisdiction or authority at the time. … To the extent Appellants seek to roll back the protections in the bankruptcy court's January 2020 and July 2020 orders … such a collateral attack is precluded.***

*NexPoint*, 48 F.4th at 438 n.15 (emphasis added).

Here, Appellants had the opportunity to object to, and appeal from, the Orders but failed to do so. Indeed, Dondero affirmatively *agreed* to the terms of the Governance Order (ROA.1614), including the First Gatekeeper Provision, and Appellants indisputably had notice of, and the chance to object to, the Seery Order. (ROA.7104, 7148).   As this Court has already found, Appellants are therefore prohibited from collaterally attacking the Orders.

Appellants' assertion that the Seery Order "was not a 'final' appealable order because the bankruptcy court 'retain[ed] jurisdiction,'" (DAF Br. at 47), is also without merit. As noted above, this Court already found that the Orders, which include the Gatekeeper Provisions, are "final." *NexPoint*, 48 F.4th at 438 n.15. Appellants' argument also fails because it improperly implies that any bankruptcy court order, like the Contempt Order, that retains jurisdiction is not "final." This is not the law.

Appellants ignore this Court's prior rulings and instead rely on *Ruiz v. United States*, 243 F.3d 941, 948-49 (5th Cir. 2001). That reliance is misplaced. *Ruiz* concerned an injunction requiring parties to remediate certain ongoing issues under the court's supervision. The Fifth Circuit found that injunction was not final because the court "retain[ed] the power to terminate or modify prospective injunctive relief in [the] particular case …." *Ruiz*, 243 F.3d at 948. *Ruiz* is not this case. In the Orders, the Bankruptcy Court—as is customary—simply retained jurisdiction "over any and all matters arising from or related to the interpretation and/or implementation of this Order." ROA.1132-36; ROA.1170-81. Unlike in *Ruiz*, the Orders were not subject to ongoing review and amendment by the Bankruptcy Court and are final. Appellants offer no authority other than *Ruiz* to support their conclusory argument that the Seery Order was not final.

Appellants' assertion that they challenged the Seery Order "at the first reasonable opportunity prior to any willful violation of that Order and thus should be deemed timely" (DAF Br. at 48-49), is simply not credible. As discussed above, Appellants could have (a) timely objected to the Seery Motion, (b) timely appealed the Seery Order, or (c) challenged the Seery Order *after* being told that Highland would seek sanctions if that Order was evaded but *before* filing the Seery Motion. ROA.2329-30. But Appellants chose to do none of those things. Instead, *the DAF Parties challenged the Seery Order almost a year <u>after</u> it was entered and only <u>after</u> being charged with its violation*.

Appellants' belated, collateral attack on the Seery Order is improper and should be rejected.

## 2.    <u>The Gatekeeper Provisions Properly Apply to Seery</u>

Appellants' collateral attack on the Seery Order is also wrong on the merits. The Gatekeeper Provisions properly apply to Seery and do not fun afoul of the *Barton* Doctrine or 28 USC § 959(a).

The *Barton* Doctrine is a common-law principle barring suits against court-appointed trustees and other fiduciaries absent leave of the "gatekeeper" court. *Baron v. Sherman (In re Ondova Ltd. Co.)*, No. 09-34784-SGJ-7, 2017 WL 477776, at *9 (Bankr N.D. Tex. Feb. 1, 2017), *report and recommendation adopted,* No. 3:16-CV-00947-M, 2018 WL 580151 (N.D. Tex. Jan. 26, 2018), *aff'd sub*

35

*nom. Matter of Ondova Ltd. Co.*, 914 F3d 990 (5th Cir 2019). The *Barton Doctrine*
extends to a debtor's "trustee or other bankruptcy-court-appointed officer, for acts
done in the actor's official capacity." *See Villegas v. Schmidt*, 788 F3d 156, 159 (5th
Cir. 2015); *see also NexPoint*, 48 F.4th at 349.

The purpose of the *Barton* Doctrine is to protect court-appointed officers from
"unjustified personal liability for acts taken within the scope of [their] official
duties" and to enable the bankruptcy court to maintain control over the estate by
maintaining a panel of trustees without the threat of baseless litigation. *Lebovits v.
Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996); *see also
McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) (same). This Court has long
recognized that the bankruptcy court can serve as a gatekeeper under *Barton* even if
it would ultimately lack authority to adjudicate the underlying claims under *Stern*.
*See Villegas,* 788 F.3d at 158-59.

