No. 22-11036

---

In the
**UNITED STATES COURT OF APPEALS**
For the Fifth Circuit

---

**In the Matter of Highland Capital Management, L.P.,**

*Debtor.*

**The Charitable DAF Fund L.P.; CLO Holdco, Limited; Mark Patrick; Sbaiti & Company, P.L.L.C.; Mazin A. Sbaiti; Jonathan Bridges,**

*Appellants,*

*v.*

**Highland Capital Management, L.P.,**

*Appellee.*

---

**In the Matter of Highland Capital Management, L.P.,**

*Debtor.*

**James Dondero,**

*Appellant,*

*v.*

**Highland Capital Management, L.P.,**

*Appellee.*

---

**Appeal from the United States District Court
For the Northern District of Texas, Dallas Division**
*Honorable Brantley Starr, United States District Judge*
No. 3:21-cv-01974-X

---

**REPLY BRIEF OF APPELLANT JAMES DONDERO**

---

**Jeffrey S. Levinger**
jlevinger@levingerpc.com
**J. Carl Cecere (of counsel)**
ccecere@cecerepc.com
**Levinger PC**
1700 Pacific Ave., Suite 2390
Dallas, Texas 75201
Telephone: 214-855-6817
Facsimile: 214-817-4509

*Attorneys for Appellant*
*James Dondero*

TABLE OF CONTENTS

Table of Authorities ..................................................................................iv

Introduction and Summary of the Argument ..............................................1

Arguments in Reply ...................................................................................2

I.    Dondero never received the notice that Due Process requires before being sanctioned for contempt............................................................2

      A.    Dondero had no reason to believe he fell within the class of "Violators" in the Bankruptcy Court's show-cause order who faced potential contempt sanctions. ....................................................3

      B.    Dondero never admitted to receiving adequate notice. .......................7

II.    Dondero did not violate the gatekeeping order. ............................................10

III.    The amount of the sanction is excessive and impermissible.........................17

Conclusion ...............................................................................................21

Certificate of Service ...............................................................................22

Certificate Regarding Privacy Redactions and Virus Scanning ..............22

Certificate of Compliance With Type-Volume Limit ..............................23

# TABLE OF AUTHORITIES

## Cases

*Alberti v. Klevenhagen,*
    46 F.3d 1347 (5th Cir. 1995) ...........................................................9, 18

*Clark v. Boyunton,*
    362 F.2d 992 (5th Cir. 1966) .................................................................18

*Dole Fresh Fruit Co. v. United Banana Co.,*
    821 F.2d 106 (2d Cir. 1987) ....................................................................9

*M.D. v. Abbot,*
    509 F. Supp. 3d 683 (S.D. Tex. 2020) ....................................................7

*Payne v. University of Southern Mississippi,*
    661 F. App'x 384 (5th Cir. 2017) .........................................................20

*Ravango Americas L.L.C. v. Vinmar Int'l Ltd.,*
    832 F. App'x 249 (5th Cir. 2020) (per curiam) ...................................17

*Wegner v. Standard Ins. Co.,*
    129 F.3d 814 (5th Cir. 1997)......................................................... 19, 20

## Rules

FED. R. CIV. P. 65 ....................................................................... 11, 12

FED. R. CIV. P. 65(d)(2)(A) ................................................. 10, 11, 12

FED. R. CIV. P. 65(d)(2)(B) ............................................................ 11, 12

FED. R. CIV. P. 65(d)(2)(C) ............................................................ 11, 12

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Dondero files this reply brief for a limited purpose. He does not intend to respond to every argument Highland raises in its brief, the majority of which are amply addressed in the DAF Appellants' reply brief, which Dondero adopts and incorporates by reference. And unlike the DAF Appellants' reply, which explains why the contempt order and sanction award cannot be upheld against *any* of the appellants, Dondero's reply will focus on the unique reasons the order and award cannot be upheld against him.

