No. 22-11036

# United States Court of Appeals
## for the Fifth Circuit

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P., *Debtor,*

THE CHARITABLE DAF FUND L.P.; CLO HOLDCO, LIMITED; MARK PATRICK; SBAITI & COMPANY P.L.L.C.; MAZIN A. SBAITI; JONATHAN BRIDGES,
*Appellants,*

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,
*Appellee.*

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P., *Debtor,*

JAMES DONDERO,

*Appellant,*

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,
*Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
Nos. 3:21-cv-01974-X, 3:21-cv-1979-S

## REPLY BRIEF FOR APPELLANTS
## THE CHARITABLE DAF FUND L.P.; CLO HOLDCO, LTD;
## MARK PATRICK; SBAITI & COMPANY PLLC;
## MAZIN A. SBAITI; JONATHAN BRIDGES

Mazin A. Sbaiti
Jonathan Bridges
SBAITI & COMPANY PLLC
JPMorgan Chase Tower
2200 Ross Avenue
Suite 4900W
Dallas, TX 75201
Telephone: (214) 432-2899
mas@sbaitilaw.com

Erik S. Jaffe
  *Lead Counsel*
Brian J. Field
Aaron Gordon
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
ejaffe@schaerr-jaffe.com

*Counsel for Appellants The Charitable DAF Fund, L.P.;
CLO Holdco, Ltd.; Mark Patrick; Sbaiti & Company, PLLC;
Mazin A. Sbaiti; and Jonathan Bridges*

MAY 12, 2023

# TABLE OF CONTENTS

ARGUMENT ....................................................................2

I.   The Seery Order Did Not Prohibit Appellants' District-Court Motion, Much Less Do So Clearly and Unambiguously...........................................................2

II.  Highland Fails to Support Its Demand that Appellants Accept Ambiguity in Bankruptcy Court Orders. ...................11

III. The Courts Below Erred in Awarding Punitive Sanctions for Expenses Not Caused by the Alleged Contempt.............15

IV.  The Courts Below Erred in Extending the *Barton* Doctrine Beyond its Reach. ...................................................23

CONCLUSION .........................................................30

# TABLE OF AUTHORITIES

## Cases

*American Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO,*
  No. 4:19-cv-0414-A, 2019 WL 3774501
  (N.D. Tex. Aug. 12, 2019) ..................................................................... 12

*Cargill v. Garland,*
  57 F.4th 447 (5th Cir. 2023) ................................................................... 3

*Cohens v. Virginia,*
  19 U.S. (6 Wheat.) 264 (1821) ................................................................ 3

*Day v. Persels & Assocs.,*
  729 F.3d 1309 (11th Cir. 2013) .............................................................. 3

*Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.,*
  630 F.3d 431 (5th Cir. 2011) ................................................................... 6

*Dynamic CRM Recruiting Sols., LLC v. UMA Educ., Inc.,*
  31 F.4th 914 (5th Cir. 2022) ............................................................... 5, 8

*Fox v. Vice,*
  563 U.S. 826 (2011) ............................................................................... 19

*Goodyear Tire & Rubber Co. v. Haeger,*
  137 S. Ct. 1178 (2017) .................................................................... 16, 19

*In re Bradley,*
  588 F.3d 254 (5th Cir. 2009) ................................................................. 12

*In re Highland Capital Mgmt., L.P.,*
  No. 19-34054-SGJ-11 (Bankr. N.D. Tex.) ........................................... 22

*In re Hipp, Inc.,*
  895 F.2d 1503 (5th Cir. 1990) .............................................................. 16

*In re SkyPort Glob. Commc'ns*
  No. 08-36737-H4-11, 2013 WL 4046397
  (Bankr. S.D. Tex. Aug. 7, 2013) ........................................................... 12

*Lamar Fin. Corp. v. Adams,*
  918 F.2d 564 (5th Cir. 1990) ............................................................ 16

*Matter of Hailey,*
  621 F.2d 169 (5th Cir. 1980) .............................................................. 2

*Matter of Highland Cap.,*
  48 F.4th 419 (5th Cir. 2022) .................................................. 23, 25, 26

*McVay v. Halliburton Energy Servs., Inc.,*
  608 F. App'x 222 (5th Cir. 2015) ...................................................... 12

*Meyer v. Brown & Root Constr. Co.,*
  661 F.2d 369 (5th Cir. Nov. 1981) .................................................... 11

*Mid-Continent Cas. Co., Inc. v. Bay Rock Operating Co.,*
  614 F.3d 105 (5th Cir. 2010) ............................................................... 6

*Oaks of Mid City Resident Council v. Sebelius,*
  723 F.3d 581 (5th Cir. 2013) ........................................................ 2, 13

*Ruiz v. United States,*
  243 F.3d 941 (5th Cir. 2001) ............................................................. 29

*Sabri v. United States,*
  541 U.S. 600 (2004) ......................................................................... 27

*SkyPort Glob.,*
  661 F. App'x 835 (5th Cir. 2016) ...................................................... 17

*United States v. Rizzo,*
  539 F.2d 458 (5th Cir. 1976) ............................................................. 16