This Court recently ratified its interpretation of *Barton* when it affirmed a
separate gatekeeper provision included in Highland's Plan.[22] *NexPoint*, 48 F.4th at
435 (finding that the "gatekeeping provision [is] sound"). In doing so, this Court
rejected the very argument Appellants advance here—namely, that "the gatekeeper

---

[22] "Plan" refers to *Debtor's Fifth Amended Plan of Reorganization of Highland
Capital Management, L.P.* [Bankr. Docket No. 1808].

provision impermissibly extends to unrelated claims over which the bankruptcy court lacks subject-matter jurisdiction." *Id.* at 439. The Court reasoned:

> Courts have long recognized bankruptcy courts can perform a gatekeeping function. Under the '*Barton* [D]octrine,' the bankruptcy court may require a party to "obtain leave of the bankruptcy court before initiating an action in district court when the action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity." ... In *Villegas*, we held "that a party must continue to file with the relevant bankruptcy court for permission to proceed with a claim against the trustee." … Relevant here, we left to the bankruptcy court, faced with pre-approval of a claim, to determine whether it had subject matter jurisdiction over that claim in the first instance ... In other words, we need not evaluate whether the bankruptcy court would have jurisdiction under every conceivable claim falling under the widest interpretation of the gatekeeper provision. We leave that to the bankruptcy court in the first instance.

*NexPoint*, 48 F.4th at 439.

Thus, the *Barton* Doctrine includes bankruptcy trustees and other court-appointed fiduciaries and allows a bankruptcy court to determine, in the first instance, whether a suit against such person may proceed. Here, because Seery and the Independent Directors were appointed by the Bankruptcy Court to oversee and manage the bankruptcy case in lieu of a chapter 11 trustee, it seemed "rather

obvious" to the Bankruptcy Court (and this Court) that they should have similar protections from suit—particularly in light of Highland's prior culture of litigation.[23]

Appellants vaguely contend that applying the *Barton* Doctrine to Seery was improper because the District Court "had authority over the bankruptcy court in this case to begin with." DAF Br. at 55 (relying on *Carroll v. Abide*, 788 F.3d 502, 505 (5th Cir. 2015)). Appellants' reliance on *Carroll* is misplaced. First, as discussed *supra*, this Court relied on *Carroll* in affirming the Bankruptcy Court's gatekeeper function under *Barton*. *See NexPoint*, 48 F.4th at 439.

Second, in *Carroll*, this Court held that debtors were not required to request leave of the bankruptcy court to bring suit against the bankruptcy trustee when the underlying action was taken pursuant to a district court order. *See Carroll*, 788 F.3d at 507. The Court in *Carroll* clarified that its ruling did not conflict with *Villegas*: "We hold only that when a bankruptcy trustee acts pursuant to an order by the district court, and the trustee's actions pursuant to that order are the basis of the claim, the district court has jurisdiction to entertain a suit with respect to that conduct." *Id.*

---

[23] In *NexPoint*, in the context of the Plan's exculpation provision, this Court found that the Independent Directors were acting as a "bankruptcy trustee" and entitled to the protections otherwise afforded to trustees. *NexPoint*, 48 F.4th at 437 ("As the bankruptcy court's governance order clarified, nontraditional as it may be, the Independent Directors were appointed to act together as the bankruptcy trustee for Highland Capital. Like a debtor-in-possession, the Independent Directors are entitled to all the rights and powers of a trustee."). As discussed above, this Court affirmed the Plan's gatekeeper in all respects, including the protections it afforded to Seery as Highland's CEO/CRO and as an Independent Director.

*Carroll* is inapposite. Appellants did not attempt to sue Seery in a district court for actions taken pursuant to a district court order.[24] *Carroll* also does not support Appellants' sweeping contention that the *Barton* Doctrine is inapplicable here simply because the District Court had supervisory authority over the Bankruptcy Court "to start with." Indeed, Appellants' contention should be seen for what it is: an attempt to effectively nullify *Barton* and the protections that have been afforded to estate fiduciaries for more than 100 years.