The first of these is the Bankruptcy Court's failure to give Dondero proper notice that he might be subject to contempt sanctions. Both Highland's motion for contempt and the Bankruptcy Court's show-cause order gave notice that only a certain defined group of people and entities were at risk of contempt—the "Violators." Dondero was not among the Violators, so he received no notice. And Highland cannot suggest otherwise without mischaracterizing the show-cause order and improperly twisting Dondero's multiple objections to his *lack* of notice into some kind of concession that proper notice was given.

Highland similarly fails to demonstrate that Dondero was even subject to the gatekeeping order, much less that he violated it. The gatekeeping order applies to "entities"—not all "parties"—and Dondero is neither an entity nor a party. Highland also presents no evidence that Dondero took any action to "commence" or "pursue"

any claim against Seery in violation of the gatekeeping order. Instead, the evidence is conclusive that the only matter Dondero could have "commenced" or "pursued" was the initial complaint against Highland, which did not violate the gatekeeping order and was not the basis for Highland's contempt motion.

Highland likewise fails to overcome the numerous flaws in the $239,655 sanctions award itself. It concedes that it suffered no pecuniary loss from any violation of the gatekeeping order. And it never denies that the amount awarded vastly exceeds the fees necessarily incurred to bring that alleged violation to the court's attention, or that it expended the excess in a vindictive and ultimately fruitless effort to prove Dondero was part of that supposed violation. That made the award wildly excessive, impermissibly punitive, and completely unreasonable. For all these reasons, it must be reversed.

### ARGUMENTS IN REPLY

## I.    Dondero never received the notice that Due Process requires before being sanctioned for contempt.

Highland's effort to uphold the contempt sanction against Dondero is ultimately futile, because try as it might, it cannot demonstrate that Dondero received the notice that Due Process requires before a contempt sanction can be imposed.

**A.    Dondero had no reason to believe he fell within the class of "Violators" in the Bankruptcy Court's show-cause order who faced potential contempt sanctions.**

Highland first contends that Dondero received adequate notice through the Bankruptcy Court's show-cause order, claiming it provides "indisputable evidence" of Dondero's awareness that he might be subject to contempt sanctions. (Highland Br. 42) But that contention requires Highland to mischaracterize what the show-cause order actually says. And it is worth reviewing the actual language of that order to understand the depths of Highland's mischaracterization.

As Dondero has explained in his opening brief (Dondero Br. 6-7, 21), the show-cause order adopted the meaning ascribed to various capitalized terms from Highland's contempt pleadings—specifically, from the memorandum of law supporting its motion for contempt:

> [2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Memorandum of Law.

(ROA.2584) And that memorandum of law sought sanctions from a specifically designated class of entities and persons, grouped together under the capitalized term "Violators"—"The DAF," "CLO Holdco," "Sbaiti & Co.," and "the persons who authorized The DAF and CLO Holdco" to file the Seery Motion:

Highland Capital Management, L.P., the debtor and debtor-in-possession (the "Debtor" or "Highland") in the above-captioned chapter 11 case ("Bankruptcy Case"), submits this memorandum of law (the "Memorandum") in support of the *Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court Orders* (the "Motion"), pursuant to sections 105(a) and 362(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requiring The Charitable DAF Fund, L.P. ("The DAF"), CLO Holdco, Ltd. ("CLO Holdco"), the persons who authorized The DAF and CLO Holdco, respectively (together, the "Authorizing Persons"), to file the Seery Motion (as defined below) in the DAF Action (as defined below), and Sbaiti & Company PLLC ("Sbaiti & Co." and together with The DAF, CLO Holdco, and the Authorizing Persons, the "Violators"), counsel to

(ROA.1776, highlighting added)

The Bankruptcy Court made clear in its show-cause order that only the "Violators"—as that term was defined in Highland's memorandum of law—were at risk of being held in contempt and sanctioned:

1.    On **Tuesday, June 8, 2021 at 9:30 a.m. (Central Time)** (i) The Charitable DAF Fund, L.P. ("The DAF"); (ii) CLO Holdco, Ltd. ("CLO Holdco"); (iii) Sbaiti & Company PLLC ("Sbaiti & Co."); (iv) those persons who authorized The DAF and CLO Holdco, respectively, to file *Plaintiff's Motion for Leave to File First Amended Complaint in the District Court* in that certain civil action styled *Charitable DAF Fund, L.P. et al. v. Highland Capital Management, L.P. et al.*, case no. 21-cv-00842, pending in the United States District Court for the Northern District of Texas; and (v) James Dondero shall appear **in-person** before this Court and show cause why an order should not be granted: (a) finding and holding each of the Violators in contempt of court; (b) directing the Violators, jointly and severally, to pay the Debtor's estate an amount of money equal to two (2) times the Debtor's actual expenses incurred in bringing this Motion, payable within three (3) calendar days of presentment of an itemized list of expenses; (c) imposing a penalty of three (3) times the Debtor's actual expenses incurred in connection with any future violation of

(ROA.2585, highlighting added)

The Bankruptcy Court's adoption of Highland's term "Violators" therefore made clear that Dondero faced no risk of a contempt sanction because he did not fit within the category of "Violators" against whom contempt sanctions would be sought. He was not among the entities specifically listed in Highland's memorandum—The DAF, CLO Holdco, and Sbaiti & Co. And as Dondero has demonstrated (Dondero Br. 9-10, 15, 19) and Highland now admits (Highland Br. 16), Dondero could not be a person "who authorized" the filing of the Seery Motion. Only Mark Patrick could.

But the Bankruptcy Court went even further in making clear that Dondero was not among "the Violators" at risk of a contempt sanction. In the portion of the passage above listing those who must appear at the contempt hearing, the Bankruptcy Court placed Dondero in his own category (subcategory (v)), separate from The DAF, CLO Holdco., and Sbaiti & Co. (who were listed in subcategories (i)-(iii)) and from "those persons who authorized" the filing of the Seery Motion (as set forth in subcategory (iv)). That made it unmistakably clear that while Dondero was "personally identified" in the show-cause order and directed to appear at the contempt hearing (Highland Br. 42), he was not named as a potential contemnor. Instead, he was asked to appear solely as a witness as to whether the Violators should be held in contempt.

Highland cannot explain how the show-cause order's plain language can be interpreted otherwise. Indeed, it does not even try. While Highland insists several times that the order included Dondero as among those who were at risk of contempt, it resolutely refuses to square that interpretation with the actual language of the order and its use of the defined term "Violators" that unambiguously excludes Dondero. (Highland Br. 4, 14, 42) At first Highland does not quote the show-cause order at all, simply insisting that it included Dondero among the potential contemnors. (*Id.* 4, contending that the order required Dondero to appear to explain "why *he* should not be held in contempt of court," emphasis added); (*id*. 14, contending that Dondero, along with the others actually defined as "Violators," were ordered by the Bankruptcy Court "to show cause why *they* should not be held in contempt," emphasis added) Then, the only time Highland actually quotes from the order, it does so selectively, to omit any mention of the defined term "Violator"—replacing it with a new *undefined* term "identified parties." (*See id*. 42, contending that the show-cause order "directed 'James Dondero' and others to 'appear in-person before this Court and show cause why an order should not be granted' holding the *identified parties* in contempt," quoting ROA.2585, emphasis added) And then for good measure, Highland quotes the District Court's own mischaracterization of the show-cause order, in which the District Court mistakenly swapped the lower-case term "violators" for the proper capitalized term "Violator" (*id*. 42 n.27), despite

recognizing that the latter term was adopted from Highland's contempt pleadings (Dondero Br. 21, quoting ROA.12277-78).