**Statute**

28 U.S.C. § 1334 .................................................................................. 16

**Rule**

N.D. Tex. L.R. 15.1 .............................................................................. 10

**Other Authorities**

*Black's Law Dictionary* (6th ed. 1990) .................................................. 3, 6

Pilar Melendez & Emily Shugerman, *Did Judge
    Turn a Hedge Funder Into the Villain of Her Novel?*,
    Daily Beast (May 6, 2023) .................................................................. 22

The rules limiting the contempt power of a bankruptcy court are strict:  Contempt may only be used where a party violates a clear and unambiguous order.  And the court is limited to civil sanctions that remedy ongoing contempt or compensate for damages caused by a past or continuing contempt.  Sanctions to punish past or deter future conduct are the province of criminal contempt, which is beyond the power of an Article I bankruptcy judge.  And where, as here, the vague order supposedly violated is itself beyond the proper gatekeeping power of the Article I judge, the order must be read narrowly to avoid a suspect application of that already questionable order.

Little is in dispute here.  Highland concedes that the key provisions of the Seery Order are ambiguous.  And Highland has not identified any ongoing contempt or harm from Appellants' already terminated motion in the district court that justified civil sanctions.

This Court should apply the straightforward rules and limits governing the contempt power of bankruptcy courts, recognize the results of the well-accepted standards for textual interpretation of legal documents, acknowledge the self-evidently punitive nature of the sanctions imposed, and reverse the decision below.

# ARGUMENT

## I.    The Seery Order Did Not Prohibit Appellants' District-Court Motion, Much Less Do So Clearly and Unambiguously.

In the Seery Order, the bankruptcy court demanded that Appellants seek permission before "commenc[ing] or pursu[ing]" a claim against Seery.  ROA.1134.  The central issue is whether a request for *permission* from the district court to commence a claim against Seery, which is not itself the "commence[ment]" of the claim, nonetheless clearly and unambiguously constitutes the "pursu[it]" of a claim against him.  It does not.  Under straightforward precedent regarding the contempt power, Appellants' Br. at 36–38, where the language or application of the Seery Order is anything less than clear in forbidding Appellants' conduct, contempt is improper and the decision affirming it was error.

1.  Highland does not contest that an order of contempt must be based on a violation of a clear and unambiguous order.  This Court requires as much.  *Oaks of Mid City Resident Council v. Sebelius*, 723 F.3d 581, 585 (5th Cir. 2013).  Indeed, "the judicial contempt power is a potent weapon which should be used only where *clearly* warranted." *Matter of Hailey*, 621 F.2d 169, 172 (5th Cir. 1980) (emphasis added); *see also* Appellants' Br. at 36–37.  As a practical matter, this rule is the

contempt equivalent of the rule of lenity and, in fact, is actually stricter in its phrasing than many versions of the rule of lenity. *See Cargill v. Garland*, 57 F.4th 447, 471 (5th Cir. 2023), *petition for cert. docketed*, No. 22-976 (U.S. Apr. 7, 2023) (rule of lenity requires courts "to construe ambiguous statutes against imposing criminal liability") (citing cases).

In assessing the clarity or ambiguity of the Seery Order, it is to be construed as a contract, which, under Texas law, requires that it be read according to its plain and ordinary meaning. Appellants' Br. at 22–23 (discussing cases). And "when the law is the subject, ordinary *legal* meaning is to be expected." *Day v. Persels & Assocs.*, 729 F.3d 1309, 1317 (11th Cir. 2013) (emphasis added).

2. Highland does not meaningfully rebut these basic principles, nor the many legal sources interpreting "pursue" to mean "prosecute" an existing claim and distinguishing it from "commence," which means to begin a claim. *See, e.g.*, *Pursue*, *Black's Law Dictionary* 1237 (6th ed. 1990) ("To follow, prosecute, or enforce a matter judicially, as a complaining party."); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 408 (1821) ("To commence a suit, is to demand something by the institute of process in a Court of justice; and to prosecute the suit, is, according to the

3

common acceptation of language, to *continue* that demand." (emphasis added)); Appellants' Br. at 24–25, 29–30 (citing definitions and cases).

Those definitions treat "commence" as meaning "begin," through the filing of an action in court, and "pursue" as "continue," through the prosecution of that action. *See id.* And, given that Appellants' district-court motion merely asked permission to begin a claim, while also candidly acknowledging the potential application of the Seery Order, Appellants could not possibly have been pursuing or continuing a claim that had yet to be commenced. Appellants' Br. at 16–17.