Appellants' assertion that this Court in *NexPoint* found Seery and other non-debtor parties were "not subject to the injunction or its gatekeeper provisions" in the Plan is plainly wrong. Again, as discussed above, this Court in *NexPoint* affirmed the Plan's gatekeeper provision and authorized the Bankruptcy Court to act as a gatekeeper to protect Seery (among others) from Appellants' harassing and vexatious litigation. Appellants stubbornly conflate this Court's rulings on two distinct provisions under the Plan—the exculpation provision (which was deemed

---

[24] In *Chua v. Ekonomou*, 1 F.4th 948 (11th Cir. 2021), the Eleventh Circuit held that the *Barton* Doctrine did not apply "after the end of a receivership," and disagreed with its "sister circuits" that the doctrine applied after the end of a bankruptcy case to further protect court-appointed trustees from lawsuits. *Chua*, 1 F.4th at 954-55 (rejecting *Satterfield v. Malloy*, 700 F.3d 1231, 1236 (10th Cir. 2012), *Muratore v. Darr*, 375 F.3d 140, 147 (1st Cir. 2004), and *Linton*, 136 F.3d at 545). To the extent *Chua* is inconsistent with Fifth Circuit precedent, it is incorrect and not the law of this Circuit (and many others).

unlawful to a limited extent not relevant here) and the gatekeeper provision (which

was affirmed).[25]

None of the limitations to the *Barton* Doctrine under 28 U.S.C. § 959(a) apply

here. *See* DAF Br. at 57-58.  28 U.S.C. § 959(a) states:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. ***Such actions shall be subject to the general equity power of such court*** so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury. (Emphasis added.)

As the Bankruptcy Court explained, this statute has long been recognized as a limited

exception to the *Barton* Doctrine so that trustees and debtors-in-possession can be

sued for post-petition torts or other causes of action that happen to occur in the

***ordinary course of operating a business*** (as opposed to actions of the trustee while

engaged in the general administration of the case)—the classic example being a "slip

and fall" personal injury suit that might occur on the premises of a business that a

trustee or debtor in possession is operating. *See Muratore v. Darr*, 375 F.3d 140, 144

(1st Cir. 2004) (section 959(a) "is intended to 'permit actions redressing torts

---

[25] Following this Court's directive, Highland filed a motion in the Bankruptcy Court to conform the Plan to the *NexPoint* decision by limiting the exculpated parties. Certain Dondero-affiliated entities objected arguing that the parties protected by the Plan's gatekeeper provision, like Seery, should also be limited. The Bankruptcy Court rejected Dondero's arguments "holding that the only thing that needs to be done in response to the Final Fifth Circuit Opinion and mandate is to" limit the exculpated parties. Bankr. Docket No. 3671 at 13.

committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store'") (quoting *Carter v. Rodgers*, 220 F.3d 1249, 1254 (11th Cir. 2000)); *see also Lehal Realty Assoc.*, 101 F.3d at 276 (same).

Here, as this Court found in *NexPoint*, section 959 does not apply as a statutory exception to the *Barton* Doctrine. The allegations against Seery in the Proposed Complaint concern conduct undertaken in his official capacity as the Debtor's CEO that was incident to the administration of the estate and the preservation and liquidation of the Debtor's assets. *See NexPoint*, 48 F.4th at 439 (addressing Section 959 and finding the Bankruptcy Court could appropriately determine its own jurisdiction); *see also Lehal Realty Assoc.*, 101 F.3d at 276 ("We agree … that § 959 does not apply where, as here, a trustee acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate"); *Clanton v N. Pac. Grp., Inc.*, No. 2:10-CV-57KS-MTP, 2010 WL 2944562, at *5 (S.D. Miss. July 22, 2010) (finding that

§ 959 does not apply where following appointment, the receiver "was administering the [] estate, not 'carrying on business'").[26]

Accordingly, Appellants' collateral attack on the validity of the Gatekeeper Provisions is barred by *res judicata* and without merit.

## E.     Dondero Had Adequate Notice of Contempt

Dondero argues that he "received no notice" that he could be held in contempt because he was not among the "Violators" named in the Show-Cause Order, in violation of his "due process rights." Dondero Br. at 18-20. This argument is meritless and is contradicted by indisputable evidence, including his own conduct.