Not once does Highland acknowledge that the show-cause order adopted the term "Violators"—even though Highland itself coined the term and specifically identified who was encompassed within it. And not once does Highland try to explain how Dondero might fall within any of the categories encompassed within that defined term. Accordingly, Highland's selective quotations and interpretive gloss fall flat in suggesting that the show-cause order gave Dondero notice that he was among those "who might be held in contempt." (Highland Br. 42-43, citing *M.D. v. Abbot*, 509 F. Supp. 3d 683 (S.D. Tex. 2020))

### B.    Dondero never admitted to receiving adequate notice.

Nor can Highland demonstrate that Dondero received adequate notice that he might be subject to a potential contempt sanction through his repeated efforts to *object* that he had been given *no notice* of any such sanction. (Highland Br. 43) Highland acknowledges that Dondero filed a written "objection" to the contempt motion (*id*.), in which Dondero argued that he "was not included in the Debtor's motion or proposed order," and "object[ed] to any implication" that he had been named by the Bankruptcy Court "as an alleged or implied violator" (Dondero Br. 22, quoting ROA.2620). Highland likewise acknowledges that Dondero's counsel re-urged these objections at the contempt hearing, insisting that Dondero was not a

"control or authorizing person" and thus did not fall within the category of "Violators" covered by Highland's contempt pleadings or the show-cause order. (Highland Br. 43 n.28; Dondero Br. 22 n.1 quoting ROA.12278) Indeed, Highland even acknowledges that Dondero's counsel was "disputing Dondero's role" throughout the contempt hearing—and objecting to any notion that Dondero was appearing in any capacity other than as a witness. (Highland Br. 43) And Highland nowhere contends that these repeated objections were insufficient to communicate Dondero's belief that he had not received proper notice and to preserve his Due Process challenge to the Bankruptcy Court's failure to name Dondero in its show-cause order.

Instead, Highland (like the District Court) focuses on a pair of isolated statements that Dondero's counsel made at the contempt hearing—plucked entirely out of context—to suggest that Dondero admitted he was an "alleged violator" within the meaning of Highland's contempt motion or the Bankruptcy Court's show-cause order. (Highland Br. 43) But these isolated statements are meaningless. Dondero *had not* been named as an "alleged violator." And even if his counsel made statements during the hearing that might suggest otherwise, these isolated instances of inartful phrasing during the heat of a contested hearing cannot overcome the numerous, repeated, and express objections Dondero and his counsel raised before,

during, and after the contempt hearing in which he insisted he *had not* been named as a "Violator." Highland raises no argument why they should.[1]

Accordingly, there is no question that (1) Dondero clearly and adequately challenged the fact that he had not been given sufficient notice in either Highland's motion for contempt or the show-cause order that he might be subject to contempt; and (2) he unquestionably appeared at the hearing only as a witness and under protest. That distinguishes Highland's sole authority, *Alberti v. Klevenhagen*, 46 F.3d 1347, 1360 (5th Cir. 1995), in which the sanctioned party *never* challenged whether it had been given adequate notice of a potential sanction, and instead filed pleadings and appeared at a hearing on the proposed sanction without protest—only later challenging whether it had been given an adequate opportunity to be heard.

Rather, this case is directly analogous to Dondero's authorities (Dondero Br. 19-21), especially *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987), in which the Second Circuit invalidated a contempt sanction despite the sanctioned party's appearance and participation as a witness at the contempt hearing, because that appearance could not cure the fatal Due Process problems that resulted

---

[1] Nor, for that matter, can Dondero's numerous protests about the lack of notice be overcome by the fact that his written objection adopted the arguments made by the Violators in their separate response to the contempt motion. (Highland Br. 43 n.28) The fact that Dondero raised substantive arguments to defend himself at the contempt hearing does not change the fact that he raised those arguments under protest.

from the fact that the party had not been named in either a motion for contempt or a show-cause order. And that is the same result the Court should reach here. For that reason alone, the contempt sanction against Dondero cannot stand.