Highland barely pays lip service to the requirement that orders be interpreted according to their plain meaning, instead arguing (at 23, 24 n.17) for an expansive and vague definition of "pursue" that means merely to "try to achieve something."[1]  And then, without a shred of

---

[1] Highland's scraping together a handful of dictionaries for the broadest of competing non-contextual definitions of "pursue" confirms the Seery Order's ambiguity. Indeed, the continued battle of dictionaries is still evolving, which itself negates the clarity required to support a finding of contempt. In the district court (ROA.11987), and again in their Opening Brief (at 23–24), Appellants identified various dictionaries that define the terms "commence" and "pursue" in a manner appropriate to their legal context and that confirm that their district-court motion did not "commence or pursue" a claim against Seery. The district court, by contrast, opted for different dictionaries and broader definitions. ROA.12260. Highland, in turn, cherry-picks (at 24 n.17) the broadest

authoritative support, Highland asks this Court (at 23, 29) to ignore the plain meaning of the text in favor of the amorphous "purpose and intent" of the Seery Order. But this Court's precedent confirms that the "plain, ordinary, and generally accepted meaning" should guide a court's interpretation of contractual language. *Dynamic CRM Recruiting Sols., LLC v. UMA Educ., Inc.,* 31 F.4th 914, 920 (5th Cir. 2022).

Of course, one theoretically possible, expansive, and out-of-context definition, ignoring all other competing definitions, does not a clear and unambiguous order make. And even if Highland's inapt definition was universal (it's not), it still begs the question of what the motion was trying to "achieve." Highland argues (at 24–25) that Appellants "pursued" a claim when they requested permission to file a claim. Highland then argues that Appellants were required to seek permission from the bankruptcy court *before* pursuing or commencing a claim. But they can't have it both ways: either a request for permission is a *pre*-commencement or pursuit activity, or it is itself commencement or pursuit. The court

---

non-contextual definition from yet another set of dictionaries. Even assuming the plausibility of those competing definitions, the fact that the meaning of the Seery Order depends on which of multiple dictionaries and definitions one chooses is the very definition of ambiguity.

from whom permission is sought does not change the linguistic question whether seeking permission for an act is the same as engaging in the act itself.

To simply describe Highland's argument is to refute it. If seeking permission to commence or pursue a claim constitutes "pursuit" of a claim, the entire phrase "commence or pursue" is nonsensical and, indeed, renders the Seery Order infinitely fractal in that it requires seeking permission (*i.e.*, pursuit of a claim by Highland's lights) to seek permission (pursue) to seek permission (pursue) ad infinitum.[2]

Fortunately, the plain and coherent reading of the Seery Order is that pursue means to prosecute a claim that already has been commenced, and that the mere *seeking* of permission to do either of those things does not itself amount to the commencement or pursuit of a claim.

Like the definitions in *Black's Law Dictionary* and the other various dictionaries Appellants identified (at 23–24), routine legal use of the term

---

[2] Courts should "avoid any interpretation that would lead to absurd or unreasonable outcome[s]." *Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 630 F.3d 431, 439 (5th Cir. 2011) (quotation marks omitted); *accord Mid-Continent Cas. Co., Inc. v. Bay Rock Operating Co.*, 614 F.3d 105, 114 (5th Cir. 2010) ("Under Texas law, we are required to interpret contract[ual] provisions … so as to avoid meanings that produce unreasonable, oppressive, or absurd results[.]") (cleaned up).

"pursue" confirms that Appellants did not "pursue" a claim against Seery, much less do so clearly and unambiguously, as would be required for a finding of contempt. Highland's preference for its subjective understanding of the Seery Order's "purpose and intent" cannot overcome these definitions and routine uses of the words "commence" and "pursue." Rather, that would open the Seery Order up to vague, ambiguous, and unforeseeable applications, which are forbidden in the context of contempt. *See supra*, at 2.

3. Surprisingly, Highland asserts (at 23), without any explanation, that Appellants render the word "'pursue' superfluous" by requiring that pursuit of a claim follow the commencement of a claim. But Highland gets it exactly backwards; it is Highland's definition of "pursue" that renders the language in the Seery Order superfluous or incoherent.

Under the common and plain meaning of commence and pursue as advanced by Appellants, "commence" means the filing of a claim and "pursue" means the continued prosecution of a claim once filed. The Seery Order facially demands that a prospective claimant seek permission before filing (commencing) a new claim against Seery and that an existing claimant against Seery also seek and obtain permission

before continuing to prosecute (purse) that existing claim. This reading makes sense of all the language in the Order. That the Seery Order as interpreted by Appellants thus would not reach any pre-commencement *request* for permission is a feature, not a flaw.

Highland's reading, by contrast, not only results in "elephants," or "pursuit," "all the way down," it also renders the word "commence" superfluous. The definition of pursue Highland proffers is so expansive that it easily encompasses the filing of a complaint or anything else one might imagine constitutes the commencement of a claim, and hence the initial word does no work and has no purpose. That is reason enough to reject Highland's interpretation of the Seery Order, and certainly enough to reject the notion that it is the clear and unambiguous meaning of the Order. *See Dynamic CRM Recruiting*, 31 F.4th at 920 (a court "must … striv[e] to give meaning to … *every* [] *word* and to avoid rendering any portion inoperative") (emphasis added; quotation marks omitted). Reading both words—commence *or* pursue—in context thus confirms their distinct meanings, consistent with the definitions accepted by legal dictionaries and courts.