The Bankruptcy Court's Show-Cause Order setting the Contempt Hearing directed "James Dondero" and others to "appear **in-person** before this Court and show cause why an order should not be granted" holding the identified parties in contempt and imposing other sanctions. ROA.2585 (emphasis in original). Given that he was personally identified in the Show-Cause Order, Dondero's protest that he lacked notice is indefensible.[27] *See M.D. v. Abbot*, 509 F. Supp. 3d 683, 704-05

---

[26] The last sentence of section 959 also expressly grants the appointing court the equitable power to control litigation "as the same may be necessary to the ends of justice." As the Bankruptcy Court correctly stated, "[t]his is precisely what a gatekeeper provision is all about." ROA.593.

[27] As the District Court found, the only "reasonable" interpretation of the Show-Cause Order is that "violators" referred to the identified individuals and entities summoned to the Bankruptcy Court to defend their conduct. ROA.12277-78.

(S.D. Tex. 2020) (a show-cause order and a notice of hearing identifying each litigant who might be held in contempt typically provides sufficient notice).

Dondero's own conduct further proves that he knew he was being called to account. For example, Dondero filed an objection to the Contempt Motion and Show-Cause Order. ROA.2618-21.[28] In addition, Dondero's counsel participated in the Contempt Hearing and—while again disputing Dondero's role—specifically acknowledged that Dondero had notice of the proceedings:

> [Dondero] was named as an individual alleged violator within the order . . . we're here because [Dondero] was named in the alleged violator motion within the order as an alleged violator.

ROA.11517-18 at 276:16-17; 277:4-6.

As the District Court concluded, "Dondero's feigned surprise . . . is an unpersuasive attempt to rewrite history." ROA.12278. *See Alberti v. Klevenhagen*, 46 F.3d 1347, 1360 (5th Cir. 1995) (finding sufficient notice and opportunity to be heard for civil contempt where contemnor submitted pleadings and participated in oral argument).

For these same reasons, the cases relied upon by Dondero are easily

---

[28] While Dondero objected to being included in the Show-Cause Order based on his contention that he did not "control" the DAF Parties and did not "authorize" the filing of the Seery Motion, he also stated that "to the extent he is somehow found to be a control or authorizing person by the Bankruptcy Court, he hereby ***incorporates by reference and adopts the substantive arguments made***" by the DAF Parties, Patrick, and the Sbaiti Firm.  ROA.2618 n.1 (emphasis added).

43

distinguishable because each concerned show-cause orders that (unlike here) failed

to name the party to be charged. *See* Dondero Br. at 20-22.[29]

Accordingly, as the District Court found, Dondero had adequate notice from

the moment the Show Cause Order was entered that he might be held in contempt.

## F.    **The Bankruptcy Court's Finding That Dondero Violated the Gatekeeper Provisions Is Not Clearly Erroneous**

Dondero argues that the Bankruptcy Court erred in finding him in contempt

on the grounds that (a) the Seery Order "did not cover him" because it only applied

to "entities" and not "individuals," Dondero Br. at 24, and (b) even if the Seery Order

applied to him, the evidence does not support a contempt finding against him, *id.* at

28-31. Dondero fails to show that the Bankruptcy Court's finding that he violated

the Seery Order was "clear error."

First, contrary to Dondero's assertion, the unambiguous terms of the Seery

Order applied to any party—including Dondero—who sought to commence

litigation against Seery.   Nevertheless, Dondero insists, without any support, that he

cannot be held responsible for the DAF's and CLO Holdco's actions because he was

---

[29] *See Remington Rand Corp.-Del. v. Bus. Sys., Inc.*, 830 F.2d 1256, 1258 (3d Cir. 1987) (party did not have adequate notice that he might be held in contempt where show-cause order did not identify him and nothing else alerted him to that possibility); *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F3d 336, 340 (5th Cir. 2015) (same); *Bhd. of Locomotive Firemen & Enginemen v. United States*, 411 F.2d 312, 318-19 (5th Cir. 1969) (same); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987) (same).