## II.    Dondero did not violate the gatekeeping order.

Highland has also failed to demonstrate that Dondero committed any violation of the gatekeeping order that would justify the Bankruptcy Court's imposition of contempt sanctions against him. Highland's first problem is that the gatekeeping order does not even govern Dondero's conduct, because the order's prohibition against "commenc[ing] or pursu[ing]" a claim against Seery extends only to an "entity." (Dondero Br. 4, quoting ROA.1172) But Dondero is an individual, not an entity. And Highland's attempt to bring Dondero within the gatekeeping order's terms forces it to once again misconstrue the terms of that order.

Highland contends that the gatekeeping order extends to Dondero as "a party," insisting that the order's textual limitation to "entities" is overridden by FED. R. CIV. P. 65(d)(2)(A), which provides that an injunction "binds" the "parties." (Highland Br. 45) But that contention contains a two-fold error. For one thing, Highland is wrong: Dondero is not a "party" to the gatekeeping order because he was not named as a defendant in the bankruptcy proceeding from which the order arose. The only "party" to that proceeding was the Debtor, Highland Capital Management, L.P.

(ROA.1171-72) Indeed, Dondero was not even named in the order itself. Highland's argument fails for that reason alone.

Highland also misunderstands the basic meaning and purpose of Rule 65. That rule defines the outer boundaries of an injunction's enforceable power, providing that an injunction can bind others beyond the parties to the proceeding in which the injunction was granted to include their "officers, agents, servants, employees, and attorneys," and others "who are in active concert and participation" with them. FED. R. CIV. P. 65(d)(2)(A)-(C). But the mere fact that an injunction *can* bind all parties to a proceeding does not mean that any particular injunction *will* impose duties on all parties. Courts do not always exercise the full extent of the power Rule 65 grants to them. Some injunctions, like the gatekeeping order, only name certain parties— or a particular category of parties. And the duties imposed by such limited injunctions run only to the parties so named. Highland provides no authority to suggest that the duties imposed in an injunction will be enforceable against *unnamed* parties, and no authority to support the notion that those duties would be enforceable against unnamed *non-parties* like Dondero—a proposition that would extend the reach of every injunction to every person in the world. Indeed, the very idea that the obligations the gatekeeping order imposed on "entities" can be enforced against *non-*entities is nonsensical, defeating the very purpose of naming those particular entities in the first place.

In the end, none of the provisions of Rule 65 extend the gatekeeping order's reach to include Dondero. He is not a "party" covered under Rule 65(d)(2)(A). Nor is he covered under Rule 65(d)(2)(B) as an officer, agent, servant, or employee of any of the "entities" at issue in this case—Highland, the DAF, DLO Holdco, and Sbaiti & Company. Indeed, Highland acknowledges that Dondero is not an "agent" of those entities at all—serving merely as the DAF's "informal investment advisor." (Highland Br. 10 n.4, 16 n.11) And as Dondero has already explained—and Highland does not dispute—Dondero did not "act in concert or participation" with those entities so as to be covered under Rule 65(d)(2)(C). (*See* Dondero Br. 25 n.2) Accordingly, there is no basis to conclude that Dondero is covered by the gatekeeping order. And that alone requires the contempt sanction against him to be reversed.

Yet even if the gatekeeping order did apply to Dondero, there is no evidence—much less clear and convincing evidence—that he violated that order, because he neither "commenced" nor "pursued" any claim against Seery. Until now, no one—including the Bankruptcy Court, the District Court, and Highland itself—has contended that Appellants ever "commenced" any claim against Seery, because they never actually started a lawsuit against him. And while Highland now waffles on that stance, suggesting that Appellants "*effectively* commenced … an action" against Seery (Highland Br. 23, emphasis added), that waffling ultimately amounts to

nothing, because Highland does not seriously contend that "effectively" commencing an action is the same as *actually* commencing one, or that Appellants could be sanctioned for purportedly "commencing" an action that was never actually filed.