4. Highland's construction is further undermined by its failure to have any textual or logical limit on what conduct constitutes "pursuing" a claim under the Seery Order. As Appellants already explained (at 27–28), if "pursue" means any pre-commencement actions that may lead to a suit, there is no way to limit what would constitute "pursuing" a claim (*e.g.*, research, brainstorming, conferring with a client, etc.). It is no answer for Highland to respond (at 25) that it is not claiming that the Seery Order applies to "preliminary tasks such as legal research" or "drafting a complaint." Without any logical or textual basis for Highland's arbitrary line drawing, their subjective and idiosyncratic limitation on their facially broad definition hardly amounts to the plain meaning of the Seery Order.

As if seeking to demonstrate the ever-malleable nature of its definitions, Highland argues (at 25) that filing a motion for leave to amend is virtually the same as filing a new complaint because that was the end goal. Apart from the fact that *almost* commencing a claim is not the same as actually commencing a claim, much like "virtual" reality is not actual "reality," motions for leave to amend are not self-executing under the local rules, and, in any event, the proposed amendment here

9

would only have been executed sometime *after* the Court granted leave, which pre-supposes that it *agreed* with Appellants on the inapplicability or impropriety of the Seery Order.[3]  Had the district court disagreed, Appellants would not have filed the amended complaint but rather would have abided by (and perhaps appealed) the exculpatory limits of the Seery Order.

The intent to amend *if, and only if,* permission is granted, cannot possibly violate the Seery Order, which plainly contemplates the future commencement or pursuit of claims *after* permission is granted.  But that equally acknowledges that seeking permission for such potential action is not itself, or the equivalent of, commencing or pursuing a claim.

Under the plain meaning of the Seery Order, Appellants' candid request for leave in the district court neither commenced nor pursued a claim against Seery, did not violate the Seery Order, and hence did not constitute contempt.  Furthermore, even if this Court elects to entertain the possibility of Highland's interpretation, it is impossible to conclude

---

[3] As Appellants previously noted (at 31–32), under the portion of the Local Rules that Highland assiduously avoids quoting, a proposed amended complaint is not automatically filed upon a district court's granting leave.  N.D. Tex. L.R. 15.1(b).

that such a reading is the *only* reasonable one, much less the clear and unambiguous meaning of the Seery Order. Given such lack of clarity, the contempt order was inappropriate, its affirmation was error, and the decision below should be reversed.

## II.  Highland Fails to Support Its Demand that Appellants Accept Ambiguity in Bankruptcy Court Orders.

Effectively conceding that the Seery Order itself is ambiguous, Highland claims (at 27) that Appellants must simply live with a certain amount of ambiguity. But the authority Highland cites does not support this argument. For instance, this Court's decision in *Meyer v. Brown & Root Construction Company*, 661 F.2d 369 (5th Cir. Nov. 1981), undermines Highland's argument. True, an injunction need not include "[e]laborate detail," as Highland notes. Highland's Br. at 27. But *Meyer* confirms that more detail is required than what the Seery Order provides. *Meyer* explained that "a general injunction" that "orders a defendant to obey the law is not permitted." 661 F.2d at 373. But the injunction in *Meyer* was adequate because it articulated the specific unlawful practices in its recitation of the violations found and then enjoined the defendant from "engaging in the stated unlawful employment practice." *Id*.

So too with the bankruptcy court's unpublished decision in *In re SkyPort Global Communications*, No. 08-36737-H4-11, 2013 WL 4046397 (Bankr. S.D. Tex. Aug. 7, 2013). In *SkyPort*, the court recognized that a certain level of ambiguity on the face of an injunction may be cured "where a defendant has been independently advised of the scope of the proscribed activity—such as on the record in open court." *Id.* at *44. The *SkyPort* court concluded that "the Court should therefore consider the order as a whole, including what was said on the record as well as its context within the overall litigation" when evaluating the adequacy of an order's clarity. *Id.* Whereas the *SkyPort* parties previously had addressed questions about the scope of the order during a hearing, *id.*, that certainly was not the case here and, if there was the need for clarifying advice regarding a broader intended interpretation of the Seery Order, then *that*, not a finding of contempt, should have been the bankruptcy court's response.[4]

---

[4] The same is true of *In re Bradley*, 588 F.3d 254 (5th Cir. 2009), where this Court addressed arguments about the scope of an injunction that the parties had addressed with the court during a hearing. Any ambiguity had been resolved *after* having been addressed by the court. *Id.* at 267. Highland's reliance (at 31) on *McVay v. Halliburton Energy Services, Inc.*, 608 F. App'x 222 (5th Cir. 2015), is even more surprising, as the parties

In contrast to the inapposite cases Highland identifies, this Court has been clear that a party cannot be held in contempt for violating a "vague[] [or] ambiguous[]" order. *Sebelius*, 723 F.3d at 585. Highland identifies no reason to abandon that rule now. Context and historical interpretation support the plain meaning as described by Appellants and offer no support for Highland's proposed reading which, even if entertained, *arguendo*, at best creates only ambiguity.[5]

---

in that case "agreed" "[a]t oral argument" about what the injunction "is properly read to mean." *Id.* at 227.

Highland's later citation (at 27–28) to the unpublished decision in *American Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*, No. 4:19-cv-0414-A, 2019 WL 3774501 (N.D. Tex. Aug. 12, 2019), fares no better. The supposedly ambiguous language and standards in dispute in that case were taken from the Railway Labor Act, which already governed, and therefore were deemed sufficiently detailed. *Id.* at *9. There is no such pre-existing legal context here other than cases that support *Appellants'* interpretation of "commence or pursue."