not their "agent." Dondero Br. at 25 n.2 (relying on FED. R. CIV. P. 65). Dondero's reliance on Rule 65 is misplaced. Rule 65 provides simply that a court's order binds the following who receive actual notice of it by personal service or otherwise: (a) the parties; (b) the parties' officers, agents, servants, employees, and attorneys; or (c) any party who acts in concert or participation with anyone described in (a) or (b). FED. R. CIV. P. 65(d)(2)(A)-(C). Here, Dondero was a party who received notice of the Gatekeeper Provisions. Dondero's argument that he was somehow not bound by the Orders because it "did not 'requir[e]' that Dondero do anything," (Dondero Br. at 25), implies that any gatekeeper order that prohibits any "party" from commencing litigation without leave of the bankruptcy court does not bind parties who were not specifically named therein. This is not the law, and Dondero's conclusory assertion should be rejected. Moreover, it does not matter whether Dondero was acting as an agent of DAF or CLO Holdco; what matters is whether he acted to violate two Bankruptcy Court Orders *that explicitly restrained his own personal conduct*. Accordingly, Dondero's detour on whether he was "in privity" with, or an "agent" of, the DAF Parties is irrelevant.

Second, as the District Court held, Dondero fails to demonstrate that the Bankruptcy Court's finding that he violated the Orders is clear error. As noted above, a court's factual findings warrant reversal only when "the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed." *Butler*, 6 F.3d at 1128.

In finding that Dondero was among the parties responsible for filing the Seery Motion, the Bankruptcy Court relied on substantial evidence establishing Dondero's deep involvement in the "investigation," the preparation of the Original Complaint, and the filing of the DAF Action, and how Dondero "sparked" the fire for the subsequent Seery Motion. *See supra* at 13-17.

As the District Court found, "based on all that evidence," the Bankruptcy Court did not "clearly err" in finding "Mr. Dondero sparked this fire" and that "Patrick basically abdicated responsibility to Mr. Dondero with regard to dealing with Sbaiti and executing the litigation strategy." ROA.597; ROA.12275. Accordingly, the Bankruptcy Court's factual finding that Dondero was among those responsible for the Seery Motion in violation of the Orders was not clearly erroneous and should be affirmed.

## G. **The Bankruptcy Court's Sanction Award Was Not an Abuse of Discretion**

Appellants argue that the sanctions award (a) was punitive instead of compensatory because Highland would have incurred expenses fighting the same motion for leave even if it had been filed in the Bankruptcy Court; and (b) even if the award was "compensatory," the Bankruptcy Court failed to properly measure the damage award against the expenses Highland would have incurred in the absence of

the contemptuous conduct, namely, by contesting the Seery Motion in the Bankruptcy Court. DAF Br. at 40-46. Dondero separately argues that the award was excessive and impermissibly punitive. Appellants' arguments are without merit.

### 1. **Legal Standard**

The bankruptcy court "has broad discretion in the assessment of damages in a civil contempt proceeding," and its sanctions award is therefore reviewed for abuse of discretion. *Am. Airlines*, 228 F.3d at 585; *see also Terrebone*, 108 F.3d at 613. A court abuses its discretion only where it "bases its decision on an erroneous legal conclusion or on a clearly erroneous finding of fact." *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 233 (5th Cir. 2011) (internal quotation marks omitted).

Proving that a factual finding was clearly erroneous in a review of an award of attorneys' fees is inherently difficult given that "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection,' and, [consequently], 'substantial deference' is owed the [fee-awarding] court's 'overall sense of a suit.'" *Id.* Thus, the bankruptcy court's findings of fact in support of its sanction award are reviewed for clear error. *See Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006); *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997) ("We review the district court's determination of reasonable hours and reasonable rates for clear error"); *Von Clark v. Butler*, 916 F.2d 255, 258

(5th Cir. 1990) ("We review the district court's award of attorney fees for abuse of discretion and its finding of fact supporting the award for clear error").

**2.      The Bankruptcy Court's Sanction Award Was Compensatory and Not Punitive**

Appellants argue that the sanctions award was "punitive," as opposed to "compensatory," specifically maintaining that the contempt proceedings "were commenced and pursued not to recover actual damages," but to "*create* damages to punish Appellants and Dondero." DAF Br. at 41-42.  Appellants' defiant argument should be rejected.

Appellants are solely responsible for filing the Seery Motion, and they did so in a transparent attempt to evade the Bankruptcy Court—the very purpose behind the Gatekeeper Provisions.  Indeed, Highland put Appellants on notice that sanctions would be sought if the DAF Parties attempted to add Seery as a defendant in the District Court rather than the Bankruptcy Court (ROA.2329-30)—but they did it anyway, without notice, while arguing to the District Court that the Gatekeeper Provisions were invalid or they were otherwise in compliance with them. Highland surely had the right (and the duty) to enforce the Orders under the circumstances, and Appellants were properly held liable for the cost of doing so.