Dondero did not "pursue" any claim against Seery either. There has been much dispute about the meaning of that term in this case. Like the DAF Appellants, Dondero contends that to "pursue a claim" means to "prosecute or sue," or to "carry it out or follow it," and therefore only refers to efforts to prosecute a claim occurring after a suit has already been commenced. (Dondero Br. 25) And because no suit against Seery ever commenced, no action was then "pursued." By contrast, the District Court adopted a broader definition of the term "pursue," holding that it means "trying," and therefore could refer to efforts to pursue a claim that stop short of actually commencing an action. (*Id*. 26, quoting ROA.12260-61) But as Dondero has demonstrated, his and the DAF Appellants' reading is the only contextually and logically appropriate one. (*Id*. 26-27)

Highland offers nothing in response except to suggest that Appellants' reading of the term renders it "superfluous." (Highland Br. 23) Not so. As Dondero has explained, it makes perfect sense, and is not at all redundant, for the Bankruptcy Court to prohibit "commencing" a claim separately from "pursuing" it *after* commencing it—after all, the expenses incurred by a defendant *during* litigation are

often far greater than the expenses the defendant incurs in merely responding to the commencement of a lawsuit.

Accordingly, Appellants' reading of the gatekeeping order is entirely logical, and preserves the gatekeeping order's basic purpose of protecting Highland and Seery from the distraction and expense of "baseless" litigation. (Highland Br. 7) By contrast, the meaning of "pursue" the District Court adopted makes far less sense— because a defendant rarely incurs any expenses *before* the plaintiff commences a lawsuit, so there is no reason that such pre-commencement actions should constitute contemptible conduct. Indeed, Seery and Highland incurred *no* expenses at all as the result of the Seery Motion, because it was immediately denied without any claim against Seery being filed. Accordingly, under the most logical and contextually appropriate meaning of the term, none of the Appellants "pursued" a claim against Seery.

Yet even under the District Court's improperly expansive definition, Dondero did not "pursue" any claim against Seery because Dondero never even "tried" to sue Seery. The fact remains that Dondero did not authorize the filing of the Seery Motion. And the evidence is undisputed that Dondero was not involved in the decision to file that Motion. (Dondero Br. 28) Importantly, Highland does not suggest otherwise.

Instead, Highland claims that Dondero can be held liable for actions he undertook that had nothing to do with the filing of the Seery Motion, including: (1) "sparking" the initial "investigation" into "Seery's alleged improper conduct concerning the HarbourVest Settlement;" and (2) communicating "with the Sbaiti Firm" concerning the Original Complaint that named only Highland—along with Dondero's possible knowledge that "the Seery Motion would be filed." (Highland Br. 4; *see also id*. 46) But even if true, none of those accusations could constitute violations of the gatekeeping order.

The only litigation that Dondero actually "sparked" concerned the original *lawsuit against Highland—not the Seery Motion.* There is no evidence that Dondero ordered or authorized the filing of the Seery Motion, or that he intended for it to be filed. And contrary to what Highland insists, such intent cannot be inferred from the mere fact that the original complaint against Highland "mentioned" Seery's conduct. (Highland Br. 11, quoting ROA.580) The mere mention of Seery did not suggest that the original complaint was some planned precursor to something else. On the contrary, the complaint's passages about Seery's behavior suggest that the DAF Appellants *could* have named Seery as a defendant but chose not to—indicating that the plan was to challenge Seery's conduct *without* bringing suit against Seery himself and risk running afoul of the gatekeeping order. And even if Dondero subjectively desired for the DAF Appellants to take the case further, or even "knew"

or "was 'aware'" that the Seery Motion would be filed (Highland Br. 4, 17, quoting ROA.11451), such desire and knowledge cannot support a contempt order when the evidence is undisputed that Dondero did not take *any* action to further that supposed desire—much less take "*every* action necessary" to do so. (*See* Dondero Br. 28, quoting ROA.12261, emphasis added)