[5] Other language in the Seery Order makes it questionable whether its gatekeeping (as opposed to exculpatory) features even apply to claims not asserting willful misconduct. Appellants' Br. at 38–39. Contrary to Highland's complaints (at 28), attention to the specific language of the Seery Order matters when the consequence of laxness is contempt. It is not mere "hair splitting" to note that the Seery Order requires permission be sought only for claims of "willful misconduct or gross negligence." *Id*. Appellants' district-court motion only sought to add lesser claims of breach of fiduciary duty, negligence, and tortious interference, that are not squarely addressed by the gatekeeping requirements. ROA.2697.

Finally, Highland makes the illogical argument (at 31) that Appellants should have asked the bankruptcy court for clarity about the Seery Order's reach. That is wrong for many reasons. For instance, it overlooks that several Appellants had not yet appeared in the bankruptcy proceedings when the court issued the Seery Order. And having those parties file numerous motions for clarification about the scope of all previous orders upon entering appearances would have been highly inefficient, and likely sanctionable.

Furthermore, debates about the *desirability* of seeking clarity rather than following the plain meaning of the Order by seeking a ruling from the district court have no bearing on whether it was *contempt* not to request clarity. Appellants raised a challenge to the scope of the Seery Order at the first reasonable opportunity—when it was applied to them— and in the court that had the authority to do something about it. There was no clear basis in the Seery Order prohibiting that mere request, or the challenge to the scope and application of the Order to potential claims involving less-than-willful conduct. Insisting that Appellants play Mother-May-I even for actions beyond the plain meaning of the Seery Order's restrictions is unreasonable, and certainly not grounds for

finding contempt merely because they could have taken a different path in the face of any lingering doubt.  If there were a need for clarity, the bankruptcy court could have offered it *after* the motion was rejected and before any future conduct it thought should be restricted.  But jumping straight to contempt went far beyond its properly limited power.

## III.    The Courts Below Erred in Awarding Punitive Sanctions for Expenses Not Caused by the Alleged Contempt.

Even if Appellants' district-court motion violated the Seery Order, which it did not, the bankruptcy court erred when it entered a sanctions award against Appellants.  When Highland filed its motion for contempt, it had not spent a single cent responding to Appellants' motion for leave.  Highland's request for an order to show cause does not even *allege* any injury from the already terminated alleged contempt, it merely seeks punishment and deterrence of future conduct, neither of which are compensatory.  Indeed, the *only thing* that caused Highland to spend any time or money was its own decision to file and excessively litigate an improper contempt motion.

Bankruptcy courts lack the power to impose criminal contempt sanctions and may only impose civil contempt sanctions under the limitations discussed in the prior Sections.  Appellants' Br. at 40

(discussing cases).  To be a "civil" contempt sanction, the award "must be compensatory rather than punitive in nature ….   A fee award is [compensatory] if it covers the legal bills *that the litigation abuse occasioned.*" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (emphasis added).  Civil contempt sanctions may also be imposed to coerce a change in ongoing behavior in violation of an order, but generally must be conditioned on the continuation or cessation of that behavior and not merely to deter future behavior.  *See United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976) (civil contempt is conditional, in that it may be lifted if the contemnor changes course).  A criminal contempt sanction, by contrast, is one that seeks to punish behavior deemed a challenge to the court's authority or to deter future challenge to that authority.  *See Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990) (if the purpose of a sanction is to punish and vindicate the court's authority, the order is viewed as criminal).  If the purpose of a sanction is either punishment or deterrence, it is beyond the power of a bankruptcy court.  *See* 28 U.S.C. § 1334(b); *In re Hipp, Inc.*, 895 F.2d 1503, 1510–11 (5th Cir. 1990).

Despite these straightforward limits on the contempt power, Highland erroneously persists in arguing (at 51) that it "incurred expenses as a result of Appellants' contemptuous conduct." *See also id.* at 48 (erroneously insisting that "the monetary award was based solely on Highland's cost of enforcing the Orders"). But Highland leaves that assertion entirely unsupported, failing to cite anything in the record showing that the motion for leave required it to do anything or that the Seery Order needed "enforcing" at the time it filed its motion for a show-cause order.

In contrast, the record confirms that Appellants' district-court motion was filed, not yet served, and denied before Highland ever took any action. After-the-fact efforts to punish supposedly contemptuous behavior that had already ceased is not a compensable injury properly remedied through civil contempt. Rather, it is an improper effort to have the bankruptcy court exceed its limited authority and punish or deter, and the costs of such punitive efforts cannot be recategorized as civil compensation merely because Highland spent excessive money on its improper efforts.