Given that the monetary award was based solely on Highland's cost of enforcing the Orders, the Bankruptcy Court's sanction was plainly compensatory. As the District Court explained, a sanctions award is civil and compensatory if its

48

"primary purpose is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation." ROA.12268 (quoting *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990)). By contrast, it is "punitive" if its purpose is to "punish the contemnor and vindicate the authority of the court." *Id.; see also Bradley*, 588 F.3d at 263-64 ("[R]emedial contempt is civil, because it remedies the consequences of defiant conduct on an opposing party, rather than punishing the defiance per se. It accordingly does not require the special safeguards that accompany criminal contempt proceedings, such as establishment of *mens rea* and proof beyond a reasonable doubt"); *see also* ROA.599 at 23 (the Bankruptcy Court distinguishing between punitive and compensatory sanctions, and collecting cases). Thus, where the sanction is paid to the party aggrieved by the contemnor rather than the court itself, it is by definition remedial and civil. *Bradley*, 588 F.3d at 263-64.

Here, as the Bankruptcy Court explained, the purpose of the award was to "(1) compel or coerce obedience of the order; and (2) to compensate the Debtor/estate for losses resulting from the Alleged Contemnors' non-compliance with the court orders." ROA.600. After analyzing 50 pages of detailed invoices, and based on its "conservative" estimates of other expenses incurred by Highland in bringing the Contempt Motion, the Bankruptcy Court issued its award of $239,655 for the explicit purpose of "reimburs[ing] the bankruptcy estate for the fees and expenses it has

49

incurred relating to their contemptuous acts." ROA.605; *see also* ROA.606 ("In order to compensate the Debtor's estate for loss and expense resulting from the Contemnors' non-compliance with the orders, the Contemnors are jointly and severally liable for the compensatory sum of **$239,655** and are directed to pay the Debtor … an amount of money equal to **$239,655**").

Other than citing irrelevant case law (*see* DAF Br. at 41),[30] Appellants offer no support for their conclusory contention that the award was "punitive," and such argument should be rejected.

### 3.     The Sanctions Award Was Properly Based on Highland's Costs

Appellants contend that, even if the sanctions award was compensatory, the Bankruptcy Court "did not measure those costs against the expense that Highland would have born" had Appellants made a motion for leave to sue Seery in the Bankruptcy Court. DAF Br. at 42. Incredibly, Appellants actually assert that they "saved Highland the amounts it would otherwise have spent litigating in the bankruptcy court and then the district court," and "absent such a comparison of

---

[30] *See Mazant v. Visioneering, Inc.*, 250 F. App'x 60, 66 (5th Cir. 2007) (dealing with whether a tortfeasor is "liable for damages brought about by a later, separate, independent, intervening cause, even though the tortfeasor's conduct may have created the original peril"); *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006) (dealing with whether a defendant is relieved of liability for "[a] new and independent cause is one that intervenes between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause").

expenses, the bankruptcy court failed to address causation properly.…" *Id.* at 43-44. This argument is frivolous.

As Appellants know, the Bankruptcy Court never addressed the "colorability" of the DAF Parties' claims as part of the Contempt Hearing, and those issues were irrelevant to the Bankruptcy Court's decision to hold Appellants in contempt. Thus, the Contempt Order did not obviate the need for a "colorability" determination such that Appellants "saved Highland" exactly nothing. Appellants' reliance on *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (DAF Br. at 43), is therefore misplaced.

Appellants' reliance on *Fox v. Vice*, 563 U.S. 826, 836 (2011), also does not support their argument. *Fox* stood for the proposition that where "frivolous claims" and "non-frivolous" claims were brought under 42 U.S.C. § 1988, a party may not receive compensation for expenses they would have paid in the absence of the frivolous claims. *Fox*, 563 U.S. at 841 (2011). Here, Highland incurred expenses as a result of Appellants' contemptuous conduct. The Bankruptcy Court's sanctions award, which compensated Highland for such expenses, was a proper exercise of its discretion. *See Skyport Glob.*, 661 F. App'x at 841 (bankruptcy courts do not err in awarding a sanction that "restores the . . . parties to where they were before they incurred attorneys' fees in an attempt to ensure compliance with the injunction.").