For similar reasons, the fact that Dondero participated in the "investigation" that preceded the filing of the original complaint against Highland cannot constitute the "pursuit" of any later claim against Seery in violation of the gatekeeping order. It is ultimately immaterial whether Dondero "precipitated," "guided," or "drove" that initial investigation, or that he spoke with the Sbaiti Firm "[h]alf a dozen times" and reviewed "versions" of the original complaint against Highland before it was filed. (Highland Br. 16-17) That complaint did not name Seery and therefore did not violate the gatekeeping order, and it was not a basis for the contempt motion or show-cause order. And there is no contention that Dondero engaged in any participation, conversations, review, or spearheading regarding the filing of the Seery Motion. Yet even if he did, Highland acknowledges that such preliminary activities as "researching" and "conferring with … attorneys" cannot constitute violations of the gatekeeping order—even if those activities did relate to the Seery Motion. (Highland Br. 25) That precludes Highland from seeking to hold, and the courts below from holding, Dondero in contempt for any such preliminary activities.

### III.    The amount of the sanction is excessive and impermissible.

Highland's effort to overcome the numerous flaws in the Bankruptcy Court's windfall sanctions award are also unavailing.

The first of these flaws concerns the Bankruptcy Court's decision to award $239,655 in attorney's fees that, as Dondero has shown, vastly exceed what was necessary to compensate Highland for the only conduct alleged to violate the gatekeeping order—the filing of the Seery Motion. (Dondero Br. 33) In response, Highland does not even deny the fee's excessiveness. Nor does it dispute that a compensatory fee award must be "measured in some degree by the pecuniary injury caused by the act of disobedience." (Dondero Br. 32, quoting *Ravango Americas L.L.C. v. Vinmar Int'l Ltd.*, 832 F. App'x 249, 255 (5th Cir. 2020) (per curiam)) But Highland makes no attempt to demonstrate that it suffered *any* degree of pecuniary harm from the filing of the Seery Motion. And it cannot, given that it was not even required to respond to that Motion. (*See* Dondero Br. 33) Highland's failure to connect the fee awarded to actual pecuniary harm alone makes the fee excessive.

Although Highland tries to justify its entitlement to the fee based on its "right" to enforce the gatekeeping order and recover its "cost for enforcing" that order (Highland Br. 48), that justification falls flat when Highland does not even try to demonstrate that the hundreds of thousands of dollars the Bankruptcy Court awarded actually represented the "reasonable expenses" necessarily incurred in "presenting

the contempt for the judgment of the court" (Dondero Br. 33, quoting *Clark v. Boynton*, 362 F.2d 992, 993 (5th Cir. 1966)) Nor could it, given that enforcing the gatekeeping order required nothing more than a "simple" motion for contempt, in which "[t]here is really very little, if anything, in dispute." (Dondero Br. 34, quoting ROA.594, 11530) Indeed, Highland nowhere denies that the bulk of its fees had nothing to do with the enforcement effort itself, but instead were incurred in trying to pin the blame for the Seery Motion on Dondero and thereby ensure that Dondero experienced consequences for his alleged involvement in it—a vindictive and purely punitive purpose that went far beyond what was necessary to enforce the gatekeeping order and present the contempt motion to the Bankruptcy Court.

Similarly unavailing are Highland's attempts to purge the fee award of that obvious and impermissibly punitive purpose. Highland relies entirely on the Bankruptcy Court's conclusory statement that the "purpose of the award was to '(1) compel or coerce obedience of the order; and (2) compensate the Debtor/estate for losses resulting from the Alleged Contemnors' non-compliance with the court orders.'" (Highland Br. 49, quoting ROA.600) But Highland ignores that "the stated purposes of the sanction … cannot be determinative" in assessing whether a sanction is civil or criminal; that assessment must be made from "an examination of the character of the relief itself." (Dondero Br. 36, quoting *Alberti*, 46 F.3d at 1359) And the character of the relief provided in the sanctions award can only be considered

punitive because it did not seek to "compel or coerce" obedience through a daily fine (Dondero Br. 35), and went far beyond what was necessary to compensate Highland for any actual "losses resulting" from Appellants' alleged non-compliance. The award therefore remains punitive, and that provides yet another reason to overturn it.