Highland's reliance (at 51) on this Court's decision in *SkyPort Global* confirms that a sanctions award may be proper when it "restores the … parties to where they were before they incurred attorneys' fees in an attempt to ensure compliance with the injunction." (quoting *SkyPort Glob.*, 661 F. App'x 835, 841 (5th Cir. 2016)).   But here, the allegedly contemptuous conduct had concluded before Highland incurred *any* fees or suffered any other form of compensable injury.   Thus, returning Highland to where it was at the start would have been to award Highland nothing.   Sanctions are compensatory where they stop an ongoing contempt or compensate for expenditures caused by a past contempt. But when they are imposed as punishment after the fact, or where the "expenses" were generated not by the contempt but only by a *post hoc* retaliatory motion for contempt, then they are properly categorized as sanctions for criminal contempt and are beyond the power of an Article I bankruptcy court.

Highland thus misses the point when arguing (at 49) that the "sanction [was] paid to the party aggrieved by the contemnor[.]" Highland may have been colloquially "aggrieved," in that it was annoyed after the fact, but it was not *financially* aggrieved by Appellants' conduct.

Rather, any financial grievance came only from Highland's decision to institute proceedings to punish Appellants. Indeed, Highland cannot possibly be financially "aggrieved" by conduct that never required an action or a response. *See* Appellants' Br. at 33.

Unsurprisingly, Highland quickly pivots away from discussing actual causation and argues (at 51) that the sanction award was nonetheless proper because it was based on billing records. *See also id.* at 48 (same). But that is not the question. The propriety of a sanctions award does not turn on its correlation to billing records where the bills submitted were not caused by the underlying motion for leave itself, or any response thereto. Rather, they were caused entirely by improper efforts to punish the alleged contempt after it had ceased. Unless the award sought to compel a change in current behavior or compensate Highland for injuries resulting from past behavior, the award was punitive and thus improper. That Appellants have "billing records" supposedly confirming the cost of their improperly punitive efforts is a non-sequitur.

The lack of causation here confirms the punitive nature of the award in this case. "The complaining party … may recover 'only the

portion of his fees that he would not have paid but for' the misconduct." *Goodyear Tire*, 137 S. Ct. at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)).    The allegedly contemptuous act—filing the district-court motion—had come and gone before Highland even knew about it, and well before it filed its request for sanctions.    Thus, Highland cannot identify any "fees that [it] would not have paid but for the misconduct."

Notably, Highland fails to cite a single instance where a court imposed sanctions for allegedly contemptuous conduct that had ended before any contempt proceedings were initiated, and where the allegedly contemptuous conduct did not require the complaining party to take any actions.    That is unsurprising, as it is unlikely any party has previously had the gumption to seek a sanction and fees in such a circumstance. Yet, that is precisely the case here.

The only "but for" cause of the fees here was the voluntary, and unnecessary, sanctions motion.    And, indeed, those fees were expanded by the equally pointless discovery into Mr. Dondero's relationship with the DAF Appellants.    It was the DAF Appellants and their attorneys who filed the supposedly problematic motion, who took responsibility for that entirely permissible action, and who could readily bear the consequences

if their actions were properly found to constitute contempt. Inquiring into the underlying whys and wherefores of their decision, whether they sought counsel before filing their motion, or anything else other than the actual conduct allegedly constituting contempt, was entirely unnecessary *except* for Highland's desire to punish Appellants and Mr. Dondero. The fees in pursuit of that further irrelevant and improper effort are not the but-for result of the alleged contempt, even if one mistakenly imagines that necessary expenses for the motion to show cause might be compensable in general.

Moreover, even *if* some fees were appropriately awarded to Highland, the bankruptcy court erred in not reducing the total award to reflect the costs Highland would have otherwise spent responding to a motion for leave filed first with the bankruptcy court, and then followed by an appeal of the bankruptcy court's certain denial of that motion. *See* Appellants' Br. at 45–46. Basic principles of causation require such an offsetting analysis to reduce any permissible award. Instead, at each turn, the bankruptcy court multiplied the proceedings and expenses to punish Appellants.

Further indicia of the punitive and deterrent purpose of the contempt sanctions are found in the bankruptcy court's prospective appellate sanction "of $100,000 for each level of rehearing, appeal, or petition for *certiorari* that [Appellants] may choose to take with regard to this Order, to the extent … not successful." ROA.56 (cleaned up). While Highland has abandoned any defense of that sanction, the fact that such an indefensible sanction and restraint on Appellants' right to petition was ever imposed demonstrates the punitive and deterrent purposes of the award in this case.[6]

Because the alleged contempt had ended before Highland incurred any expenses, and because the expenses later incurred were not caused by the alleged contempt rather than by the intervening and improper

---

[6] There is yet further reason to understand the sanctions in this case as punitive, including the bankruptcy judge writing a book casting a thinly veiled Mr. Dondero as a corrupt and potentially pedophilic villain. *See* Am. Renewed Mot. to Recuse, *In re Highland Capital Mgmt., L.P.*, No. 19-34054-SGJ-11 (Bankr. N.D. Tex. Mar. 3, 2023) (ECF No. 3673) (motion to recuse discussing book); Mem. Op. & Order, *In re Highland Capital Mgmt., L.P.*, No. 19-34054-SGJ-11 (Bankr. N.D. Tex. Mar. 6, 2023) (ECF No. 3676) (denial of motion to recuse unbelievably denying that the character was based on Dondero); *see generally* Pilar Melendez & Emily Shugerman, *Did Judge Turn a Hedge Funder Into the Villain of Her Novel?*, Daily Beast (May 6, 2023), https://tinyurl.com/bddbzse5 (describing controversy).

efforts to punish Appellants, the monetary sanctions were not properly civil in nature, exceeded the bankruptcy court's power, and should be reversed.