51

Appellants' argument that their contemptuous conduct did not cause Highland to incur expenses is meritless and should be rejected.

**4.    The Bankruptcy Court's Factual Findings Supporting Its Fee Award Were Not Clearly Erroneous**

Dondero also contends that the Bankruptcy Court's compensatory award was not supported by evidence that Highland's fees were "reasonable." Dondero Br. at 36-38. Dondero fails to prove that the Bankruptcy Court's factual findings in support of its sanctions award were clearly erroneous.

The Bankruptcy Court's award was based on detailed, daily time records that identified the timekeeper, hourly rate, time spent, and work performed. *See* ROA.11183-237; ROA.10289-300; ROA.604-05. The Bankruptcy Court, which had substantial experience with the parties, their counsel, and the nature and scope of the proceeding, properly exercised its discretion in concluding that the time records adequately established the reasonableness and necessity of the fees charged. The Bankruptcy Court was aware of what reasonable fees would have been incurred "given [the court's] familiarity with the legal work done." *Wegner*, 129 F.3d at 823.

Dondero provides no authority for his conclusory assertion that the "fee award must be reduced." Dondero Br. at 38. Indeed, the two cases cited by Dondero actually support Highland's position. In *Wegner*, the Fifth Circuit affirmed the district court's fee award even though the fee applicant's "proffer of documentation

52

was marginal at best, and arguably inadequate," because it lacked "any time sheets or descriptions of the work done." *Wegner,* 129 F.3d at 822-23.[31]

*Payne v. Univ. of S. Miss.*, 681 F. App'x 384 (5th Cir. 2017), also supports Highland's position. In that case, this Court affirmed an award of attorneys' fees, explaining that while "[n]one of the defendants provided contemporaneous billing records, [] this does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours." *Id.* at 390 (internal quotation marks omitted). It also noted that defendants "organized their invoices into detailed and lengthy charts that showed the date tasks were performed, a brief description of tasks performed, the time spent on each task, the hourly rate, and a brief explanation for seeking the fees. These charts are sufficiently detailed to determine reasonable attorneys' fees … and we see no evidence of clear error to disturb the district court's determination." *Id*. (internal citation omitted).

---

[31] This Court further held that "[a]lthough [applicant's] documentation was sparse, we cannot say that it was so vague or incomplete that the district court was precluded from conducting a meaningful review of whether the hours claimed on this litigation were reasonably expended." *Wegner*, 129 F.3d at 823. The Court further explained that "[o]ther than identifying the glaring holes in [applicant's] documentation (*e.g.*, the nondescriptive billing), [appellant] has not provided us … with detailed information explaining why or how the total number of hours claimed were not reasonable" such that "[u]nder these circumstances, given the district court's familiarity with the legal work done on this relatively straightforward contract interpretation case as well as our deferential standard of review, we are constrained to hold that the district court had sufficient information before it to determine reasonable hours." *Id.*

Here, the Bankruptcy Court relied on substantially greater and more reliable documentary evidence than the courts in *Wegner* and *Payne*. And like the appellants in those cases, Dondero failed to provide any support for his argument that the fee award was unreasonable, other than through baseless and generalized attacks on the sufficiency of Highland's documentation.

The Bankruptcy Court's compensatory sanction award should be affirmed.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellee respectfully requests that this Court affirm the District Court's Order, including the sanction award, in all respects.

Date: April 7, 2023

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

-and-

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
John Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

*Counsel for Appellee*

DOCS_NY:47281.23 36027/003

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)</u>

1.    This document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(b) because, including footnotes and excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 12,528 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, typeface Times New Roman, 14-point type (12-point for footnotes).

3.    Any required privacy redactions have been made pursuant to Circuit Rule 25.2.13, the electronic submission is an exact copy of the paper submission, and this document has been scanned for viruses and is free of them.

*/s/ Zachery Z. Annable*
Attorney for Appellee
Dated: April 7, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2023, the foregoing Brief of Appellee was electronically filed using the appellate CM/ECF system.  I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished via CM/ECF.

*/s/ Zachery Z. Annable*
Attorney for Appellee

DOCS_NY:47281.23 36027/003