Highland also offers nothing to overcome the glaring gaps in the proof it offered to establish the reasonableness of its fees. It nowhere denies that it failed to provide proof of the reasonableness of its fees to the Bankruptcy Court. It also offers no authority to suggest that attorney's fees can be awarded in the absence of such proof of reasonableness.

And Highland's efforts to distinguish Dondero's own authorities are unavailing. In *Wegner v. Standard Ins. Co.*, 129 F.3d 814 (5th Cir. 1997), for example, the Court upheld the award of fees despite the fee applicant's "inadequate" documentation (Highland Br. 52-53, quoting 129 F.3d at 822-23), only because the applicant's documentation was adequate where it counted: It submitted "an affidavit from legal counsel" reflecting that the fees were "reasonable and necessary in the prosecution of the case." 129 F.3d at 823. The Court noted that "[u]nder these circumstances"—*i.e.*, only where the prevailing party had offered at least *some* proof of reasonableness—the trial court could conclude that the amount of fees was reasonable based on its "familiarity with the legal work being done," and it would

be up to the opposing party to explain "why or how the total number of hours claimed were not reasonable." *Id*. But nothing in *Wegner* suggests that a trial court can permissibly award fees in the absence of *any* proof of reasonableness or that such reasonableness can be gleaned *solely* from the court's familiarity with the parties' legal work. On the contrary, this Court made clear that the "fee applicant" retains "the burden to submit adequate documentation of the hours reasonably expended." *Id*. at 822. And Highland failed to satisfy that burden.

The result in *Payne v. University of Southern Mississippi*, 661 F. App'x 384 (5th Cir. 2017), similarly hinged on proof of reasonableness that Highland failed to provide. While the Court determined that the fee applicant in that case could prove the amount of its fee through "lengthy charts" showing the tasks performed and the time spent on each (Highland Br. 53, quoting 681 F. App'x at 390), the only reason the Court could determine that the time constituted "reasonable hours" (*id.*) was because the fee applicant provided more than charts—it also submitted "multiple affidavits" establishing the "reasonableness of the fee." 681 F. App'x at 391. Accordingly, these cases do not "support Highland's position" (Highland Br. 32)— they refute it. And because Highland failed to provide similar evidence of reasonableness, the fee award must be reversed for this additional reason.

## CONCLUSION

For the reasons stated above and in Dondero's opening brief, the Bankruptcy Court's order of contempt and sanction of $239,655, and the District Court's affirmance of that order and award, should be reversed.

Respectfully submitted,

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**
jlevinger@levingerpc.com
**J. Carl Cecere (of counsel)**
ccecere@cecerepc.com
**Levinger PC**
1700 Pacific Ave., Suite 2390
Dallas, Texas 75201
Telephone:  214-855-6817
Facsimile:  214-817-4509

*Attorneys for Appellant*
*James Dondero*

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 12, 2023, the foregoing reply brief was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the Appellate CM-ECF System.  Participants in this case who are registered CM-ECF users will be served electronically by the Appellate CM-ECF System.  Other participants will be served by e-mail.

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**

## CERTIFICATE REGARDING PRIVACY REDACTIONS AND VIRUS SCANNING

The undersigned certifies that: (1) all required privacy redactions have been made in this brief, in compliance with 5TH CIR. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, in compliance with 5TH CIR. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1.  This reply brief complies with the type-volume limit of FED. R. APP. P. 32 (a)(7)(B) because, excluding the parts of the brief exempted by FED. R. APP. P. 32(f):

    ☒    it contains 4,511 words.

2.  This reply brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

    ☒    it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 pt. Times New Roman (and 13 pt. for footnotes).

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**

*Attorney of Record*
*for Appellant James Dondero*

May 12, 2023