## IV.  The Courts Below Erred in Extending the *Barton* Doctrine Beyond its Reach.

Finally, the bankruptcy court's expansion of the *Barton* Doctrine finds no support in decisions of this Court or others.  Whatever the propriety of *Barton*, it does not apply to Seery.  It is beyond any plausible dispute that the actions Seery is accused of undertaking in the proposed amended complaint occurred in his role as CEO, not as trustee (or even as an adjunct to a trustee), and Highland has not identified a single case where *Barton* was extended to exculpate someone serving as CEO from liability.  Indeed, this Court itself rejected the application to Seery of the final gatekeeping and exculpation order in this very case, finding that it was beyond the authority of the bankruptcy court and that any concerns with excessive litigation should be addressed by other means.  *See Matter of Highland Capital*, 48 F.4th 419, 437–38 (5th Cir. 2022).[7]

---

[7] The court declined to reach whether that holding would apply to the interim order at issue here because such a challenge was collateral to its consideration of the final order.  We address whether the challenge to the

Rather, Highland attempts to muddy the waters to make it appear as though Seery was not, in fact, acting as CEO when he engaged in the conduct alleged in Appellants' proposed amended complaint. For example, Highland speaks of Seery (at 36, 37) as a "court-appointed officer[]" appointed "to oversee and manage the bankruptcy case in lieu of a chapter 11 trustee[.]" Highland further attempts to obscure Seery's role (at 38 n.23) by stating that "the Independent Directors were acting as a 'bankruptcy trustee' and entitled to the protections otherwise afforded to trustees." This is incorrect.

As Appellants demonstrated (at 55–56), Seery was never hired or appointed to be a trustee, nor was he ever appointed by a receiver or trustee. Rather, Seery served as the CEO of a private company after the board of directors appointed him, in their "business judgment." ROA.11722–23. In this capacity, Seery had many responsibilities that would never fall to a trustee (*e.g.*, hiring and firing employees, purchasing or disposing of property, etc.). Appellants' Br. at 56. And he was permitted to do so before obtaining court approval.

---

Seery Order as applied in this case is properly raised or improperly collateral *infra* at 26.

Highland never addresses these responsibilities, or the fact that Seery was appointed CEO in the Board's "business judgment." Instead, Highland persists in blindly pointing (at 37) to the bankruptcy-court's appointment of Seery as the end of the inquiry. As this Court itself found, *Matter of Highland Capital*, 48 F.4th at 437–38, that does not convert a CEO appointed by a board of directors for business reasons into a trustee protected by *Barton*. And that is further clear from the actions about which Appellants complained—Seery's breach of fiduciary duties when bringing property under Highland's control. That is not the action of a trustee or, as the bankruptcy court suggested, someone who is "rather obvious[ly]" acting as a trustee.[8]  ROA.42. That the bankruptcy court later blessed Seery's approval as CEO does not convert him into a trustee or otherwise blanket his conduct with immunity when acting as CEO.

Highland incorrectly claims that this Court's recent decision regarding the final bankruptcy confirmation order in *Matter of Highland Capital*, has already rejected the arguments Appellants make here. Not

---

[8] Highland continues to argue (at 36) that *Barton*'s application is necessary here to ensure that a bankruptcy court can "maintain[] a panel of trustees without the threat of baseless litigation." Highland does not address the fact that this precise argument has already been rejected. *See* Appellants' Br. at 56–57.

so. This Court found that Seery acting in his capacity as CEO was not subject to the exculpation benefits enjoyed by a trustee or quasi-trustee. This Court otherwise merely confirmed that *Barton* has been applied to actions "against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity." 48 F.4th at 439. This court did not view that as extending to Seery in his capacity as CEO.[9]

Equally unavailing is Highland's attempt (at 32–35) to duck these issues on procedural grounds. Put simply, this is not an improper collateral attack on the Seery Order where review was available previously. Rather, Appellants raised their challenges to the Seery Order and the questionable extension of *Barton* at the outset in its district-court motion, and they have been renewing the same argument ever since. Continuing to challenge the bankruptcy court's overbroad interpretation of the Seery Order is wholly distinct from mounting a collateral attack on the Seery Order after the contempt proceedings have been underway for

---

[9] Notably, Highland has never challenged the permissibility of Appellants' initial district-court complaint against Highland. If that complaint against the debtor is permissible, it is illogical that Appellants could not also name the corporate officer involved in the challenged actions. Extending *Barton* to preclude such an obvious amendment to a complaint would raise further questions about the propriety of *Barton*.

an extended period. *See* Appellants' Br. at 34–36, 48–50. Highland does not address this key distinction between an improper collateral attack and a renewed challenge that has been raised since the outset.

Instead, Highland focuses its efforts on the notion that still earlier review was available. For instance, Highland suggests (at 31–32, 35) that Appellants should have sought an advisory opinion in the middle of the bankruptcy proceedings about the scope of the Seery Order, despite its not being applied at the time. Highland offers no support for this suggestion that a party is obligated to slow down proceedings to seek advisory opinions about every possible application of an order. Rather, that is why as-applied challenges are favored. *See Sabri v. United States*, 541 U.S. 600, 608 (2004) ("facial challenges are best when infrequent").

Highland further suggests (at 35) that Appellants should have appealed the Seery Order when it was entered. Of course, that would have required Appellants (including attorney Appellants) to have been aware of the Order when it was entered (which they were not), and it would have encountered similar obstacles, requiring Appellants to appeal an order based on hypothetical applications. And Highland's suggestion that Appellants should have challenged the Seery Order when Highland

indicated it would seek sanctions is misguided because that is exactly what Appellants did—they raised this precise issue in their district-court motion. ROA.2693–97.

Highland appears to overlook the substance of Appellants' motion, accusing them of only challenging the scope of the *Seery* Order "***after being charged with its violation.***"   Highland Br. at 35 (excessive emphasis in original).  That is simply false.  Appellants raised these (and other) issues in their district-court motion for leave, which was the first opportunity for Appellants to do so with concrete facts and applications. Highland's argument thus eats its own tail by effectively claiming that the very motion questioning and challenging the application and legitimate scope of the Seery Order is itself a contumacious violation of that Order and the Order therefore cannot be challenged in the ensuing contempt proceedings.  The only choices remaining are thus frivolous and unripe facial challenges seeking advisory opinions on every conceivable application of a broad order or a Catch-22 wherein an as-applied challenge constitutes contempt that cannot be defended by a challenge to the order supposedly violated.

Further undermining Highland's argument is the fact that the Seery Order was not final when Appellants filed their district-court motion. By focusing on the subsequent finality of the gatekeeping orders once the final order in the bankruptcy case was entered, Highland (at 34) ignores the proper timeframe of the Order's status when Appellants first made their motion in the district court. The bankruptcy court at that time had expressly retained jurisdiction over that Order. ROA.1172. Although Highland broadly claims (at 34) that this Court's "prior rulings" confirm that retaining jurisdiction does not preclude finality, Highland never identifies what "rulings" it is thinking of. Rather, Highland misplaces criticism of Appellants' reliance on *Ruiz v. United States*, 243 F.3d 941 (5th Cir. 2001). Despite factual differences, the principle underlying *Ruiz* is equally applicable here—an injunction is not final "[a]s long as the court retains the power to terminate or modify prospective injunctive relief[.]" *Id.* at 948. By retaining jurisdiction over the Seery Order, the bankruptcy court had the "power to terminate or modify" it. In fact, that is precisely what could have occurred if Appellants had sought clarification as Highland suggests they should have done, or if the district court had remanded the motion for leave to

the bankruptcy court with instructions or limits regarding the Order, as Appellants proposed in their motion as one means of proceeding.

Ultimately, it remains true that the bankruptcy court retained jurisdiction over the Seery Order, it was not final when Appellants filed their district-court motion, and Appellants raised their arguments about the Seery Order in that motion.  By continuing to renew those same arguments as a defense of that self-same motion, Appellants are not engaging in an improper collateral attack.  They are challenging an order that has improperly been applied to them.

## CONCLUSION

It borders on absurd to conclude that it is contempt to candidly acknowledge a gatekeeping and exculpation order, to question before the district court its application and validity as to a proposed course of action, and to refrain from taking the restricted action of commencing a claim but instead seek relief from the order and permission to proceed.  Rather than contempt, that is a direct and appropriate challenge to an overreaching order by an Article I judge, done in complete candor and with careful attention not to violate the order being challenged. Accordingly, the decision below should be reversed.

May 12, 2023                           Respectfully submitted,

Mazin A. Sbaiti                        */s/ Erik S. Jaffe*
Jonathan Bridges                       Erik S. Jaffe
SBAITI & COMPANY PLLC                    *Lead Counsel*
JPMorgan Chase Tower                   Brian J. Field
2200 Ross Avenue                       Aaron Gordon
Suite 4900W                            SCHAERR | JAFFE LLP
Dallas, TX 75201                       1717 K Street NW, Suite 900
Telephone: (214) 432-2899              Washington, DC 20006
mas@sbaitilaw.com                      Telephone: (202) 787-1060
                                       ejaffe@schaerr-jaffe.com

*Counsel for Appellants The Charitable DAF Fund, L.P.;*
*CLO Holdco, Ltd.; Mark Patrick; Sbaiti & Company, PLLC;*
*Mazin A. Sbaiti; and Jonathan Bridges*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that on May 12, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ Erik S. Jaffe*
Erik S. Jaffe

# CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,339 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Office 2016 in 14-point Century Schoolbook font.

I further certify that 1) all required redactions have been made, and 2) that this document has been scanned for viruses with the most current version of a commercial virus scanning program and is free of viruses.


*/s/ Erik S. Jaffe*
Erik S. Jaffe

Dated: May 12, 2023